## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EPIC! CREATIONS, INC., *et al.*,[1] | Case No. 24-11161 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: Jan. 22, 2025, at 10:00 a.m. ET**<br>**Objection Date: Dec. 20, 2024, at 4:00 p.m. ET** |

### APPLICATION OF THE CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE SALE TRANSACTION OF EPIC! CREATIONS, INC. EFFECTIVE AS OF THE ENGAGEMENT DATE

Claudia Z. Springer, Esq., in her capacity as Chapter 11 Trustee (the "Trustee")[2] of the

estates of Epic! Creations, Inc. ("Epic"), Neuron Fuel, Inc. ("Neuron Fuel"), and Tangible Play,

Inc. ("Tangible Play," together with Epic and Neuron Fuel, collectively the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby files this application (the

"Application"), and in support thereof states as follows:

### Relief Requested

1.      By this Application, the Trustee hereby seeks the entry of an order

(the "Order"), substantially in the form attached hereto as **Exhibit B**, pursuant to sections 327(a)

and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) and Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Epic! Creations, Inc. (9113); Neuron Fuel, Inc. (8758); and Tangible Play, Inc. (9331).

[2]      Capitalized terms used and not otherwise defined in this Application shall have the meanings ascribed to them in the Engagement Letter.

and Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):  (a) authorizing the employment and retention of Moelis & Company LLC ("Moelis") to serve as the Trustee's investment banker and financial advisor, effective as of the Engagement Date (as defined herein), for the sale transaction of Epic in accordance with the terms and conditions set forth in the engagement letter between Moelis and the Trustee (the "Engagement Letter"), dated as of November 19, 2024 (the "Engagement Date"), a copy of which is attached as **Exhibit 1** to the Order; (b) approving the provisions of the Engagement Letter, including the proposed compensation arrangements and the indemnification, exculpation, contribution, and reimbursement provisions set forth in the Engagement Letter, pursuant to section 328(a) of the Bankruptcy Code; (c) modifying certain timekeeping requirements of Local Rules 2016(a) and 2016-2, the guidelines (the "Trustee Guidelines") of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and any other applicable procedures and orders of the Court in connection with Moelis' proposed engagement; and (d) granting such other relief as may be just and proper. In support of this Application, the Trustee submits the declaration of Cullen Murphy (the "Murphy Declaration"), a copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O), and the Trustee confirms her consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Application to the extent

that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, rules 2014(a) and 2016 of the Bankruptcy Rules, and Rules 2014-1 and 2016- 1 of the Local Rules.

**Background**

5.      On June 4 and 5, 2024 (the "Petition Dates"), GLAS Trust Company LLC, in its capacity as administrative and collateral agent under that certain Credit and Guaranty Agreement dated November 24, 2021 (the "Agreement"), and certain lenders under that Agreement (the "Petitioning Creditors") filed an involuntary chapter 11 petition against each Debtor. [D.I. 1].

6.      On June 27, 2024, this Court entered an order directing joint administration of the Debtors' cases for procedural purposes. [D.I. 61].

7.      On September 16, 2024 (the "Order for Relief Date"), this Court entered an order for relief in the Debtors' involuntary Chapter 11 Cases and directed the appointment of a chapter 11 trustee. [D.I. 147].

8.      On September 23, 2024, the United States Trustee for Region 3 duly appointed Claudia Z. Springer as chapter 11 trustee of each Debtor, subject to approval by the Court. [D.I. 152]. On October 7, 2024, this Court entered an order approving the appointment of the Trustee. [D.I. 180].

9.      On October 31, 2024, the Court entered the *Interim Order (I) Authorizing The Use Of Cash Collateral, (II) Authorizing The Chapter 11 Trustee On Behalf Of The Debtors' Estates To Obtain Postpetition Financing, (III) Granting Senior Postpetition Security Interests,*

*And According Superpriority Administrative Expense Status Pursuant To Sections 364(c) And 364(d) Of The Bankruptcy Code, (IV) Granting Adequate Protection, (V) Modifying The Automatic Stay, And (VI) Granting Related Relief* (the "Interim DIP Order"). [D.I. 236.]. As set forth in the Interim DIP Order, the financing for these Chapter 11 Cases is subject to a number of milestones, including milestones for the retention of an investment banker and sale of the estates' assets.[3]

## Moelis' Qualifications

10.     Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 4th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,200 employees with geographic locations in North America, South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

11.     Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Express, Inc., et al.*, No. 24-10831 (KBO) (Bankr. D. Del. June

---

[3]     Certain of the milestones have been extended by agreement since the entry of the Interim DIP Order.

5, 2024); *In re Proterra*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 25, 2023); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re Party City Holdco Inc., et al.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings*, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. May 1, 2019); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Cumulus Media Inc.*, No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Breitburn Energy Partners LP*, No. 16-11390 (Bankr. S.D.N.Y. July 20, 2016); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MPM Silicones, LLC*, No. 14-22503

(RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re MACH Gen, LLC*, No. 14 10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014).[4]

12.     The Trustee has selected Moelis as her investment banker and financial advisor based upon, among other things:  (a) the Trustee's need to retain a skilled investment banker and financial advisor to provide advice with respect to the Trustee's restructuring and sale activities on behalf of the Debtors; (b) Moelis' extensive experience and excellent reputation in providing similar services in complex chapter 11 cases such as these; and (c) Moelis' knowledge of Epic, as described below.  In light of the size and complexity of these Chapter 11 Cases, Moelis' resources, capabilities and experience are crucial to the resolution of these Chapter 11 Cases.  An experienced investment banker and financial advisor, such as Moelis, fulfills a critical service that complements the services provided by the Trustee's other professionals.

13.     Moelis began advising the Trustee on strategic and restructuring initiatives prior to the commencement of these Chapter 11 Cases.  Moelis was engaged as the Trustee's investment banker and financial advisor in November 2024. Prior to the filing of the Chapter 11 Cases, Moelis had provided investment banking services to Epic in connection with a potential pre-petition sale. Moelis has agreed to waive any prepetition claims, including any claims for any "tail" or similar fee arrangement that may be owed or come due under any prior engagement letter(s) with Epic or any other Debtor or affiliate.

14.     As a result of its prepetition work for Epic, Moelis has developed valuable institutional knowledge regarding Epic's businesses, operations, capital structure and other material information, including the market for potential purchasers of Epic's business.

---

[4]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

15.     Accordingly, the Trustee believes Moelis is well-qualified to represent her in a cost-effective, efficient and timely manner, and the Trustee submits that the employment and retention of Moelis is in the best interests of the estates, their creditors and all parties in interest.

**<u>Services to Be Provided</u>**

16.     Subject to further order of the Court, and as set forth more fully in the Engagement Letter attached as **<u>Exhibit 1</u>** to the Order, in consideration for the compensation contemplated therein, Moelis has and will perform the following services (the "<u>Services</u>"), as requested, for the Trustee:[5]

a.      assist the Trustee in reviewing and analyzing the results of Epic's operations, financial condition and business plan;

b.      assist the Trustee in reviewing and analyzing any potential Sale Transaction;

c.      assist the Trustee in negotiating any Sale Transaction;

d.      advise the Trustee on its preparation of information memorandum for, a potential Sale Transaction (each, an "<u>Information Memo</u>");

e.      assist the Trustee in contacting potential Acquirers that Moelis and the Trustee agree are appropriate, and meet with and provide them with the Information Memo and such additional information about Epic's assets, properties or businesses that is acceptable to the Trustee, subject to customary business confidentiality agreements;

f.      provide testimony, in the form of affidavits, declarations, and/or live testimony before the Bankruptcy Court, in connection with obtaining the Bankruptcy Court's approval of any Sale Transaction; and

g.      provide such other financial advisory and investment banking services in connection with a Sale Transaction as Moelis and the Trustee may mutually agree upon in writing.

---

[5]     The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

17.     Such professional services are necessary to the Trustee's chapter 11 efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

## Professional Compensation

18.     Moelis' decision to advise and assist the Trustee in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

19.     Moelis does not typically charge for its services on an hourly basis.  Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction.  The Engagement Letter follows this custom in the financial advisory and investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

20.     As set forth more fully in the Engagement Letter, Moelis and the Trustee have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure") pursuant to section 328(a), and not section 330, of the Bankruptcy Code.  The Trustee, not individually but solely on behalf of the Estate, has agreed to pay Moelis the following nonrefundable cash fees:

i.    **Monthly Fee.** During the term of the Engagement Letter, a fee of $150,000 per month (the "Monthly Fee"), payable in advance of each month. The Trustee will cause the Estate to pay the first Monthly Fee immediately upon the execution of the Engagement Letter, and all subsequent Monthly Fees prior to each monthly anniversary of the date of the Engagement Letter. Whether or not a Sale Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter. 50% of the Monthly Fee shall be offset, to the extent previously paid, against the

first Sale Transaction Fee (as defined below), provided that such crediting shall not reduce such Sale Transaction Fee payable to less than zero.

    ii.   **Sale Transaction Fee.**  A transaction fee (the "<u>Sale Transaction Fee</u>") payable promptly at the initial closing of a Sale Transaction, equal to the greater of (i) the Minimum Sale Transaction Fee (as defined below) and (ii) the Minimum Sale Transaction Fee plus an amount based on Transaction Value (as defined in *Annex A* to the Engagement Letter) as follows:

        a.   1.5% for the portion of Transaction Value in excess of $150 million up to and including $200 million; plus

        b.   3.0% for the portion of Transaction Value in excess of $200 million.

    iii.   **Minimum Sale Transaction Fee.**  A transaction fee (the "<u>Minimum Sale Transaction Fee</u>") of $2,000,000; provided, that, in the event that a credit bid is selected as the winning bid for a Sale Transaction (such Sale Transaction, a "<u>Credit Bid Sale Transaction</u>"), the Minimum Sale Transaction Fee shall be $1,500,000, regardless of whether a third party bid is received or not.

In the event of a Credit Bid Sale Transaction, the applicable Transaction Value used to calculate the Sale Transaction Fee will be the Transaction Value of the highest binding third party bid that is deemed a "qualified bid" (as will be set forth in the bidding procedures to be approved by the Bankruptcy Court in connection with the Sale Transaction) received during the term of the Engagement Letter and the Sale Transaction Fee will be calculated at a 25% discount to the Sale Transaction Fee calculated based on such Transaction Value (provided however, that such Sale Transaction Fee shall not be lower than the Minimum Sale Transaction Fee).

    21.   If, at any time prior to the expiration of 12 months following the termination of the Engagement Letter, the Trustee consummates any Sale Transaction or enters into an agreement or a Plan is filed regarding any Sale Transaction and a Sale Transaction is subsequently consummated, then the Estate shall pay Moelis the Sale Transaction Fee specified in Section 2(a) of the Engagement Letter immediately upon the closing of any such Sale Transaction(s). As set forth above, Moelis hereby agrees to waive any claims for any "tail" or similar fee arrangement that may be owed or come due under any prior engagement letter(s) with Epic and/or its affiliates.

22.     In addition to any fees payable to Moelis, the Estate will reimburse Moelis, whether or not a Sale Transaction is consummated, upon request for all of its expenses incurred (including related expenses incurred prior to the date of the Engagement Letter) in entering into and performing services pursuant to the Engagement Letter.  Such expenses include, without limitation, insourced document production costs, travel costs, and the costs of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in these Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

23.     The Trustee believes that the Fee Structure is reasonable, consistent with, and typical of compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  The Trustee also believes that the Fee Structure reflects a proper balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Trustee and Moelis in the Engagement Letter.  The Fee Structure is consistent with Moelis' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  After discussions and arm's-length negotiations, the Trustee believes that the Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

24.     Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which has and will be required by the Trustee during the term of Moelis' engagement, were all important factors to the Trustee in agreeing to the Fee Structure.  The Trustee believes that the ultimate benefit of Moelis' services hereunder cannot be measured by reference

to the number of hours to be expended by Moelis' professionals in the performance of such services. The Trustee and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these Chapter 11 Cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis, and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

### Modification of Compliance with Time-Detail Requirements

25.     The Trustee understands that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the Engagement Letter.

26.     Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, (a) Moelis does not keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees. Given the foregoing, the Trustee respectfully requests that Moelis' restructuring professionals who advise or provide professional services to or on behalf of the Trustee only be required to maintain records (in summary format) of the services rendered for the Trustee, including summary descriptions of those services, the approximate time expended

in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services, consistent with its ordinary practice. Moelis will present such records to the Court in its fee application(s). Moreover, the Trustee respectfully requests that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals working on this matter (many of whom work outside of the US) and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, or other applicable procedures and orders of the Court, the Trustee respectfully requests that this Court waive such requirements.

27.    Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. In the event that Moelis seeks reimbursement for attorneys' fees during the term of these Chapter 11 Cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own applications, both interim and final. Such invoices and time records will be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

**<u>Indemnification, Exculpation, Contribution and Reimbursement of Moelis</u>**

28.    As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Trustee has agreed to indemnify and exculpate any and all Moelis Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements

to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including the annexes thereto (such provisions, collectively, the "Indemnification Provisions"). As set forth more fully therein, under the Indemnification Provisions, if any Moelis Person becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Trustee will reimburse such Moelis Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing the Engagement Letter, as they are incurred.  The Trustee will also indemnify and hold harmless any Moelis Person from and against, and the Trustee each agree that no Moelis Person shall have any liability to the Trustee, the Debtors, or their affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Trustee's actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein, or (ii) related to or arising out of oral or written statements of omissions made or information provided by the Trustee or her agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, all information in the Information Presentation and any other information provided by or on behalf of the Trustee to any Purchasers by or on behalf of the Trustee (which shall be deemed to include the Trustee's public filings)), or (B) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder or any other services or advice the Trustee request any Moelis Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (B) shall not apply to Losses to the

extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Moelis Person.[6]

29.    These Indemnification Provisions were negotiated at arm's length and in good faith between the Trustee and Moelis.  The Trustee believes that the Indemnification Provisions reflect the customary qualifications and limits on such terms for financial advisory engagements both out of court and in chapter 11 cases and respectfully submit that the Indemnification Provisions are reasonable and appropriate, subject to the modifications set forth in the Order.  The Trustee believes that the proposed modifications to the Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

### No Duplication of Services

30.    The Trustee has applied, or expects to apply, to the Court to retain additional professionals in these Chapter 11 Cases.  The Trustee does not believe that the services to be performed by Moelis on behalf of the Trustee will be duplicative of services provided by any other professionals in these Chapter 11 Cases, including the services of Novo Advisors, LLC ("Novo") and FTI Consulting, Inc. ("FTI").  Novo and FTI, although also financial advisors, are not being retained to perform the same services as Moelis, as set forth in each parties' retention applications and engagement letters.  The Trustee and Moelis are mindful of the need to avoid duplication of services, and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker and financial advisor in these Chapter 11 Cases.  The Trustee understands that Moelis will use its reasonable efforts to

---

[6]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

work cooperatively with the Trustee's other professionals to integrate any respective work performed by those professionals on behalf of the Trustee.

### Moelis' Disinterestedness

31.    Moelis has reviewed the list of parties in interest provided by the Trustee. To the best of Moelis' knowledge, information and belief as of the date hereof, and except to the extent disclosed herein or in the Murphy Declaration, Moelis:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Trustee, the Debtors, their creditors or related parties except as disclosed in the Murphy Declaration.

32.    Given the large number of parties in interest in these Chapter 11 Cases, and despite the efforts to identify and disclose Moelis' relationships with parties in interest in these Chapter 11 Cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Murphy Declaration.  Moelis has informed the Trustee that it will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

33.    The Trustee is informed that Moelis will not share any compensation to be paid by the Trustee, not individually but solely on behalf of the Estate, in connection with services to be performed after the Engagement Date, with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

### Basis For Relief

**A.    The Trustee Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

34.    The Trustee seeks approval of the retention and employment of Moelis pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy

Code provides that a Trustee "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the Trustee in carrying out its duties.  11 U.S.C. § 327(a).

35.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that the Trustee on behalf of the debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Accordingly, section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

36.     As discussed above and in the Murphy Declaration, Moelis satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.  Additionally, given the numerous issues that Moelis may be required to address in the performance of its services for the Trustee pursuant to the Engagement Letter, Moelis' commitment to the variable level of time and

effort necessary to address all such issues as they arise, and the market prices for Moelis' services for engagements of this nature, the Trustee believes that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

37.    Indeed, the Trustee believes that the Fee Structure appropriately reflects: (a) the nature and scope of services to be provided by Moelis; (b) Moelis' substantial experience with respect to investment banking and financial advisory services; and (c) the fee structures typically utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

38.    As set forth above, and notwithstanding approval of Moelis' Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein.  Furthermore, the Trustee proposes that her obligation to pay any fee, expense or indemnity to Moelis or any Moelis Person not be subject to any reduction by way of setoff, recoupment or counterclaim.

39.    The Trustee requests that the requirements of Local Rule 2016-2, the Amended Guidelines, the Trustee Guidelines and any other applicable procedures and orders of the Court be tailored to the nature of Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment

banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys. As discussed above, however, Moelis' restructuring professionals, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these Chapter 11 Cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the professionals who performed such tasks. As such, the Trustee requests modification of the requirements under Local Rule 2016-2, the Trustee Guidelines and any other applicable procedures and orders of the Court.

40.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Express, Inc., et al.*, No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re Proterra*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 25, 2023); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re Party City Holdco Inc., et al.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings*, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. May 1, 2019); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Cumulus Media Inc.*,

No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Breitburn Energy Partners LP*, No. 16-11390 (Bankr. S.D.N.Y. July 20, 2016); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re MACH Gen, LLC*, No. 14 10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014).

41.     The Trustee also believes that employment of Moelis effective as of the Engagement Date is warranted under the circumstances of these Chapter 11 Cases.  Moelis has provided, and will continue to provide, valuable services to the Trustee regarding the contemplated transactions.  *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).

**B.      The Indemnification, Exculpation, Contribution and Reimbursement Terms of the Engagement Letter Are Appropriate.**

42.     The indemnification, exculpation, contribution and reimbursement provisions in the Engagement Letter (the "Indemnification Provisions"), as modified by the Order annexed hereto, were negotiated at arms-length and in good faith between the Trustee and Moelis. The Trustee and Moelis believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases.  *See, e.g.*, *In re Express, Inc., et al.*, No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re Proterra*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 25, 2023); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr.

D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re Party City Holdco Inc., et al.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings*, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. May 1, 2019); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Cumulus Media Inc.*, No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Breitburn Energy Partners LP*, No. 16-11390 (Bankr. S.D.N.Y. July 20, 2016); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re MACH Gen, LLC*, No. 14 10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014).

43.     Accordingly, the Trustee respectfully submits that the terms of the modified Indemnification Provisions are reasonable and customary and should be approved in these Chapter 11 Cases.

**C.      The Retention of Moelis is Critical to the Trustee's Chapter 11 Efforts.**

44.     The Trustee submits that the retention of Moelis is in the best interests of all parties in interest in these Chapter 11 Cases.  As set forth above, Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Moelis is a preeminent investment banking and financial advisory firm that is intimately familiar with Epic's businesses.  Denial of the relief requested herein will deprive the Trustee of the assistance of Moelis' uniquely qualified professionals who will assist them following the Engagement Date.  Indeed, if the Trustee were forced to engage a new investment banker and financial advisor who lacks a thorough understanding of Epic's businesses and the initiatives that have been implemented over the course of Moelis' engagement, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay and increased cost.

45.     Based on the foregoing, the Trustee submits that she has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Trustee to retain and employ Moelis in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

### Notice

46.     The Trustee will provide notice of this application to:  (a) the U.S. Trustee; (b) counsel to GLAS; (c) counsel to the Petitioning Lenders; and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Trustee submits that, in light of the nature of the relief

requested, no other or further notice need be provided.  The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

47.     No prior request for the relief sought in this application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Trustee respectfully requests that the Court enter the Order, substantially in the form attached hereto as **<u>Exhibit B</u>**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  December 6, 2024
Chicago, Illinois

*/s/ Claudia Z. Springer*

CLAUDIA Z. SPRINGER, not individually but solely as chapter 11 trustee of Epic! Creations, Inc. *et al.*