## EXHIBIT B

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| EPIC! CREATIONS, INC., *et al.*,[1] | Case No. 24-11161 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: Jan. 22, 2025, at 10:00 a.m. ET**<br>**Objection Date: Dec. 20, 2024, at 4:00 p.m. ET** |

**ORDER AUTHORIZING AND**
**APPROVING THE CHAPTER 11 TRUSTEE'S EMPLOYMENT**
**AND RETENTION OF MOELIS & COMPANY LLC AS**
**INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE SALE**
**TRANSACTION OF EPIC! CREATIONS, INC. AS OF THE ENGAGEMENT DATE**

Upon the application (the "Application")[2] of Claudia Z. Springer, Esq., in her capacity as Chapter 11 Trustee (the "Trustee") of the estates of Epic! Creations, Inc. ("Epic"), Neuron Fuel, Inc. ("Neuron Fuel"), and Tangible Play, Inc. ("Tangible Play," together with Epic and Neuron Fuel, collectively the "Debtors") in the above-referenced chapter 11 cases for entry of an order (the "Order"): (a) authorizing the employment and retention of Moelis & Company LLC ("Moelis") to serve as the Trustee's investment banker and financial advisor effective as of the Engagement Date pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"); (b) approving the provisions of the engagement letter between Moelis and the Trustee, dated as of November 19, 2024 (the "Engagement Letter"), attached hereto as **Exhibit 1**, including the compensation arrangements and indemnification, contribution and reimbursement provisions set forth therein; (c) modifying certain timekeeping requirements of Bankruptcy Rule

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Epic! Creations, Inc. (9113); Neuron Fuel, Inc. (8758); and Tangible Play, Inc. (9331).

[2]     Capitalized terms used but not defined herein have the meanings given to them in the Application.

2016(a), Local Rule 2016-2, and the guidelines of the United States Trustee for the District of Delaware (the "Trustee Guidelines"), and any other applicable procedures and orders of the Court in connection with Moelis' engagement; and (d) granting such other relief as is just and proper; and this Court finding that it has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. § 1334(b); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application being adequate and appropriate under the particular circumstances; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and upon consideration of the Application, the Murphy Declaration; and upon the record of all proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest, and that the legal and factual bases set forth in the Application and the Murphy Declaration establish just cause for the relief granted herein; and the Court being satisfied, based on the representations made in the Application and the Murphy Declaration, that (a) Moelis does not hold or represent an interest adverse to the Debtors' estates and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.    The Application is **GRANTED** as set forth herein.

2.    Pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Trustee is authorized to employ and retain Moelis as the Trustee's investment banker and financial advisor for the sale transaction of Epic, effective

as of the Engagement Date, on the terms set forth in the Engagement Letter (and all attachments thereto).

3.    In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, the Trustee is authorized to employ and retain Moelis as her exclusive investment banker and financial advisor for the sale transaction of Epic in these Chapter 11 Cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Engagement Date.

4.    Moelis shall be compensated for fees and reimbursed for out-of-pocket expenses by the Trustee in accordance with the terms of the Application and/or Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees and the Sale Transaction Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as set forth herein.

5.    Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of out-of-pocket expenses pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of the Court; *provided, however*, that this Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Moelis' fees under the standard set forth in Section 330 of the Bankruptcy Code; accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or

otherwise, with respect to the reasonableness of Moelis' fees; the U.S. Trustee retains all rights to respond or object to Moelis' interim and final applications for compensation (including without limitation the Monthly Fees and the Sale Transaction Fee and the Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis' interim and final fee pursuant to section 330 of the Bankruptcy Code; and *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of the Court are hereby modified such that Moelis restructuring professionals shall be required only to keep summary time records in hourly increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis' professionals shall not be required to keep time records on a project category basis and Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.      In the event that Moelis seeks reimbursement from the Trustee for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and these invoices and time records shall be subject to the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to

whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without

regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those

expended in representing Moelis in retention and fee application matters.  For the avoidance of

doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect

to reimbursement of attorney's fees and/or expenses set forth in <u>Annex A</u> to the Engagement Letter

with respect to indemnification.

        8.    The indemnification, exculpation, contribution, and reimbursement

provisions included in <u>Annex A</u> to the Engagement Letter are approved, subject during the

pendency of these cases to the following modifications:

a. Subject to the provisions of subparagraphs (b), (c), and (d) below, the Trustee, not individually but solely on behalf of the Estate, is authorized to indemnify, and shall indemnify, the Moelis Persons (as defined in the Engagement Letter) in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Moelis' performance of the services described in the Engagement Letter;

b. All requests by Moelis Persons for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter; *provided*, *however*, that in no event shall any Moelis Person be indemnified to the extent that a court determines by final order that such person acted in its own bad-faith, self-dealing to which the Debtor has not consented, gross negligence, or willful misconduct;

c. In no event shall any Moelis Person be indemnified to the extent the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim arose out of, such Moelis Person's own bad-faith, self-dealing to which the Trustee has not consented, gross negligence, fraud or willful misconduct; and

d. If Moelis or any Moelis Person seeks reimbursement from the Trustee for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Moelis' own applications, both interim and final, and such

5

invoices and time records shall be subject to the U.S. Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.      Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Trustee's other retained professionals in these Chapter 11 Cases.

10.      Such services other than set forth in the Application that the Debtors may request that Moelis provide during the course of these Chapter 11 Cases, and as agreed to by Moelis, shall be subject to separate application and order of this Court.

11.      The Trustee and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

12.      Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of the Local Bankruptcy Rules are satisfied by such notice.

13.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.      To the extent that there may be any inconsistency between the terms of the Application, the Murphy Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

15.     The Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

## EXHIBIT 1

**Engagement Letter**

# Moelis

November 19, 2024

<u>CONFIDENTIAL</u>

Claudia Springer, Chapter 11 Trustee
c/o Novo Advisors
401 North Franklin Street
Suite 4E
Chicago, IL 60654

Dear Claudia:

      This agreement (this "<u>Agreement</u>") confirms that since November 7, 2024, Claudia Springer, not individually but solely as the Chapter 11 Trustee (the "<u>Trustee</u>") of the estate (the "Estate") of Epic! Creations, Inc. ("<u>Epic</u>") has engaged Moelis & Company LLC ("<u>Moelis</u>") to act as the Trustee's financial advisor and investment banker in connection with a Sale Transaction (as defined below). The terms and conditions of this Agreement are subject to approval by the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

For purposes of this Agreement:

"<u>Sale Transaction</u>" means (a) the acquisition by one or more third parties (including creditors) (an "<u>Acquirer</u>") of all or a significant portion of the assets, properties or business of Epic and its Estate, including in exchange for any credit bids, or (b) a sale, disposition or other transfer (regardless of form) to existing creditors of Epic, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Estate, however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "<u>Plan</u>") confirmed in connection with Epic's pending bankruptcy case (Case No. 24-11161, pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy <u>Case</u>").

    1.  As part of its engagement, Moelis will if appropriate and requested by the Trustee:

    (a)      assist the Trustee in reviewing and analyzing the results of Epic's operations, financial condition and business plan;

    (b)      assist the Trustee in reviewing and analyzing any potential Sale Transaction;

    (c)      assist the Trustee in negotiating any Sale Transaction;

    (d)      advise the Trustee on its preparation of information memorandum for, a potential Sale Transaction (each, an "<u>Information Memo</u>");

    (e)      assist the Trustee in contacting potential Acquirers that Moelis and the Trustee agree are appropriate, and meet with and provide them with the Information Memo and such additional information about Epic's assets, properties or businesses that is acceptable to the Trustee, subject to customary business confidentiality agreements; and

    (f)      provide testimony, in the form of affidavits, declarations, and/or live testimony before the Bankruptcy Court, in connection with obtaining the Bankruptcy Court's approval of any Sale Transaction.

# Moelis

(g)     provide such other financial advisory and investment banking services in connection with a Sale Transaction as Moelis and the Trustee may mutually agree upon in writing.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice.

2.   (a)  As compensation for Moelis' services hereunder, the Trustee, not individually but solely on behalf of the Estate, agrees to pay Moelis the following nonrefundable cash fees:

Monthly Fee

(i)     During the term of this Agreement, a fee of $150,000 per month (the "Monthly Fee"), payable in advance of each month. The Trustee will cause the Estate to pay the first Monthly Fee immediately upon the execution of this Agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this Agreement.  Whether or not a Sale Transaction occurs, Moelis will earn and be paid the Monthly Fee every month during the term of this Agreement. 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee (as defined below), provided that such crediting shall not reduce such Sale Transaction Fee payable to less than zero.

Sale Transaction Fee

(ii)     At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") equal to the greater of (i) the Minimum Sale Transaction Fee (as defined below) and (ii) the Minimum Sale Transaction Fee plus an amount based on Transaction Value (as defined in *Annex A*) as follows:

(a) 1.5% for the portion of Transaction Value in excess of $150 million up to and including $200 million; plus

(b) 3.0% for the portion of Transaction Value in excess of $200 million.

"Minimum Sale Transaction Fee" means $2,000,000; provided, that, in the event that a credit bid is selected as the winning bid for a Sale Transaction (such Sale Transaction, a "Credit Bid Sale Transaction"), the Minimum Sale Transaction Fee shall be $1,500,000, regardless of whether a third party bid is received or not.

In the event of a Credit Bid Sale Transaction, the applicable Transaction Value used to calculate the Sale Transaction Fee will be the Transaction Value of the highest binding third party bid that is deemed a "qualified bid" (as will be set forth in the bidding procedures to be approved by the Bankruptcy Court in connection with the Sale Transaction) received during the term of this Agreement and the Sale Transaction Fee will be calculated at a 25% discount to the Sale Transaction Fee calculated based on such Transaction Value (provided however, that such Sale Transaction Fee shall not be lower than the Minimum Sale Transaction Fee).

If, at any time prior to the expiration of 12 months following any termination of this Agreement, the Trustee consummates any Sale Transaction or enters into an agreement or a Plan is filed regarding any Sale Transaction and a Sale Transaction is subsequently consummated, then the Estate shall pay Moelis the Sale Transaction Fee specified in Section 2(a) above immediately upon the closing of any such Sale Transaction(s). Moelis hereby agrees to waive any claims for any "tail" or similar fee arrangement that may be owed or come due under any prior engagement letter(s) with Epic and/or its affiliates.

(b)  Whether or not a Sale Transaction is consummated, the Estate will reimburse Moelis upon request for all of its expenses incurred (including related expenses incurred prior to the date of this Agreement) in entering into and performing services pursuant to this Agreement, including the reasonable

2

# Moelis

costs of Moelis' legal counsel. Moelis agrees to provide the Trustee with reasonable support for its expenses at the Trustee's request or at the Bankruptcy Court's direction.

(c)   The Estate's obligation to pay any fees or expenses set forth herein or to pay any amounts under **Annex A** hereto are not subject to any reduction by way of setoff, recoupment or counterclaim. All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account designated in writing by Moelis. The Trustee agrees that any Sale Transaction Fees payable hereunder will be paid out of the funds flow in connection with the applicable Sale Transaction (to the extent applicable). The Trustee will provide Moelis with a draft copy of any funds flow memorandum or similar document (if any) in advance of any closing of any Sale Transaction.

(d)   If Moelis is required to render services not set forth in this Agreement, including, without limitation, producing documents, being deposed, providing testimony other than in support of a Sale Transaction, relating to this Agreement or the transactions contemplated by this Agreement, the Estate will pay Moelis additional fees to be mutually agreed for such services, plus reasonable costs and expenses related thereto.

(e)   Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Trustee will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Trustee.

3.   Bankruptcy Court Approval and Compensation:

(a)   The Trustee will use her reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Trustee's financial adviser and investment banker in connection with a Sale Transaction under this Agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of this Agreement. The retention application and any order authorizing Moelis' retention must be acceptable to Moelis.

(b)   Moelis will have no obligation to provide services, and the Trustee will have no obligation to pay any amounts to or for the benefit of Moelis under this Agreement, unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 30 days following the date of this Agreement.

(c)   Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of **Annex B** shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Trustee will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Trustee will support Moelis' fee applications that are consistent with this Agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Trustee will pay promptly from the Estate our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules and/or any compensation procedures approved by the Bankruptcy Court.

# Moelis

(d)  The Trustee will use her reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (from the Trustee, the Estate and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to Epic or the engagement described in this Agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.  (a) During the term of this engagement, the Trustee, as reasonably practicable given the information and personnel available to her (i) will furnish Moelis with such information concerning Epic and the Acquirer as Moelis reasonably deems appropriate (collectively, the "Information"); (ii) will provide Moelis with access to Epic's officers, directors, employees, accountants, counsel and other representatives of Epic and, as practicable, those of the Acquirer and (iii) will advise Moelis promptly of any material event or material change in the business, affairs, condition (financial or otherwise) or prospects of Epic, or, to the Trustee's knowledge, the Acquirer .

(b)  To the best of the Trustee's knowledge based on the information available to her, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. In performing its services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of Epic or its Estate.  Moelis will be entitled to assume that financial forecasts and projections the Trustee or any Acquirer makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the Trustee or such Acquirer, as the case may be, as to the matters covered thereby. The Trustee authorizes Moelis to transmit any Information Memos to potential parties to a Sale Transaction. The Estate will be solely responsible for the contents of any Information Memo and all other information provided by or on behalf of the Estate.

(c) Moelis will not disclose to any third party nonpublic Information concerning Epic or the Sale Transaction parties provided to Moelis in connection with this Agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) Moelis may provide nonpublic Information to prospective Sale Transaction parties as contemplated by this Agreement. This paragraph shall terminate one year following the date of this Agreement.

5.  Except as required to obtain Bankruptcy Court approval of her retention of Moelis or of a Sale Transaction, the Trustee will not disclose, summarize or refer to any of Moelis' advice or the terms of this Agreement publicly or to any third party without the prior written consent of Moelis. In the event disclosure is required by subpoena or court order, the Trustee will provide Moelis with reasonable advance notice and permit Moelis to comment on the form and content of the disclosure.  Moelis may, at our option and expense after announcement of any Sale Transaction, announce or disclose publicly such Sale Transaction and Moelis' role in it for marketing purposes, including, without limitation, on Moelis' website, stating that Moelis has acted as financial advisor and investment banker to the Trustee in connection with any Sale Transaction.  If requested by Moelis, the Trustee shall include a mutually acceptable reference to Moelis in any public announcement of a Sale Transaction. Following a public announcement or public confirmation or Trustee public filing relating to a potential Sale Transaction, Moelis may also announce or disclose publicly its role in the potential Sale Transaction.

6.  Moelis is an independent contractor with the contractual obligations described herein owing solely to the Trustee, on behalf of the Estate. The parties agree that Moelis is not acting as an agent or

# Moelis

fiduciary of the Trustee, Epic, or any other party, and the Trustee agrees to not make any claims against Moelis based on an agency or fiduciary relationship. The Trustee, not individually but solely on behalf of the Estate, and Moelis agree to the indemnity and other provisions set forth in **Annex B**. Other than the Moelis Persons, there are no third party beneficiaries of this Agreement.

7.     Either the Trustee or Moelis may terminate this Agreement upon written notice thereof to the other party.  In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) **Annex B**, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the termination of this Agreement.

8.     Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise.  Moelis and its affiliates may have interests that differ from the interests of the Trustee.  Moelis and its affiliates have no duty to disclose to any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses.  Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.  Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

9.     This Agreement and any disputes or claims that may arise out of this Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this Agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Trustee and Moelis. If any part of this Agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this Agreement shall be heard exclusively in the city and county of New York, to whose jurisdiction and forum Moelis and the Trustee irrevocably submit; provided, however, any such action or proceedings arising during the pendency of the Bankruptcy Case shall be brought in the Bankruptcy Court. The Trustee also irrevocably consents to the service of process in any such proceeding by mail to the Trustee's address set forth above.  This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same Agreement.  This Agreement shall be binding upon the Trustee and Moelis and its and our respective successors and permitted assigns. MOELIS AND THE TRUSTEE (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

# Moelis

Moelis is delighted to accept this engagement and looks forward to working with the Trustee.  Please sign and return the enclosed duplicate of this Agreement.  The individuals signing this Agreement each represent that he or she is authorized to execute and deliver it on behalf of the entities whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

*Nathan Laverriere*

By: ___Nathan Laverriere (Nov 20, 2024 13:18 EST)___
         Name:  Nate Laverriere
         Title:  Managing Director

Agreed to as of the date first written above:

Claudia Springer, not individually, but as Chapter 11 Trustee of the Estate of Epic! Creations, Inc.

By: _*Claudia Z. Springer, Chapter 11 Trustee*_
      Name: Claudia Springer
      Title: Chapter 11 Trustee

6

# Moelis

## ANNEX A

"Transaction Value" means the fully diluted enterprise value of the Estate implied by the Sale Transaction and includes the sum of, without duplication: (A) total gross consideration received or to be received, directly or indirectly, by the Estate in connection with the Sale Transaction, plus the implied value of the securities or assets of Epic that are not sold or transferred in the Sale Transaction (calculated based on the consideration involved in the Sale Transaction); (B) the principal amount of all indebtedness for borrowed money (net of cash and cash equivalents up to the amount of such indebtedness), in each case as set forth on the most recent balance sheet of the Estate immediately prior to the closing of the Sale Transaction that are directly or indirectly assumed, acquired, retired or transferred in connection with the Sale Transaction; (C) the amount of fees, costs, expenses or other payment obligations (including financial advisory and legal fees, change of control payments and "success" fees) the Estate incurs or owes in connection with or as a result of the Sale Transaction; and (D) amounts payable in connection with the Sale Transaction under consulting agreements, agreements not to compete or similar arrangements (including such payments to management) in excess of market amounts (only to the extent there is a deduction to purchase price for such amounts under the purchase agreement (unless such amounts have been previously paid)). Future or contingent amounts to be received in the Sale Transaction, including earn-outs or similar contingent payments will be included in Transaction Value at the closing, utilizing a discount rate and probability of payment as mutually agreed by the parties hereto. Installment payments or amounts paid into escrow will be included in Transaction Value at closing. Consideration consisting of securities that are publicly traded (or any securities convertible or exchangeable into such securities or any securities of the same class as such securities) will be valued at the trading price thereof (or the trading price of any such securities of a predecessor entity) on the day immediately prior to the closing of the Sale Transaction. Any non-marketable securities or other non-cash consideration will be valued as the Trustee and Moelis may mutually agree in good faith. For purposes of this paragraph, consideration includes cash, securities, property, rights or any other form of consideration. Notwithstanding anything to the contrary herein, to the extent that the parties do not agree on the Transaction Value associated with the consummated Sale Transaction, the parties agree to negotiate in good faith to determine a reasonable Transaction Value; *provided* that, should the parties fail to reach agreement on a reasonable Transaction Value, the parties agree to refer the matter to an agreed neutral third party valuation expert or the Bankruptcy Court to determine the Transaction Value, and the decision of such arbitrator shall be binding on the parties; *provided, further*, that the advisors to the administrative agent under the prepetition term loan facility and debtor-in-possession financing facility shall be entitled to participate in such negotiations or valuation process.

# Moelis

<u>**ANNEX B**</u>

The Trustee, not individually but solely on behalf of the Estate, will indemnify and hold harmless Moelis, its affiliates and any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Moelis Persons") from and against any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to or arising out of the Trustee's actions or omissions (or the actions or omissions of Epic's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the Agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Trustee or her agents in connection with the matters contemplated in the Agreement, or (B) otherwise arising out of, related to or in connection with the Agreement, the matters contemplated in the Agreement, or Moelis' performance of the Agreement (or any other services or advice the Trustee requests Moelis to provide) in each case, including prior to the date of the Agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of such Moelis Person.

The Trustee agrees that no Moelis Person shall have any liability to the Trustee, the Estate, Epic or its affiliates or any of the Trustee's, the Estate's or Epic's respective owners, directors, officers, employees, security holders or creditors for any Losses (A)(i) related to or arising out of the Trustee's actions or omissions (or the actions or omissions of Epic's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the Agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Trustee or her agents in connection with the matters contemplated in the Agreement, or (B) otherwise arising out of, related to or in connection with the Agreement, the matters contemplated in the Agreement or Moelis' performance of the Agreement (or any other services or advice the Trustee requests Moelis to provide) in each case, including prior to the date of the Agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of such Moelis Person.

If such indemnification or limitation on liability is for any reason not available or is insufficient to hold a Moelis Person harmless, the Trustee, not individually but solely on behalf of the Estate, agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Estate, on the one hand, and by Moelis, on the other hand, with respect to the Agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Trustee or the Estate, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; provided, however, that, to the extent permitted by applicable law, in no event shall the Moelis Persons be responsible for amounts that exceed the fees actually received by Moelis from the Trustee in connection with the Agreement. Relative benefits to the Estate, on the one hand, and Moelis, on the other hand, with respect to the Agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Estate, as the case may be, pursuant to the transaction(s) contemplated by the Agreement, whether or not consummated, bears to (ii) the fees actually received by Moelis in connection with the Agreement.

The Trustee will not, without Moelis' prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any actual or threatened action, claim, suit, investigation or proceeding (an "Action") (or participate in or facilitate a Settlement of any Action) in respect of which indemnification or contribution is or may be sought hereunder (whether or not a Moelis Person is a party thereto) unless such Settlement includes a release of each Moelis Person from any Losses arising out of such Action. The Trustee will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of a Moelis Person without such Moelis Person's prior written consent. No Moelis Person seeking indemnification or contribution under the Agreement will, without the Trustee's prior written consent (not to be unreasonably

# Moelis

withheld), agree to the Settlement of any Action. The Trustee's obligations set forth in this *Annex B* shall be in addition to any rights that any Moelis Person may have at common law or otherwise.

In the event that any Moelis Person becomes involved in any capacity in any Action arising out of, related to or in connection with the Agreement or any matter referred to in the Agreement (including, without limitation, related matters prior to the date of the Agreement), the Trustee will reimburse such Moelis Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing the Agreement (including, without limitation, each of the provisions of this *Annex B*), as they are incurred.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Trustee set forth herein, the Trustee will notify Moelis in writing of its arrangements for the Estate's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Trustee and Moelis.

To the extent of any inconsistency between this Annex B and the Order of the Bankruptcy Court approving this Agreement, the Bankruptcy Court's Order controls.