**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>EPIC! CREATIONS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11161 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: March 31, 2025 at 10:00 a.m. (ET)<br>Obj. Deadline: March 24, 2025 at 4:00 p.m. (ET) |

**CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER AUTHORIZING**
**THE ASSUMPTION AND ASSIGNMENT**
**OF TANGIBLE PLAY LEASE AND GUARANTY AGREEMENT**

Claudia Z. Springer, not individually but solely as chapter 11 trustee (the "Trustee") for the estates (the "Estates") of Epic! Creations, Inc. ("Epic"), Tangible Play, Inc. ("Tangible Play"), and Neuron Fuel, Inc. ("Neuron," together with Epic and Tangible Play, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), files this motion (the "Motion") for entry of an Order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (a) authorizing the Trustee to assume and assign the Agreement between Seccion I, S.A. DE C.V., as Lessee, Tangibly Play, as Guarantor, and Florida California S.A. DE C.V., as Lessor dated December 1, 2021 (the "Lease and Guaranty Agreement")[2] to Visual Citi, Inc., and LZHK, Inc., as joint Assignee-Guarantors, and (b) granting related relief. In support of the Motion, the Trustee respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Epic! Creations, Inc. (9113); Neuron Fuel, Inc. (8758); and Tangible Play, Inc. (9331).

[2] A true and correct copy of the Lease and Guaranty Agreement is attached to the Proposed Order as **Exhibit 1.**

**JURISDICTION AND STATUTORY BASES FOR RELIEF**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedures ("Bankruptcy Rules").

3. The Trustee confirms her consent, pursuant to rule 9013-1(f) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

*The Chapter 11 Cases*

4. The Debtors are three (3) formerly unaffiliated U.S.-based education technology companies that develop and distribute three separate lines of educational products. Between 2019 and 2021, T&L, an Indian corporation founded by Byju Raveendran in 2011 with a stated purpose of providing accessible education technology, acquired each Debtor.

5. On November 24, 2021, the Debtors' former affiliate, BYJU's Alpha, Inc., as borrower, and GLAS Trust Company LLC, as administrative and collateral agent, and certain lenders, closed on a $1.2 billion term loan facility under that certain Credit and Guaranty

Agreement dated as of November 24, 2021 (the "Credit Agreement"). Among others, T&L and each Debtor guaranteed BYJU's Alpha, Inc.'s obligations under the Credit Agreement.

6. In January 2022, T&L was briefly lauded as India's most valuable start-up. It acquired the Debtors and at least fourteen other emerging education-related businesses for more than $3 billion. However, by October 2022, T&L had defaulted on its respective obligations as a guarantor under the Credit Agreement and has been embroiled in protracted disputes with the Prepetition Lenders (as defined below) and other creditors around the world ever since. In July 2024, T&L was placed into involuntary insolvency proceedings in India and an interim resolution professional was appointed to manage T&L's assets and businesses.

7. On June 4 and 5, 2024 (the "Petition Date"), GLAS Trust Company LLC, in its capacity as administrative and collateral agent under the Credit Agreement, and certain lenders under the Credit Agreement (the "Prepetition Lenders") filed an involuntary chapter 11 petition against each Debtor. [D.I. 1]. Further factual background regarding the Debtors, including their business operations and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the *Declaration of Claudia Z. Springer in Support of First Day Motions* [D.I. 193] (the "First Day Declaration"), which is fully incorporated into this Motion by reference.

8. On June 27, 2024, this Court entered an order directing joint administration of the Debtors' cases for procedural purposes. [D.I. 61].

9. On September 16, 2024 (the "Order for Relief Date"), this Court entered an order for relief in the Debtors' involuntary chapter 11 cases and directed the appointment of a chapter 11 trustee. [D.I. 147].

10. On September 23, 2024, the United States Trustee for Region 3 duly appointed Claudia Z. Springer as chapter 11 trustee of each Debtor, subject to approval by the Court, *see* D.I.

3

152, and on October 7, 2024, this Court entered an order approving the appointment of the Trustee. *See* D.I. 180.

11. On January 31, 2024, the Trustee filed each Debtor's schedules of assets and liabilities ("Schedules") and statement of financial affairs ("SOFA"). [D.I. 483–488], and the Lease and Guaranty Agreement was listed in the Schedules for Tangible Play.

### *Tangible Play's Lease and Guaranty Agreement*

12. Prior to the Petition Date, Tangible Play, as Guarantor, entered into the Lease and Guaranty Agreement with an end date of December 2025.

13. As part of the process of reviewing all the Debtors' unexpired leases, the Trustee and her professionals determined to consolidate most, if not all, of Tangible Play's inventory to one of its other warehouses and move out of the warehouse associated with the Lease and Guaranty Agreement to reduce unnecessary expenses.

14. To ensure no deterioration of the relationship with the Lease and Guaranty Agreement counterparties, which is critical in light of the new administration, and to avoid any rejection damages, Tangible Play agreed to cover rent payments until May 31, 2025.

15. The Trustee and her professionals have strategically reviewed the Lease and Guaranty Agreement in connection with their efforts to maximize the value of its estates in these Chapter 11 Cases and determined that to assume and assign the Lease and Guaranty Agreement would save Tangible Play's estate approximately $240,000 in rent payments for an unused space.[3]

16. For that reason, the Trustee has determined that assigning Tangible Play's guarantor rights under the Lease and Guaranty Agreement to Visual Citi, Inc., and LZHK, Inc. (together, the "Assignee-Guarantors") is in the best interest of Tangible Play's estate.

---

[3] This amount is based off the approximation of six months' rent, taxes and utilities.

17. Accordingly, as set forth below, the Trustee seeks authorization to assume and assign the Lease and Guaranty Agreement to Assignees pursuant to section 365 of the Bankruptcy Code.

## RELIEF REQUESTED

18. By this Motion, the Trustee seeks the entry of an order under Section 365 of the Bankruptcy Code and Bankruptcy Rules 6006 and 9014 (1) authorizing the Trustee to assume and assign the Lease and Guaranty Agreement and (2) setting a cure amount with respect thereto as $0.00 (the "Cure Amount").[4]

## BASIS FOR RELIEF REQUESTED

19. Section 365 provides that a Chapter 11 debtor, subject to bankruptcy court approval, may assume or reject executory contracts at any time prior to plan confirmation. 11 U.S.C. § 365(a) and (d)(2). The standard governing bankruptcy court approval of a debtor's decision to assume or reject executory contracts is whether the debtor's reasonable business judgment supports assumption or rejection. *See*, *e.g.*, *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (finding that a debtor's decision to assume or reject an executory contract will stand so long as "a reasonable business person would make a similar decision under similar circumstances"); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a

---

[4] *See also Notice of Counterparties to Potentially Assumed and Assigned Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to the Successful Bidder at Auction* [D.I. 510] (the "Original Cure Notice") which sets forth $0.00 as the cure amount and no objection was filed with respect to same.

matter of business judgment by the bankruptcy court" (citation omitted)); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39- 40 (3d Cir. 1989) (same).

20. If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Grp. of Inst. Investors v. Chi. M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel*, 872 F.2d at 39–40. The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assocs.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y 1984)). Any more exacting scrutiny would slow the administration of a debtor's estate, increase costs, interfere with the Bankruptcy Code's provision for private control of the administration of the estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) (citation omitted).

21. Moreover, section 365(b)(1) of the Bankruptcy Code establishes certain conditions that must be satisfied before the assumption of an executory contract:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee: –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

22. Lastly, section 365(f)(2) of the Bankruptcy Code provides in the pertinent part that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

23. Here, the Trustee's business judgement, with the advice of her professional team, supports assumption and assignment. Without the assumption and assignment, Tangible Play will be obligated to pay approximately $240,000 for a space that it no longer uses – there is no benefit to the estate to remain a party to the Lease and Guaranty Agreement, instead, it is only a burden. For this reason, remaining as the Guarantor on the Lease and Guaranty Agreement is a waste of Tangible Play's assets.

24. As it relates to payment of cure costs, as noted previously, the Cure Amount is $0.00 as reflected in the Original Cure Notice. The landlord did not object to the Original Cure Notice, with respect to this Lease and Guaranty Agreement, and thus the Cure Amount is no longer subject to objection. Tangible Play will continue performing under the Lease and Guaranty Agreement until May 31, 2025.

25. Finally, the Trustee further believes that adequate assurance of future performance is demonstrated since the Assignee-Guarantors will continue to perform under the Lease and Guaranty Agreement, in the same manner as Tangible Play did. Accordingly, the Trustee submits "adequate assurance of future performance" exists within the meaning of section 365 of the Bankruptcy Code.

## WAIVER OF BANKRUPTCY RULES 6006(D)

26. Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Given that all affected parties have consented to the relief and would like the assignment to occur as soon as possible, there is no reason to delay the effectiveness of the assumption and assignment. Therefore, the Trustee requests that the order authorizing the assumption and assignment of the Lease and Guaranty Agreement be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6006(d) is waived.

## RESERVATION OF RIGHTS

27. Nothing contained in this Motion is (i) an admission as to the validity of any claim against any Debtors or the existence of any lien against the Debtors' assets; (ii) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; or (iv) an implication or admission that any particular claim would constitute an allowed claim.

## NOTICE

28. The Trustee will provide notice of this Motion to the following parties: (a) the U.S. Trustee, (b) the Debtors' counsel of record and registered agents, (c) the holders of the 20 largest known unsecured claims against the Debtors (on a consolidated basis, as and if identified), (d) the Lease and Guaranty Agreement counterparties, (e) the Prepetition Agent and counsel thereto, (f) the Prepetition Secured Lenders and counsel thereto, (g) the DIP Secured Parties, and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

29. No previous request for the relief sought herein has been made by the Trustee to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter the Proposed Order, granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated: March 17, 2025
Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Alexis R. Gambale*
Henry J. Jaffe (No. 2987)
Joseph C. Barsalona II (No. 6102)
Alexis R. Gambale (No. 7150)
824 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email:  hjaffe@pashmanstein.com
   jbarsalona@pashmanstein.com
   agambale@pashmanstein.com

-and-

**JENNER & BLOCK LLP**
Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 923-2952
Email:  csteege@jenner.com
   mroot@jenner.com
   wwilliams@jenner.com

*Co-counsel to the Trustee*