## Exhibit A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EPIC! CREATIONS, INC., *et al.*,[1] | Case No. 24-11161 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. __** |

### ORDER AUTHORIZING THE ASSUMPTION AND ASSIGNMENT
### OF TANGIBLE PLAY LEASE AND GUARANTY AGREEMENT

Upon the motion (the "<u>Motion</u>")[2] of the Trustee for entry of an order (this "<u>Order</u>"), pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, authorizing the Trustee to assume and assign the Lease and Guaranty Agreement to Visual Citi, Inc., and LZHK, Inc. (the "<u>Assignee-Guarantors</u>"), all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Trustee's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any (the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Epic! Creations, Inc. (9113); Neuron Fuel, Inc. (8758); and Tangible Play, Inc. (9331).

[2]     All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

"Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      Tangible Play is authorized to assume and assign the Lease and Guaranty Agreement set forth on **Exhibit 1** to the Assignee-Guarantors pursuant to sections 105(a) and 365 of the Bankruptcy Code, effective as of May 31, 2025 (the "Effective Date"), and such Lease and Guaranty Agreement is deemed assumed and assigned to the Assignee-Guarantors without the need for any further Court order or the execution of any further documents or other instruments.

3.      There are no cure costs due in connection with the assumption and assignment of the Lease and Guaranty Agreement.

4.      All defaults or other obligations under the Lease and Guaranty Agreement arising prior to the Effective Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), if any, shall be deemed satisfied or waived by the contract counterparties to such Lease and Guaranty Agreement, and the contract counterparties shall be forever barred, estopped, and permanently enjoined from asserting, imposing, charging or claiming against the Tangible Play (i) that any amounts are due or any defaults exist, (ii) any counterclaim, defense, setoff, or any other claim asserted or assertable against the Tangible Play, and (iii) any accelerations, assignment fees, increases, or any other fees as a result of the Trustee's assumption and assignment of the Lease and Guaranty Agreement.

5.      The Assignee-Guarantors have demonstrated adequate assurance of future performance and have satisfied the requirements set forth in section 365(b)(1) of the Bankruptcy Code.

6.      The contract counterparties to the Lease and Guaranty Agreement shall be deemed to have consented to the assumption and assignment of the Lease and Guaranty Agreement under section 365(c)(1) of the Bankruptcy Code, section 365(e)(2) of the Bankruptcy Code, or otherwise, and the Assignee-Guarantors shall enjoy all of the rights and benefits under the assumed and assigned Lease and Guaranty Agreement as of the Effective Date.

7.      The Assignee-Guarantors shall be obligated to perform obligations, arising from or after the Effective Date. Tangible Play shall be relieved of any liability resulting from any subsequent breach of the Lease and Guaranty Agreement pursuant to section 365(k) of the Bankruptcy Code.

8.      Notwithstanding the provisions of Bankruptcy Rule 6006(d), this Order shall be effective immediately upon entry.

9.      The Trustee is authorized to take all actions necessary to implement the relief granted in this Order.

10.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Exhibit 1**

## CONTRATO DE ARRENDAMIENTO

CONTRATO DE ARRENDAMIENTO (EL "**CONTRATO**") QUE CELEBRAN **EL FLORIDO CALIFORNIA S.A. DE C.V.**, A QUIEN EN LO SUCESIVO SE LE DENOMINARÁ EL "**ARRENDADOR**", REPRESENTADA POR LA DRA. GEORGINA SERRANO CUEVAS Y EL LIC. JOSÉ LUIS NORIEGA BALCÁRCEL; **SECCION I, S.A. DE C.V.**, A QUIEN EN LO SUCESIVO SE LE DENOMINARÁ EL "**ARRENDATARIO**", REPRESENTADA EN ESTE ACTO POR **GLORIA IDOLINA RIOS CASTRO**; Y **TANGIBLE PLAY, INC.**, A QUIEN EN LO SUCESIVO SE LE DENOMINARÁ EL "**OBLIGADO SOLIDARIO**" REPRESENTADA EN ESTE ACTO POR **SANDHYA NATH**; DE CONFORMIDAD CON LAS SIGUIENTES DECLARACIONES Y CLÁUSULAS:

## DECLARACIONES:

1. El ARRENDADOR por conducto de sus representantes declara:

1.1. Que es una persona moral debidamente constituida bajo las leyes de los Estados Unidos Mexicanos y es Fideicomitente y Fideicomisaria del Fideicomiso denominado "Submetrópoli de Tijuana" según lo acredita mediante escritura pública de fecha 21 de noviembre de 2019, número 116,189 del volumen 1,693 del protocolo de la Notaría Pública Número 3 de Ensenada, Baja California, de la cual se tomó razón en la oficina de Tijuana, del Registro Público de la Propiedad y de Comercio del Estado de Baja California, el día 10 de diciembre de 2019, bajo la partida número 6´182,760 de la Sección Civil.

1.2. Que como parte del patrimonio del Fideicomiso "Submetrópoli de Tijuana" se encuentra la fracción de terreno identificada como **FRACCIÓN "2-AÑ2-I"** con superficie de 38,519.815 M², resultante de la subdivisión del Lote "2-AÑ2", resultante de la subdivisión de la fracción "2-AÑ", a su vez resultante de la subdivisión del lote 2-13 de la manzana S/N de la Colonia El Florido, La Presa, de esta ciudad de Tijuana, Baja California, México.

## LEASE AGREEMENT

LEASE AGREEMENT (THE "**LEASE**") ENTERED INTO BY AND BETWEEN **EL FLORIDO CALIFORNIA S.A. DE C.V.**, HEREINAFTER REFERRED TO AS "**LESSOR**", REPRESENTED HEREIN BY MRS. GEORGINA SERRANO CUEVAS AND MR. JOSÉ LUIS NORIEGA BALCÁRCEL; **SECCION I, S.A. DE C.V.**, HEREINAFTER REFERRED TO AS "**LESSEE**", REPRESENTED HEREIN BY **GLORIA IDOLINA RIOS CASTRO**; AND **TANGIBLE PLAY, INC.**, HEREINAFTER REFERRED TO AS "**GUARANTOR**" REPRESENTED HEREIN BY **SANDHYA NATH**; PURSUANT TO THE FOLLOWING RECITALS AND CLAUSES:

## RECITALS:

1. LESSOR through its representatives states:

1.1. That it is a company duly incorporated under the laws of the United Mexican States and it is the Trustor and Trust Beneficiary of the Trust called "Submetropoli de Tijuana", as evidenced with public instrument dated November 21st, 2019, number 116,189 of volume 1,693 of Notary Public Number 3 for Ensenada, Baja California, which was recorded at the Tijuana Office of the Public Registry of Property and Commerce of the State of Baja California on December 10, 2019, under record number 6´182,760 Civil Section.

1.2. That as part of the patrimony of the "Submetropoli de Tijuana" Trust, it is **FRACTION "2-AÑ2-I"** that has a surface area of 38,519.815 square meters, which resulted from the subdivision of Lot "2-AÑ2", that resulted from the subdivision of fraction "2-AÑ", which in turn resulted from the subdivision of lot 2-13 of block S/N of "Colonia El Florido, La Presa", of this city of Tijuana, Baja California, Mexico.

1

1.3. Que en el plano que se adjunta al presente Contrato como **Anexo "A"** se describe referida **FRACCIÓN "2-AÑ2-I"** con superficie de 38,519.815 M², resultante de la subdivisión del Lote "2-AÑ2", resultante de la subdivisión de la fracción "2-AÑ", a su vez resultante de la subdivisión del lote 2-13 de la manzana S/N de la Colonia El Florido, La Presa, de esta ciudad de Tijuana, Baja California, México, a cuya Fracción "2-AÑ-I" en lo sucesivo se le referirá como el **"Lote"**.

1.4. Que se encuentra en proceso de construir ciertas mejoras en el Lote, consistente en una nave industrial con una área de construcción de aproximadamente **156,689 (ciento cincuenta y seis mil seiscientos ochenta y nueve) pies cuadrados** (en lo sucesivo la **"Nave Industrial"**). Las especificaciones con que contará la Nave Industrial se adjuntan al presente como **Anexo "B"**.

1.5. Que desea arrendar al ARRENDATARIO una porción de la edificación industrial a que se refiere la **Declaración 1.4** anterior, cuya porción contará con superficie de construcción de aproximadamente **41,689 (cuarenta y un mil seiscientos ochenta y nueve)** pies cuadrados a la cual para efectos contractuales se le identificada con el siguiente domicilio: **Blvd. Olivos Número 24802 Interior "A", Colonia Fideicomiso El Florido, Tijuana, Baja California** (en lo sucesivo el **"INMUEBLE ARRENDADO"**). Un juego de planos en los que se describe el INMUEBLE ARRENDADO se adjuntan al presente como **Anexo "C"**.

1.6. Que sus representantes cuentan con las facultades suficientes para celebrar el presente contrato, mismas que acreditan mediante escritura pública 114,839 de fecha 18 de julio de 2018, otorgada ante el Lic. Rodrigo Armada Osorio, Notario Público Número 3, en Ensenada, Baja California.

2. El ARRENDATARIO, por conducto de su representante, declara:

1.3. That in the drawing attached hereto as **Exhibit "A"** it is described referred **FRACTION "2-AÑ2-I"** that has a surface area of 38,519.815 square meters, which resulted from the subdivision of Lot "2-AÑ2", that resulted from the subdivision of fraction "2-AÑ", which in turn resulted from the subdivision of lot 2-13 of block S/N of "Colonia El Florido", "La Presa", of this city of Tijuana, Baja California, Mexico, which Fraction "2-AÑ-I" will be hereinafter referred to the **"Lot"**.

1.4. That it is process of constructing certain improvements on the Lot, consisting of an industrial facility with an approximate construction area of **156,689 (one hundred fifty six thousand six hundred eighty nine) square feet** (hereinafter the **"Industrial Facility"**). The specifications that the Industrial Facility will have are attached hereto as **Exhibit "B"**.

1.5. That it wishes to lease to LESSEE a portion of the industrial building referred to in **Recital 1.4** above, which portion will have a construction area of approximately **41,689 (forty one thousand six hundred eighty nine)** square feet which for contractual purposes will be identified with the following address: **Blvd. Olivos Número 24802 Interior "A", Colonia Fideicomiso El Florido, Tijuana, Baja California** (hereinafter the **"LEASED PREMISES"**). A set of drawings that describe the LEASED PREMISES are attached hereto as **Exhibit "C"**.

1.6. That its representatives have sufficient authority to execute this agreement, as evidenced with public instrument 114,839 dated July 18, 2018, granted before of Mr. Rodrigo Armada Osorio, Notary Public Number 3 in Ensenada, State of Baja California.

2. LESSEE, through its representative, hereby states:

2

2.1. Que es una sociedad debidamente constituida de conformidad con las Leyes de los Estados Unidos Mexicanos.

2.2. Que está debidamente representado por Gloria Idolina Rios Castro, quien cuenta con la capacidad necesaria para celebrar este Contrato en su representación, según consta en la escritura pública que se adjunta al presente como **Anexo "D"**. Más aún, Gloria Idolina Rios Castro hace constar que dicha capacidad no le ha sido limitada o revocada en forma alguna.

2.3. Que en términos de lo dispuesto por el artículo 18 de la Ley Federal para la Prevención e Identificación de Operaciones con Recursos de Procedencia Ilícita, manifiesta bajo protesta de decir verdad, que los recursos económicos que serán invertidos para el pago de todas y cada una de sus obligaciones conforme al presente Contrato, los que incluyen pero no limitan a los correspondientes al pago de rentas, deposito en garantía, realización de adaptaciones o cualesquiera otras, provienen de fuentes y/o actividades lícitas.

2.4. Que manifiesta bajo protesta de decir verdad que la información y los datos contenidos en el **Anexo "E"** del presente son correctos y verdaderos y que la documentación relacionada en dicho **Anexo "E"** y que forma parte del mismo, es copia fiel y exacta de sus originales.

2.5. Que desea celebrar el presente contrato de conformidad con los términos y condiciones aquí establecidos.

3. El OBLIGADO SOLIDARIO, por conducto de su representante, declara:

3.1. Que es una sociedad debidamente constituida de conformidad con las Leyes del Estado de Delaware, E.U.A.

3.2. Que está debidamente representado por Sandhya Nath quien cuenta con la capacidad necesaria para celebrar este Contrato en su representación, según consta en la documentación que en fotocopia se adjunta al

2.1. It is a company duly incorporated under the laws of the United Mexican States.

2.2. That it is duly represented herein by Gloria Idolina Rios Castro, who has the required authority to execute this Agreement on its behalf, as evidenced by the public instrument that in photocopy is attached hereto as **Exhibit "D"**. Furthermore, Gloria Idolina Rios Castro, hereby represents that such authority has not been limited nor revoked in any manner whatsoever.

2.3. That as set forth under aricle 18 of the "Ley Federal para la Prevención e Identificación de Operaciones con Recursos de Procedencia Ilícita", it states under oath that the economic resources that will be invested for the payment of each and of its obligations hereunder, including but not limited to the payment of rent, deposit in guarantee, adaptations and any other, have their origin from legal activities.

2.4. That it states under oath, that the information and data contained in **Exhibit "E"** hereto is true and correct, and that the documentation described in such **Exhibit "E"** and that forms part of the same is true and correct copy taken from its originals.

2.5. That it wishes to execute this agreement in accordance with the terms and conditions herein set forth.

3. GUARANTOR, through its representative, hereby states:

3.1. It is a company duly incorporated under the laws of the state of Delaware, USA

3.2. That it is duly represented herein by Sandhya Nath, who has the required authority to execute this Agreement on its behalf, as evidenced by the documentation that in photocopy is attached hereto as **Exhibit "F"**

3

presente como **Anexo "F"**. Más aún, Sandhya Nath hace constar que dicha capacidad no le ha sido limitada o revocada en forma alguna.

3.3. Que cuenta con la capacidad financiera y solvencia económica suficiente para poder cumplir sus obligaciones conforme al presente Contrato, especialmente las de índole económico.

3.4. Que por su estrecha relación de negocios con el ARRENDATARIO, ha convenido en constituirse, para todos los efectos legales, en Obligado Solidario del ARRENDATARIO, respecto del cumplimiento de sus obligaciones derivadas del presente Contrato.

3.5. Que no requiere autorización o consentimiento alguno para la celebración del presente Contrato.

3.6. La celebración del presente Contrato no viola ley u ordenamiento legal, contrato, compromiso, convenio o acuerdo alguno celebrado por el OBLIGADO SOLIDARIO, ni viola resoluciones, sentencias u orden alguna, ni su celebración causará incumplimiento alguno.

3.7. Que conoce el contenido de cada uno de los artículos del Código Civil el Estado de Baja California citados en el presente Contrato, por lo cual no son reproducidos en este Contrato dada tal declaración expresa del OBLIGADO SOLIDARIO.

3.8. Que manifiesta bajo protesta de decir verdad que la información y los datos contenidos en el **Anexo "G"** del presente son correctos y verdaderos y que la documentación relacionada en dicho **Anexo "G"** y que forma parte del mismo, es copia fiel y exacta de sus originales.

3.9. Que es su voluntad constituirse como obligado solidario de todas y cada una de las obligaciones del ARRENDATARIO derivadas del presente Contrato, por lo que entiende que el ARRENDADOR está facultado para reclamarle el cumplimiento de las obligaciones que se generen del presente Arrendamiento de

Furthermore, Sandhya Nath, hereby represents that such authority has not been limited nor revoked in any manner whatsoever.

3.3. That is has the financial capacity and sufficient economic solvency to comply with its obligations hereunder, especially those of economic nature.

3.4. That due to its close business relationship with LESSEE, it has agreed to constitute itself, for all legal purposes and effects, as joint obligor of LESSEE with respect to the compliance of all of LESSEE's obligations hereunder.

3.5. That it does not require authorization or consent whatsoever to enter into this Agreement.

3.6. That the execution of this Agreement does not violate any law or legal ordinance, agreement, compromise, contract or agreement in general entered by GUARANTOR, nor violates resolutions, court resolutions or order whatsoever, nor its execution will cause default whatsoever.

3.7. That it knows the contents of each and every article of the Civil Code for the State of Baja California herein referred, reason for which the same are not transcribed due to such representation of GUARANTOR.

3.8. That it states under oath, that the information and data contained in **Exhibit "G"** hereto is true and correct, and that the documentation described in such **Exhibit "G"** and that forms part of the same is true and correct copy taken from its originals.

3.9. It wishes to constitute itself as joint obligor of each and all of LESSEE's obligations hereunder, reason for which it understands that LESSOR is authorized to demand GUARANTOR the compliance of LESSEE's obligations hereunder, severally or jointly with LESSEE.

4

manera indistinta, separada o conjunta con el ARRENDATARIO.

Habiendo declarado lo anterior, las partes convienen en las siguientes:

Having stated the foregoing, the parties hereto agree to the following:

## CLÁUSULAS:

## CLAUSES:

### PRIMERA. ARRENDAMIENTO.

### FIRST. LEASE.

Sujeto a los términos y condiciones aquí establecidos, el ARRENDADOR arrienda al ARRENDATARIO y el ARRENDATARIO toma en arrendamiento del ARRENDADOR el INMUEBLE ARRENDADO.

Subject to the terms and conditions herein set forth, the LESSOR hereby leases to LESSEE and LESSEE hereby leases from LESSOR the LEASED PREMISES.

### SEGUNDA. USO PACÍFICO.

### SECOND. QUIET ENJOYMENT.

2.1. Sujeto al cumplimiento oportuno de todas y cada una de las obligaciones a cargo del ARRENDATARIO bajo el presente Contrato, el ARRENDADOR garantiza al ARRENDATARIO el uso y goce pacífico del INMUEBLE ARRENDADO, sin perturbación o molestia alguna por parte del ARRENDADOR.

2.1. Subject to the timely performance of each and all of LESSEE's obligations hereunder, LESSOR guarantees that LESSEE shall have the use and quiet enjoyment of the LEASED PREMISES without hindrance, ejection or molestation by LESSOR.

2.2. Este arrendamiento prevalecerá sobre cualquier ejecución de gravámenes o hipotecas del ARRENDADOR, así como cualquier enajenación el INMUEBLE ARRENDADO, y la falta de cumplimiento en el pago de dichos gravámenes o hipotecas no podrán perjudicar los términos de este contrato o sus renovaciones.

2.2. This lease shall survive the foreclosure of any lien or any mortgage of LESSOR, as well as any transfer of title to the LEASED PREMISES, and any default in payment of any such lien or mortgage shall in no way affect the terms of this Lease or any renewals thereof.

2.3. El ARRENDATARIO reconoce que se ha establecido un reglamento con el carácter de obligatorio para todos los ocupantes del Parque Industrial. Dicho reglamento se adjunta al presente Contrato como **Anexo "H"** y el ARRENDATARIO reconoce saber su contenido y acepta el estar sujeto al mismo, en el entendido que en caso de contradicción entre dicho reglamento y el presente contrato, prevalecerá este último.

2.3. LESSEE acknowledges that a set of protective covenants have been established as mandatory and legally binding for the occupants of the Industrial Park. Such restrictive covenants are attached to this lease as **Exhibit "H"** and LESSEE represents that it has read them and accept to their binding nature, in the understanding that in case of conflict between the provisions of such restrictive covenants and those of this agreement, the latter shall prevail.

### TERCERA. MEJORAS.

### THIRD. IMPROVEMENTS.

3.1. El ARRENDADOR causará para que se lleven a cabo dentro al INMUEBLE

3.1. LESSOR shall cause to be carried out the improvements to the LEASED PREMISES

5

ARRENDADO las mejoras que se describen en el **Anexo "I"** del presente (las **"Mejoras"**), de conformidad con las especificaciones que en dicho anexo se señalan.

3.2. Las Mejoras al INMUEBLE ARRENDADO que se describen en el **Anexo "I"** del presente deberán ser llevadas a cabo del tal forma de que el ARRENDATARIO pueda ocupar el INMUEBLE ARRENDADO de conformidad con el siguiente calendario preliminar:

3.2.1. <u>Fecha de Ocupación Parcial</u>. Las partes convienen en que la Fase 1 del INMUEBLE ARRENDADO (según dicho término se define adelante), estará lista para su Ocupación Parcial (según dicho término se define más adelante) en o antes del vencimiento del término de **6 (seis) semanas** contadas a partir de la fecha de firma del presente Contrato. Dentro de este término, el ARRENDADOR deberá notificar al ARRENDATARIO, que el ARRENDATARIO puede ocupar la porción del INMUEBLE ARRENDADO con superficie de 37,798.12 pies cuadrados que en el **Anexo "J"** del presente se identifica como Fase 1 (en lo sucesivo la **"Fase 1 del INMUEBLE ARRENDADO"**), en virtud de que los elementos sustanciales y estructurales de dicha área han sido completadas y que dicha Fase 1 del INMUEBLE ARRENDADO esta lista para que el ARRENDATARIO inicie la instalación de maquinaria y equipo dentro de dicha Fase 1 del INMUEBLE ARRENDADO.

Una vez que el ARRENDADOR notifique al ARRENDATARIO que la Fase 1 del INMUEBLE ARRENDADO está lista para Ocupación Parcial (según dicho término se define más adelante), el ARRENDADOR y el ARRENDATARIO deberán reunirse en la hora y fecha acordada mutuamente no más tardar de 3 días hábiles siguientes a la fecha de notificación dada por el ARRENDADOR, para inspeccionar el área de la Fase 1 del INMUEBLE ARRENDADO y si dicha área se encuentra en estado de Ocupación Parcial (según dicho término se define más adelante), deberán suscribir un certificado de entrega parcial.

described in **Exhibit "I"** hereto (the **"Improvements"**), pursuant to the specifications set forth in such exhibit.

3.2. The Improvements to the LEASED PREMISES described in **Exhibit "I"** hereto shall be carried out in such a manner that LESSEE may occupy the LEASED PREMISES pursuant to the following preliminary schedule:

3.2.1. <u>Partial Occupancy Date</u>. The parties agree that Phase 1 of the LEASED PREMISES (as such term is defined below), will be ready for Partial Occupancy (as such term is defined below) on or before the expiration of a **6 (six) week** term as from the date of execution of this Agreement. Within such term, LESSOR shall notify LESSEE, that LESSEE may begin to occupy the portion of the LEASED PREMISES with a surface area of 37,798.12 square feet that in **Exhibit "J"** hereto is identified as Phase 1 (hereinafter **"Phase 1 of the LEASED PREMISES"**), since the substantial and structural elements of such area have been completed and such Phase 1 of the LEASED PREMIESES is ready for LESSEE to being the installation of machinery and equipment within said Phase 1 of the LEASED PREMISES.

Once LESSOR notifies LESSEE that Phase 1 of the LEASED PREMISES is ready for Partial Occupancy (as such term is defined below), LESSOR and LESSEE shall meet on the date and time mutually agreed not later than 3 business days following the date of the notice given by LESSOR, to inspect the area of the Phase 1 of the LEASED PREMISES and if said area is state of Partial Occupancy (as such term is defined below), they shall execute a partial delivery certificate.

6

En caso de que previo al vencimiento de un plazo de 3 (tres) días hábiles siguientes a la notificación del ARRENDADOR de Ocupación Parcial el ARRENDATARIO sin justificación no firme el acta de que le envíe el ARRENDADOR respecto a la Ocupación Parcial o no entregue la misma al ARRENDADOR debidamente firmada por el ARRENDATARIO previo al vencimiento de un plazo de 3 (tres) días hábiles siguientes a la notificación del ARRENDADOR de Ocupación Parcial, las Partes convienen y acuerdan en que se para todos los efectos legales procedentes se entenderá que la Ocupación Parcial ha tenido lugar precisamente al vencimiento de dicho plazo de 3 (tres) días hábiles.

"Fecha de Ocupación Parcial" significa la fecha en que el ARRENDADOR y el ARRENDATARIO firmen el acta de entrega de Ocupación Parcial o, en su caso, la fecha en que se entienda que tuvo lugar la Ocupación Parcial según se prevé en el párrafo anterior.

"Ocupación Parcial" significa que la Fase 1 del INMUEBLE ARRENDADO cuenta con los elementos sustanciales y estructurales finalizados para que el ARRENDATARIO inicie la instalación de su maquinaria y equipo dentro de la referida Fase 1 del INMUEBLE ARRENDADO.

Las partes deberán ocasionar que sus respectivos contratistas cooperen mutuamente y se abstengan de interferir en los trabajos y las obras del otro a partir de la Fecha de Ocupación Parcial a fin de que el trabajo de cada uno pueda ser terminado dentro de los plazos convenidos.

A partir de la Fecha de Ocupación Parcial, el ARRENDATARIO deberá ocasionar que sus contratistas y terceros contratados o que reporten al ARRENDADOR, que realicen trabajos en el INMUEBLE ARRENDADO, cuenten con cobertura de seguro contra riesgos de pérdida de vida y propiedad ocurridos en el INMUEBLE ARRENDADO causada por actividades de dichos contratistas o terceros. El ARRENDATARIO deberá ocasionar que se aplique para dichas pólizas de seguros

In the event that before the expiration of a 3 (three) business days term following LESSOR's notice for Partial Occupancy, LESSEE without justification does not sign the notice that it receives from LESSOR regarding Partial Occupancy or does not deliver the same to LESSOR duly signed by LESSEE before the expiration of a 3 (three) working day term as of LESSOR's Partial Occupancy notice, the Parties agree that for all legal effect it shall be deemed that Partial Occupancy took place at the expiration of such 3 (three) working day term.

"Partial Occupancy Date" means the date on which the parties sign the Partial Occupancy delivery certificate or, in it case, the date on which is deemed that the Partial Occupancy took place as provided for in the above paragraph.

"Partial Occupancy" means that Phase 1 of the LEASED PREMISES have all the substantial and structural elements finalized so LESSEE can begin the installation of its machinery and equipment within such the mentioned Phase 1 of the LEASED PREMISES.

The parties shall employ reasonable efforts to cause their respective contractors to cooperate with each other and not interfere in each other's work and construction following the Partial Occupancy Date so that each of their work can be completed within the agreed terms.

As of the Partial Occupancy Date, LESSEE shall cause its contractors and other third parties hired by or reporting to LESSEE performing work in the LEASED PREMISES to hold insurance coverage, against risks of loss of life and property occurring in the LEASED PREMISES due to the activities of such contractors and third parties. LESSEE shall cause such insurance policies to be collected and applied for the benefit of the LESSOR and its contractors to the



7

beneficio del ARRENDADOR y sus contratistas en la medida en que el ARRENDADOR y/o su contratista sean dañados por cualquier pérdida de vida o propiedad.

extent the LESSOR and/or its contractor are damaged by any such loss of life and property.

3.2.2. Fecha de Ocupación Final. Las partes acuerdan que el INMUEBLE ARRENDADO estará listo para Ocupación Final (según dicho término se define más adelante) por parte del ARRENDATARIO, en o antes del vencimiento del término de 18 (dieciocho) semanas contadas a partir de la fecha de firma del presente contrato. Dentro de este término, el ARRENDADOR deberá notificar al ARRENDATARIO, que el ARRENDATARIO puede comenzar a ocupar el resto del INMUEBLE ARRENDADO en su totalidad, en virtud de que el INMUEBLE ARRENDADO está en total cumplimiento con el Anexo I y listo para ocupación y entrega al ARRENDATARIO sujeto únicamente a una lista de pendientes que no representen más del 4% ( cuatro por ciento) del costo de las mejoras al INMUEBLE ARRENDADO que se describen en el Anexo "I" del presente contrato, y que serán concluidos por el ARRENDADOR dentro de un término de treinta (30) días de calendario a partir de la Fecha de Ocupación Final. Para fines del presente Contrato los términos "lista de pendientes" y "el trabajo derivado de dicha lista" significará los trabajos menores que no obstaculicen significativamente el uso del INMUEBLE ARRENDADO por parte del ARRENDATARIO.

3.2.2. Final Occupancy Date. The parties agree that the LEASED PREMISES will be ready for Final Occupancy (as such term is defined below) by LESSEE, on or before the expiration of a 18 (eighteen) week term as from the date of execution of this agreement. Within such term, LESSOR shall notify LESSEE, that LESSEE may occupy the remainder of LEASED PREMISES in its entirety, since the LEASED PREMISES are in full compliance with Exhibit I and ready for full occupancy and delivery to LESSEE, subject only to punch list items, not representing more than 4% (four percent) of the total cost of the improvements to the LEASED PREMISES described in Exhibit "I" hereto, to be completed by LESSOR within a thirty (30) calendar day term as of the Date of Final Occupancy. For purposes of this Lease the term "punch list items" and "punch list work" shall mean the works of a minor nature which will not substantially impair the use of the LEASED PREMISES by LESSEE.

Una vez que el ARRENDADOR notifique al ARRENDATARIO que el INMUEBLE ARRENDADO está listo para Ocupación Final (según dicho término se define más adelante), el ARRENDADOR y el ARRENDATARIO deberán reunirse en la hora y fecha acordada mutuamente no más tardar de 3 días hábiles siguientes a la fecha de notificación dada por el ARRENDADOR, para inspeccionar el INMUEBLE ARRENDADO y si este se encuentra en estado de Ocupación Final (según dicho término se define más adelante), deberán suscribir un certificado de entrega final.

Once LESSOR notifies LESSEE that the LEASED PREMISES are ready for Final Occupancy (as such term is defined below), LESSOR and LESSEE shall meet on the date and time mutually agreed not later than 3 business days following the date of the notice given by LESSOR, to inspect the LEASED PREMISES and if said area is state of Final Occupancy (as such term is defined below), they shall execute a final delivery certificate.

8

En caso de que previo al vencimiento de un plazo de 3 (tres) días hábiles siguientes a la notificación del ARRENDADOR de Ocupación Final, el ARRENDATARIO, sin justificación, no firme el acta de que le envíe el ARRENDADOR respecto a la Ocupación Final o no entregue la misma al ARRENDADOR debidamente firmada por el ARRENDATARIO previo al vencimiento de un plazo de 3 (tres) días hábiles siguientes a la notificación del ARRENDADOR de Ocupación Final, las Partes convienen y acuerdan en que para todos los efectos legales se entenderá que la Ocupación Final ha tenido lugar precisamente al vencimiento de dicho plazo de 3 (tres) días hábiles.

"Fecha de Ocupación Final" significa la fecha en que el ARRENDADOR y el ARRENDATARIO firmen el acta de entrega de Ocupación Final o, en su caso, la fecha en que se entienda que tuvo lugar la Ocupación Final según se prevé en el párrafo anterior.

"Ocupación Final" significa que el INMUEBLE ARRENDADO está en total cumplimiento con el Anexo I, debido a que las Mejoras han sido finalizadas, y listo para ocupación y entra al ARRENDATARIO, sujeto solamente a la lista de pendientes.

Si el ARRENDADOR se retrasa en la terminación de las diferentes porciones o de la totalidad de las Mejoras debido a: (a) actos del ARRENDATARIO, actos de contratistas contratados por el ARRENDATARIO, o actos de cualquier agente del ARRENDATARIO o (b) por caso fortuito o fuerza mayor y sin falta del ARRENDADOR, de sus contratistas, empleados o agentes del ARRENDADOR, que impida la continuación de las Mejoras, la Ocupación Parcial y la Ocupación Final serán pospuestas. Sin embargo, en los casos listados en el inciso (a) de este párrafo, el posponer la Fecha de Ocupación Final no pospondrá la Fecha de Inicio de Renta, que deberá ocurrir en la fecha en que hubiera ocurrido la Fecha de Ocupación Final de no haber sido por las circunstancias anteriormente descritas impidiendo al ARRENDADOR. El ARRENDATARIO no tendrá derecho a demandar el pago de daños

In the event that before the expiration of a 3 (three) business days term following LESSOR's notice for final occupancy, LESSEE without justification does not sign the notice that it receives from LESSOR regarding Final Occupancy or does not deliver the same to LESSOR duly signed by LESSEE before the expiration of a 3 (three) working day term as of LESSOR's Final Occupancy notice, the Parties agree that for all legal effect it shall be deemed that Final Occupancy took place precisely at the expiration of such 3 (three) working day term.

"Final Occupancy Date" means the date on which the parties sign the Final Occupancy delivery certificate or, in it case, the date on which is deemed that the Final Occupancy took place as provided for in the above paragraph.

"Final Occupancy" means that the LEASED PREMISES are in full compliance with Exhibit I, since the Improvements have been finalized, and ready for full occupancy and delivery to LESSEE, subject only to punch list items.

If LESSOR is delayed in the termination of the different portions or on the entire Improvements due to (a) LESSEE's acts, acts of contractors hired by LESSEE, acts of any agent of LESSEE; or (b) due to rain, fire, or any other cause that is unforeseen and out of the control, including force majeure events; in all cases without fault of LESSOR, its contractors, employees or LESSOR's agents, that impede the continuation of the Improvements, the Partial Occupancy and Final Occupancy will be postponed. However, in the cases listed under item (a) of this paragraph, the postponing of the Final Occupancy Date shall not postpone the Rent Commencement Date, which shall be deemed to occur on the date on which Final Occupancy would have occurred if not for the referenced circumstances impeding LESSOR. LESSEE will not have right to demand the payment of damages or amount whatsoever due to above delays

9

cantidad alguna debido a las demoras arriba mencionadas.

3.3. Adicionalmente, el ARRENDADOR instalará en el INMUEBLE ARRENDADO la cortina enrollable y nivelador que se describen en el **Anexo "K"**, en o antes del vencimiento de un plazo de **28 (veintiocho) semanas** contados a partir de la fecha de firma del presente instrumento.

3.4. El ARRENDATARIO, por su propia cuenta y costo, y con la autorización previa y por escrito por parte del ARRENDADOR (autorización que no será negada sin causa justificada), podrá agregar nuevas mejoras y podrá alterar, ampliar, mejorar o adicionar (conjuntamente las **"Mejoras del Arrendatario"**) cualesquiera de las mejoras que formen parte del INMUEBLE ARRENDADO, en el entendido de que dichas alteraciones, extensiones, mejoras y adiciones no afecten de manera adversa la fuerza estructural del INMUEBLE ARRENDADO, o reduzcan el valor de mercado del INMUEBLE ARRENDADO; y siempre y cuando dichas alteraciones sean efectuadas diligentemente con adecuada mano de obra, y de conformidad con las leyes, reglamentos y prácticas gubernamentales correspondientes.

3.5. No obstante lo anterior y a menos de que se convenga lo contrario por escrito por el ARRENDADOR, en lo que se refiere a las Mejoras del Arrendatario, el ARRENDATARIO al momento de terminación del presente Arrendamiento deberá regresar el INMUEBLE ARRENDADO en las mismas condiciones en las que lo reciba; adicionalmente, el ARRENDATARIO expresamente renuncia a cualquier derecho que tenga para solicitar del ARRENDADOR el pago de cantidad alguna por las mejoras que el ARRENDATARIO realice, renunciando de manera expresa a cualquier y todos los derechos que le otorga el artículo 2297 del Código Civil para el Estado de Baja California.

3.6. El ARRENDATARIO indemnizará y liberará de responsabilidad al ARRENDADOR de toda demanda, gravamen, daños y costos que

3.3. Additionally, LESSOR will install in the LEASED PREMISES the rollup door and leveler described in **Exhibit "K"** on or before the expiration of a **28 (twenty-eight)** week term as of the date of execution hereof.

3.4. LESSEE, at its own risk and expense and with the prior written approval of LESSOR (which approval shall not be denied without justified reason), may add new improvements and may alter, extend, improve or add (collectively, **"Lessee Improvements"**) to any of the improvements now or hereafter on the LEASED PREMISES, provided that such alterations, extensions, improvements and additions do not adversely affect the structural strength of the LEASED PREMISES, or reduce the fair market value of the LEASED PREMISES; and provided further that said alterations are effected with diligence, in a good and workman-like manner, and in accordance with all applicable laws, ordinances, regulations and governmental practices.

3.5. Notwithstanding the foregoing and unless otherwise agreed in writing by LESSOR, as to the Lessee Improvements, LESSEE at the termination of this Lease shall return the LEASED PREMISES to the same conditions as received; additionally LESSEE hereby expressly waives any right that it may have to request LESSOR for the payment of any compensation for LESSEE's improvements specifically waiving LESSEE any and all right that it might have under article 2297 of the Civil Code for the State of Baja California.

3.6. LESSEE shall indemnify and hold harmless the LESSOR from all claims, liens, damages and costs resulting from for arising out of the

resulten o surjan de los actos u omisiones del ARRENDATARIO o por falta de cumplimiento de sus obligaciones, o que hubiesen sido presentadas o iniciadas por los contratistas, empleados, trabajadores, agentes, representantes o directivos del ARRENDATARIO o por el Instituto Mexicano del Seguro Social (IMSS), autoridades fiscales, o por el Fondo Nacional de la Vivienda para los Trabajadores (INFONAVIT).

LESSEE's acts, omissions or lack of performance of any of its obligations hereunder or filed or initiated by LESSEE's contractors, employees, workers, agents, representatives or principals or by the "Instituto Mexicano del Seguro Social (IMSS)", Tax authorities, or the "Fondo Nacional de la Vivienda para los Trabajadores (INFONAVIT)".

## CUARTA. USO DEL INMUEBLE ARRENDADO.

## FOURTH. USE OF THE LEASED PREMISES.

4.1. El objeto para el cual el ARRENDATARIO utilizará el INMUEBLE ARRENDADO será para: oficinas generales, bodega, industria ligera de manufactura, empaque, distribución, bodegas, servicios, reparación, ingeniería, ventas, demostración de productos, entrenamientos a clientes y empleados, servicios auxiliares, estacionamiento de automóviles y cualquiera otra actividad incidental y relacionada con un local de manufactura, bodega y oficinas y para ningún otro propósito sin el consentimiento previo y por escrito del ARRENDADOR. El ARRENDATARIO no podrá utilizar el INMUEBLE ARRENDADO para otro propósito sin la autorización previa por escrito del ARRENDADOR, misma que no deberá ser retenida en forma irrazonable.

4.1. The purpose for which the LESSEE shall use the LEASED PREMISES shall be: general office, warehouse, light manufacturing, packaging, distribution, storage, services, repair, engineering, sales, product demonstration, training of customers and employees, ancillary services, parking of cars and all other uses incidental and related to a manufacturing, warehouse and office facility, and for no other purposes without the written consent of the LESSOR. LESSEE may not use the LEASED PREMISES for any other purposes without LESSOR's prior written authorization, which shall not be unreasonably withheld.

4.2. Durante el Término de este Arrendamiento, el ARRENDATARIO no llevará a cabo ninguna actividad o permitirá que se lleve a cabo alguna actividad en el INMUEBLE ARRENDADO que pueda de cualquier manera infringir cualquier ley, reglamento, disposición, Reglamento del Parque o reglas gubernamentales.

4.2. During the Term of this Lease, the LESSEE shall not do or permit anything to be done in the LEASED PREMISES which shall in any way conflict with any laws, statutes, ordinances, Park Regulations or governmental rules.

4.3. El Reglamento del Parque se adjunta al presente y se incorpora a este Arrendamiento por referencia como **Anexo "H"**.

4.3. The Park Regulations are attached hereto and incorporated into this Lease by reference as **Exhibit "H"**.

## QUINTA. TÉRMINO DEL ARRENDAMIENTO.

## FIFTH. LEASE TERM.

5.1. Vigencia. Este Arrendamiento estará vigente desde su fecha de firma.

5.1. Effectiveness. This Lease will be in effect as of its date of execution.



5.2. Término del Arrendamiento. El presente arrendamiento permanecerá vigente hasta que venza un período de **62 (sesenta y dos) meses** (en lo sucesivo **"Término del Arrendamiento"** o el **"Término de este Arrendamiento"**) contados a partir de la Fecha de Ocupación Parcial.

5.3. Opciones para Renovar. Sujeto a los términos y condiciones de la **Cláusula Vigésima Primera** del presente, el ARRENDATARIO tendrá la opción de renovar el Término de este Arrendamiento por **2 (dos) períodos** de **5 (cinco)** años cada uno.

**SEXTA. RENTA Y TÉRMINOS Y CONDICIONES DE PAGO.**

6.1. A partir de la Fecha de Ocupación Final (en lo sucesivo la **"Fecha de Inicio de Renta"**), el ARRENDATARIO pagará sin necesidad de requerimiento alguno al ARRENDADOR y el ARRENDADOR conviene en aceptar como renta del INMUEBLE ARRENDADO la cantidad de **US$0.6022 Dólares** (Sesenta Centavos de Dólar Moneda de los Estados Unidos de América) más el correspondiente Impuesto al Valor Agregado por pie cuadrado de la superficie total del INMUEBLE ARRENDADO **(41,689 pies cuadrados)** por mes, para un total de **US$25,105.12 Dólares** (Veinticinco Mil Ciento Cinco Dólares 12/100 Moneda de los Estados Unidos de América) por mes, más el correspondiente Impuesto al Valor Agregado.

6.2. El ARRENDATARIO pagará el Impuesto al Valor Agregado que sea aplicable a los pagos mensuales de renta, y el ARRENDADOR expedirá la correspondiente factura que contenga los requisitos de la ley fiscal.

6.3. La renta se incrementará acumulativamente cada período de doce meses a partir de que concluya el duodécimo mes contado desde la Fecha de Ocupación Parcial, y el incremento será del 2.5% (dos punto cinco por ciento) por cada período de 12 (doce) meses.

6.4. Los pagos mensuales mencionados podrán ser pagados por el ARRENDATARIO en Dólares

5.2. Lease Term. This Lease will remain in effect until the expiration of a **62 (sixty two) month term** (the **"Lease Term"**, or the **"Term of this Lease"**) as of the Date of Partial Occupancy.

5.3. Renewal Options. Subject to the terms and conditions of **Clause Twenty Third** hereof, LESSEE shall have the options to extend the Term of this Lease for **two (2)** terms of **5 (five) years** each.

**SIXTH. RENTAL AND TERMS AND CONDITIONS OF PAYMENT.**

6.1. Starting on the Final Occupancy Date (hereinafter the **"Rent Commencement Date"**), LESSEE will pay without demand to LESSOR, and LESSOR agrees to accept as rental for the LEASED PREMISES the amount of **US$0.6022 Dollars** (Sixty cents of a Dollars currency of the United States of America) plus the corresponding Value Added Tax per square foot of the total area of the LEASED PREMISES **(41,689 square feet)**, per month, for a monthly total of **US$25,105.12 Dollars** (Twenty Five Thousand One Hundred Five Dollars 12/100 currency of the United States of America) plus the corresponding Value Added Tax per month.

6.2. The LESSEE shall pay the Value Added Tax which may be applicable to the monthly lease payments, and the LESSOR shall issue the corresponding invoice therefore, which shall meet with all requirements of Fiscal Law.

6.3. The rent will be increased on cumulative basis every twelve month period as of the expiration of the twelfth month starting on the Date of Partial Occupancy, and the increase will be of 2.5% (two point five percent) per 12 (twelve) month period.

6.4. The above monthly installments may be paid by the LESSEE in U.S. Dollars or in

12

o Pesos Moneda Nacional, al tipo de cambio de que se encuentre en vigor en la fecha de pago para la venta de dólares, al público en general, en BBVA México, S.A., en Tijuana, Baja California, México. Todos los pagos de rentas deberán ser realizados por adelantado durante los primeros 5 (cinco) días de calendario de cada mes durante el término del presente, en el domicilio del ARRENDADOR ubicado en Boulevard Insurgentes 25420, Parque Industrial El Florido, C.P. 22244 Tijuana, Baja California, México, o en aquel otro domicilio o domicilios que indique el ARRENDADOR de tiempo en tiempo.

Mexican currency, at the exchange rate in effect on the date of payment, for the purchase of U.S. Dollars offered by BBVA México, S.A., in Tijuana, Baja California, Mexico, for the public in general. All lease payments shall be made in advance during the first 5 (five) calendar days of each month during the term hereof, at LESSOR's address, which is located at Boulevard Insurgentes 25420, Parque Industrial El Florido, C.P. 22244 Tijuana, Baja California, Mexico, or at any other address that from time to time the LESSOR indicates.

6.5. El ARRENDADOR y el ARRENDATARIO acuerdan que la renta mensual acordada en esta misma Cláusula, además de poder ser pagada en el domicilio establecido en el **inciso 6.4** anterior de esta Cláusula, esto es en Boulevard Insurgentes 25420, Parque Industrial El Florido, C.P. 22244 Tijuana, Baja California, México, también podrá ser depositada directamente a favor del ARRENDADOR, precisamente en la cuenta bancaria que el ARRENDADOR tiene con BBVA México, S.A., identificada con cuenta número 0180847321 clabe 012028001808473219 .El ARRENDATARIO, se compromete a enviar a los domicilios de correo electrónico mauricio@florido.com y fernando@florido.com y a aquellos otros que por escrito designe el ARRENDADOR copia del comprobante o constancia que el banco le extienda del depósito realizado.

6.5. LESSOR and LESSEE agree that the monthly rent agreed under this Clause, may in addition to the address set forth in **paragraph 6.4** above, this is, at Boulevard Insurgentes 25420, Parque Industrial El Florido, C.P. 22244 Tijuana, Baja California, Mexico, be paid by direct deposit in favor of LESSOR precisely in the bank account that LESSOR has with BBVA México, S.A., under account number 0180847321 ,clabe 012028001808473219 LESSEE obligates itself to send by e-mail at mauricio@florido.com and fernando@florido.com and to any other designated in writing by LESSOR copy of the receipt or certification issued by the bank for the deposit made.

6.6. Si la correspondiente fecha de inicio de renta es un día distinto al primer día de un mes de calendario, el monto del primer pago mensual de renta será aquella porción prorrateada del monto de la correspondiente renta mensual equivalente a la parte del mes durante la cual el ARRENDATARIO fuera a ocupar la porción correspondiente del INMUEBLE ARRENDADO o en su caso el INMUEBLE ARRENDADO en su totalidad; y el monto del último pago de renta conforme al presente, será aquella porción prorrateada del monto de renta mensual equivalente a la porción del último mes de

6.6. If the corresponding rent commencement date of this Lease is a day other than the first day of a calendar month, the amount of the first monthly rental payment shall be that pro rata portion of the corresponding monthly rental payment which is equal to the pro rata portion of the first calendar month that the corresponding portion of the LEASED PREMISES or in its case the entire LEASED PREMISES are to be occupied by the LESSEE; and the amount of the final rental payment hereunder shall be that pro rata portion of the then monthly rental payment which is equal to the pro rata portion of the last

calendario en que este arrendamiento permanezca vigente.

calendar month during which this Lease shall be in effect.

6.7. A la sola discreción del ARRENDADOR, si el ARRENDATARIO no paga la renta mensual dentro de los primeros cinco (5) días como se establece anteriormente, el ARRENDATARIO podrá ser requerido por el ARRENDADOR para que pague intereses moratorios a razón de 4% (cuatro por ciento) mensual. Dichos intereses se seguirán acumulando hasta en tanto el ARRENDATARIO efectúe su pago.

6.7. At Lessor's sole discretion, in the event LESSEE does not pay the rent within the five (5) day term as set forth above, LESSEE may be required to pay LESSOR late payment interests at the rate of 4% (four percent) monthly. Such interest shall continue to accrue until such time payment has been effected by LESSEE.

6.8. El ARRENDATARIO conviene y acuerda en que no retendrá o compensará el pago de las rentas, por lo que el ARRENDATARIO entregará de manera puntual al ARRENDADOR el pago íntegro de las rentas y de cualesquier otras cantidades a que tenga derecho exigir el ARRENDADOR de acuerdo con lo previsto en el presente instrumento. El ARRENDATARIO expresamente renuncia a cualquier derecho que tenga o llegare a tener para efectuar cualquier retención o compensación.

6.8. LESSEE hereby agrees not to withhold nor compensate rental payments. Therefore LESSEE will timely pay under the agreed terms all rental and other payments that correspond to LESSOR as well as all other payments required to be effected by LESSEE. LESSEE hereby expressly waives any right that it might have to make any withholding or compensation.

6.9. Como parte de la contraprestación por la celebración del presente contrato por parte del ARRENDADOR, el ARRENDATARIO conviene y acuerda en cumplir cabal y oportunamente con todas y cada una de sus obligaciones bajo el presente.

6.9. As part of the consideration for the execution hereof by LESSOR, LESSEE covenants and agrees to timely and fully comply with each and all of its obligations hereunder.

## SÉPTIMA. IMPUESTOS Y SERVICIOS PÚBLICOS.

## SEVENTH. TAXES AND UTILITIES.

7.1. El ARRENDADOR garantiza al ARRENDATARIO que los servicios públicos de teléfono, internet, y electricidad, estarán disponibles y podrán ser contratados por el ARRENDATARIO a más tardar en la Fecha de Ocupación Final con la compañía proveedora correspondiente y toda la infraestructura y puntos de conexión de las compañías proveedoras estarán disponibles en los límites del INMUEBLE ARRENDADO para uso del ARRENDATARIO a más tardar en la Fecha de Ocupación Final. El ARRENDATARIO será responsable de contratar los servicios públicos de suministro de electricidad y telefonía con las compañías prestadoras correspondientes, así

7.1. LESSOR guarantees to LESSEE that the public utilities of telephone, internet and electricity will be available and can be contracted by LESSEE at the latest by the Final Occupancy Date with the corresponding service provider and that all the access, infrastructure and/or hook up points from the service providers will be available at the property limit of the LEASED PREMISES for use by the LESSEE at the latest by Final Occupancy Date. LESSEE will be responsible for contracting the telephone and electricity utilities with the corresponding utility companies, as well as for the payment of the corresponding fees, rights, contributions or other expenses required for their contracting.

14

como del pago de las correspondientes cuotas, derechos, aportaciones y otros gastos requeridos para su contratación.

El ARRENDADOR garantiza que es factible que el ARRENDATARIO pueda contratar en el INMUEBLE ARRENDADO una demanda eléctrica de 300 KVA's para uso exclusivo del ARRENDATARIO en el INMUEBLE ARRENDADO. La renta incluye el costo por la asignación por parte del ARRENDADOR de referidos 300 KVA's para uso exclusivo del ARRENDATARIO en el INMUEBLE ARRENDADO.

LESSOR guarantees to LESSEE that it is feasible for the LESSEE to contract an electricity demand of 300 KVA's in the LEASED PREMISES for the exclusive use of LESSEE in the LEASED PREMISES. The rent includes the cost for the allocation by LESSOR of referred 300 KVA's for the exclusive use of LESSEE in the LEASED PREMISES.

No obstante lo dispuesto en esta cláusula, el ARRENDADOR declara y garantiza al ARRENDATARIO en relación con el INMUEBLE ARRENDADO, a la fecha de firma de este Contrato no hay importes vencidos ni deudas con ningún proveedor de servicios públicos que puedan limitar o restringir la capacidad del ARRENDATARIO para contratar o para mantener tales servicios activos durante la vigencia de este contrato en virtud de adeudos previos a la firma del presente Contrato. El ARRENDATARIO no tendrá responsabilidad relacionada con los servicios instalados en el INMUEBLE ARRENDADO anteriores a la firma del presente Contrato.

Notwithstanding the provisions of this clause, LESSOR hereby represents and warrants to LESSEE that in connection with the LEASED PREMISES, as of the date of execution of this agreement, there are no past due amounts or any debt with any utility service provider that may limit or restrict, the capability of LESSEE to contract or to maintain such utilities current during the term of this agreement. LESSEE shall not have any responsibility related to the utilities installed in the LEASED PREMISES prior to the execution of this agreement. .

7.2. Toda vez que el INMUEBLE ARRENDADO forma parte de un complejo industrial y en consideración de las políticas actuales de la Comisión Estatal de Servicios Públicos de Tijuana (en lo sucesivo la "**CESPT**") y ante la imposibilidad de poder contratar con la CESPT tomas individuales para cada una de las partes de dicho complejo industrial, las partes convienen lo siguiente respecto a los servicios públicos de suministro de agua y drenaje sanitario para el INMUEBLE ARRENDADO:

7.2. Since the LEASED PREMISES form part of an industrial complex, currently it is impossible to contract with "Comisión Estatal de Servicios Públicos de Tijuana" (hereinafter "**CESPT**") individual water intakes for each of the parts of such industrial complex due to current CESPT's policies, and therefore the parties agree as follows in connection with the water and sanitary sewer utilities:

7.2.1. En que los servicios públicos de suministro de agua y drenaje sanitario para el INMUEBLE ARRENDADO sean prestados por la CESPT a través del contrato que el ARRENDADOR tenga con la CESPT para el complejo industrial del que forma parte el INMUEBLE ARRENDADO, mismo contrato que deberá ser gestionado a costo

7.2.1. That the water and sanitary sewer utilities for the LEASED PREMISES be provided by CESPT through the contract that LESSOR has with CESPT for the industrial complex of which the LEASED PREMISES form part, which contract shall be processed at the cost and expense of LESSOR in such a way that said



15

gasto del ARRENDADOR de tal forma que dichos servicios están disponibles para uso del ARRENDATARIO a más tardar en la Fecha de Ocupación Final;

7.2.2. Que toda vez que el INMUEBLE ARRENDADO cuenta con un medidor individual del volumen de agua que se suministra al mismo, el ARRENDATARIO pagará al ARRENDADOR, a la solicitud de este último, la parte proporcional del estado de cuenta que emita la CESPT por consumo de agua, considerando para ello el consumo de agua conforme al medidor de agua del INMUEBLE ARRENDADO en comparación con el volumen total conforme a dicho estado de cuenta de la CESPT;

7.2.3. Que el ARRENDADOR emitirá al ARRENDATARIO comprobantes fiscales digitales por los pagos que le efectúe el ARRENDATARIO por consumo de agua;

7.2.4. Que no obstante que la CESPT es quien presta los servicios públicos de suministro de agua y drenaje, el ARRENDATARIO pagará al ARRENDADOR la parte que le corresponda en base a lo señalado anteriormente; y

7.2.5. Que en la Fecha de Ocupación Final las partes tomaran la lectura de inicio del medidor de suministro de agua al INMUEBLE ARRENDADO.

7.3. El ARRENDATARIO reconoce y acepta que la responsabilidad por la prestación de los servicios públicos de suministro de agua y drenaje sanitario corresponde a la CESPT. El ARRENDADOR no asume ninguna responsabilidad frente al ARRENDATARIO por deficiencias en la continuidad y calidad de los servicios que preste la CESPT, incluso suspensiones de cualquier índole solicitadas o provocadas por el ARRENDATARIO, por lo que el ARRENDATARIO se obliga a sacar en paz y a salvo al ARRENDADOR de cualquier suspensión que haya provocado el ARRENDATARIO.

services are available for the LESSEE no later than Final Occupancy Date;

7.2.2. Since the LEASED PREMISES have an individual water meter that measure volume of water supplied to the same, that LESSEE will pay LESSOR, at LESSOR's request, the proportional part of the statement that CESPT issues for water supply, considering for such purposes the water supplied to the LEASED PREMISES according to its water meter, in comparison to the total volume according to such statement from CESPT;

7.2.3. That LESSOR will issue LESSEE the corresponding digital invoices for payments effected by LESSEE for water consumption;

7.2.4. That notwithstanding that CESPT is who furnishes the water and sewer utilities, LESSEE will pay LESSOR the corresponding part pursuant to the above; and

7.2.5. That on the Final Occupancy Date the parties shall read the initial mark of the water meter of the LEASED PREMISES.

7.3. LESSEE recognizes and accepts that the responsibility for the supply of water and sanitary sewer utilities correspond to CESPT. LESSOR does not assume any responsibility before LESSEE for deficiencies in the continuity or quality of the utilities provided by CESPT, including for suspensions of any kind requested or caused by LESSEE, therefore LESSEE obligates itself to hold harmless LESSOR from any suspension caused by LESSEE.

7.4. En relación con el suministro de gas natural por tubería las partes convienen y acuerdan que en caso de que el ARRENDATARIO decida contratar el suministro de gas natural, el ARRENDATARIO conectará dicho servicio público en el punto de conexión dentro del INMUEBLE ARRENDADO que le indique previamente y por escrito el ARRENDADOR y conforme a las especificaciones que apruebe previamente por escrito el ARRENDADOR. El incumplimiento de esta disposición dará derecho al ARRENDADOR para dar por terminado el presente Contrato mediante simple notificación por escrito al ARRENDATARIO o para solicitar la rescisión del mismo por incumplimiento del ARRENDATARIO.

7.5. A partir de la Fecha de Inicio de Renta, el ARRENDATARIO pagará y liquidará puntualmente todos los cargos por impuesto predial, servicio de electricidad, cargos por agua y drenaje, teléfono y demás servicios públicos con que cuente el INMUEBLE ARRENDADO. Por lo que respecta al pago del impuesto predial, la obligación del ARRENDATARIO de pagar el mismo será cumplida mediante el reembolso al ARRENDADOR, dentro de los 15 (quince) días de calendario a su solicitud, del pago del Impuesto Predial que corresponda al INMUEBLE ARRENDADO más el correspondiente Impuesto al Valor Agregado. El ARRENDADOR deberá entregar al ARRENDATARIO una factura por la cantidad rembolsada, así como copia del pago realizado respecto del Impuesto Predial.

7.6. El ARRENDATARIO a la solicitud del ARRENDADOR proporcionará evidencia del pago de dichos impuestos y servicios públicos.

## OCTAVA. CESIÓN - SUBARRENDAMIENTO.

8.1. El ARRENDATARIO no podrá transmitir, hipotecar, dar en prenda o de cualquier otra manera gravar este Arrendamiento, o cualquier derecho derivado del mismo, sin el previo consentimiento por escrito del ARRENDADOR, mismo consentimiento que no se retendrá sin razón. El ARRENDATARIO tendrá derecho de

7.4. In connection with the supply of natural gas through pipeline, the parties agree that in the event LESSEE decides to contract the supply of such utility, LESSEE will connect referred utility at the connection point within the LEASED PREMISES previously approved in writing by LESSOR and in accordance with the specifications approved in writing by LESSOR. The noncompliance of this provision will grant LESSOR the right to terminate this Agreement through simple written notice to LESSEE or to request the rescission of the same due to default of LESSEE.

7.5. As of Rent Commencement Date, LESSEE will timely pay all property taxes, electrical service charges, water and sewer charges, telephone charges and other public utilities available for the LEASED PREMISES. In connection with the payment of property tax, LESSEE's obligation for payment of same will be satisfied through reimbursement to LESSOR within 15 (fifteen) calendar day as of its reimbursement request of the property tax that corresponds to the LEASED PREMISES plus the corresponding Value Added Tax. LESSOR will deliver LESSEE an invoice for the reimbursed amount as well as copy of property tax payment receipt.

7.6. LESSEE shall provide evidence of payment of such utilities and taxes at the request of LESSOR.

## EIGHTH. ASSIGNMENT – SUBLEASING.

8.1. LESSEE shall not transfer, mortgage, pledge or otherwise encumber this Lease, nor any interest herein, without the prior written consent of LESSOR, which consent will not be withheld unreasonably. LESSEE shall have the right to sublease all or a portion of the LEASED PREMISES or to assign this Lease with the prior



17

subarrendar todo o cualquier parte del INMUEBLE ARRENDADO o ceder este Arrendamiento con el previo consentimiento del ARRENDADOR, en el entendido de que tal subarrendamiento o cesión no liberará al ARRENDATARIO ni al OBLIGADO SOLIDARIO de sus obligaciones conforme al presente, incluyendo pero no limitado a aquellas que se refieran al pago de renta, al menos que las partes acuerden lo contrario por escrito.

8.2. Además y no obstante cualquier disposición en contrario contenida en el presente Contrato, sin que se libere de cualquier responsabilidad, el ARRENDATARIO podrá, sin necesidad del consentimiento del ARRENDADOR y siempre y cuando hubiere cumplido cabal y oportunamente todas y cada una de sus obligaciones bajo el presente Contrato, subarrendar todo o parte del INMUEBLE ARRENDADO a cualquiera de los siguientes: (i) una subsidiaria, afiliada, empresa matriz del ARRENDATARIO o cualquier otra entidad que controle, o sea controlada por, o sea controlada en común con el ARRENDATARIO; o (ii) una empresa que suceda al ARRENDATARIO derivado de una fusión, consolidación, reorganización que no derive de concurso mercantil o acción gubernamental. Cualquiera de dichos subarriendos no relevará al ARRENDATARIO ni al OBLIGADO SOLIDARIO de sus obligaciones bajo el presente, incluyendo pero sin limitar a esas obligaciones que se relacionen con el pago de las rentas.

8.3. Queda acordado y entendido por las partes que en caso de subarriendo o cesión por parte del ARRENDATARIO, el ARRENDADOR deberá recibir el 50% (cincuenta por ciento) de las "utilidades". Para efecto de este párrafo, "utilidades" significa el excedente que exista entre el pago de la renta mensual en base a pie cuadrado del INMUEBLE ARRENDADO que haga el ARRENDATARIO al ARRENDADOR y el precio o contraprestación que cobre el ARRENDATARIO por el subarriendo o cesión.

8.4. El ARRENDADOR estará facultado para ceder y/o transmitir, en todo o en parte, sus derechos y obligaciones bajo este Contrato e

written consent of the LESSOR, but any such subletting or assignment shall not relieve LESSEE nor GUARANTOR of their obligations hereunder including but not limited to those pertaining to the payment of rentals, unless the parties agree otherwise in writing.

8.2. In addition and notwithstanding anything to the contrary contained in this Lease, without being released from any liability, the LESSEE shall be entitled, without the need of consent of the LESSOR and provided that it has complied with each and every one of its obligations hereunder in a timely manner, to sublease all or part of the LEASED PROPERTY to any of the following: (i) a subsidiary, affiliate, parent company of the LESSEE or any other entity that controls, or is controlled by, or is controlled jointly with the LESSEE; or (ii) a corporation which succeeds LESSEE arising from a merger, consolidation, reorganization which does not derive from a bankruptcy proceeding or government action. Any such subleases shall not release the LESSEE nor the GUARANTOR of their obligations hereunder, including but not limited to those obligations that relate to the rental payments.

8.3. It is agreed and understood by the parties that in the event of a sublease or assignment by the LESSEE, the LESSOR shall receive 50% (fifty percent) of the "profits". For purposes of this subparagraph, "profits" means the surplus that exists between the monthly rental payments per square foot of the LEASED PREMISES made by the LESSEE to the LESSOR and the price or consideration charged by the LESSEE for the sublease or assignment.

8.4. The LESSOR shall be entitled to assign and/or transfer, in whole or in part, its rights and obligations under this Lease, including the right


18

incluso para afectar en fideicomiso los mismos, para lo cual el ARRENDATARIO otorga al ARRENDADOR la autorización necesaria para llevar a cabo las cesiones o transmisiones, totales o parciales, de sus derechos y obligaciones bajo este Contrato que el ARRENDADOR considere convenientes. Así mismo, el ARRENDADOR queda expresamente facultado para garantizar sus obligaciones, presentes o futuras, con sus derechos derivados de este Contrato. Lo anterior, siempre que los derechos del ARRENDATARIO conforme al presente no se vean afectados ni se le impongan obligaciones adicionales.

to affect them in trust, for which purpose the LESSEE hereby grants to LESSOR the necessary authorization to carry out assignments or transfers, total or partial, of its rights and obligations hereunder, which LESSOR may deem convenient. Likewise, the LESSOR is expressly authorized to guarantee its obligations, present or future, with its rights under this Lease. The foregoing, as long as LESSEE's rights hereunder are not affected, nor additional obligations are imposed.

## NOVENA. MANTENIMIENTO Y REPARACIÓN.

## NINTH. MAINTENANCE AND REPAIRS.

9.1. El ARRENDADOR sólo será responsable de la integridad estructural del INMUEBLE ARRENDADO, incluyendo cimentaciones, estructura de pisos, estructura de techo, paredes exteriores, y servicios públicos subterráneos y drenaje pluvial. El ARRENDADOR no tendrá obligación alguna respecto al mantenimiento y reparación del INMUEBLE ARRENDADO.

9.1. LESSOR will only be responsible for the structural integrity of the LEASED PREMISES, including foundations, floor structure, roof structure, exterior walls, and underground utilities and storm drainage system. LESSOR will not have any obligations related to the maintenance and repair of the LEASED PREMISES.

9.2. El ARRENDADOR garantiza por un periodo de un año contado a partir de la Fecha de Inicio de Renta, los componentes básicos del INMUEBLE ARRENDADO. Queda convenido por el ARRENDATARIO que, ninguno de sus empleados, contratistas, dependientes o representantes podrán acceder al techo para efectuar cualquier trabajo, sin la autorización previa por escrito del ARRENDADOR.

9.2. LESSOR warranties for a one-year term, as of the Rent Commencement Date all basic building components of the LEASED PREMISES. It is agreed and understood by the LESSEE that none of its employees, contractors, dependents or representatives may access the roof for any work whatsoever without the prior written authorization of the LESSOR.

9.3. El ARRENDADOR no será responsable por reparaciones que se requieran como resultado del uso inadecuado o actos negligentes del ARRENDATARIO, sus empleados, agentes o visitantes.

9.3. LESSOR will not be responsible for repairs needed as a result of the improper use or negligent acts of LESSEE, its employees, agents or visitors.

9.4. El ARRENDATARIO será responsable de todo el mantenimiento y reparación, incluyendo aquellos de mantenimiento preventivo y correctivos de los componentes del edificio y áreas exteriores, así como del mantenimiento preventivo de los conceptos señalados en el **inciso 9.1** anterior. Para referencia de las partes

9.4. LESSEE shall be responsible for all maintenance and repair tasks and works, including those of preventive maintenance and for repair of all the building components and exterior areas, including preventive maintenance of those items mentioned in **paragraph 9.1** above. For the parties' reference



19

se adjunta al presente como **Anexo "L"** una lista de ejemplos de los mantenimientos preventivos y correctivos que deberá realizar el ARRENDATARIO.

9.5. El ARRENDATARIO mantendrá el INMUEBLE ARRENDADO libre de basura, escombro y contaminantes.

9.6. Quien designe el ARRENDADOR será responsable del mantenimiento y limpieza de las calles y áreas comunes del Parque Industrial, . El ARRENDATARIO pagará a ARRENDADOR junto con la renta mensual, cuotas de mantenimiento mensuales calculadas a razón de US$0.026 Dólares por pie cuadrado de la superficie del INMUEBLE ARRENDADO más el Impuesto al Valor Agregado correspondiente. Dichas cuotas serán pagadas al ARRENDADOR o a quien este designe, a partir de la Fecha de Inicio de Renta. Estas cuotas deberán ser pagadas por adelantado dentro de los primeros cinco días de calendario de cada mes, conjuntamente con la renta mensual. En caso de que el ARRENDATARIO no pague dichas cuotas dentro del término de 5 (cinco) días antes señalado, el ARRENDATARIO pagará a ARRENDADOR intereses moratorios a razón de 4% (cuatro por ciento) mensual. Dichos intereses continuarán acumulándose hasta el momento en que el ARRENDATARIO efectúe el pago. Referidas cuotas de mantenimiento se incrementarán acumulativamente cada período de doce meses a partir de que concluya el duodécimo mes contado desde la Fecha de Inicio de Renta, y el incremento será del 2.5% (dos punto cinco por ciento) por cada periodo de 12 (doce) meses.

**DÉCIMA.    SEGUROS.**

10.1. El ARRENDADOR deberá mantener el INMUEBLE ARRENDADO asegurado contra cualquier pérdida o daño causados por incendio, rayo y cualquier otro siniestro cubierto por una póliza de Cobertura Amplia con cobertura de extensión de cubierta, incluyendo los riesgos que incluye un endoso de fenómenos hidrometeorológicos, terremoto, erupción volcánica, remoción de escombros y otros

attached hereto as **Exhibit "L"** is a list of examples of preventive and corrective maintenance that LESSEE shall carry out.

9.5. LESSEE shall keep and maintain the LEASED PREMISES clean and free from trash, debris and pollutants.

9.6. LESSOR's designee shall be responsible for the maintenance and cleanliness of streets and common areas of the Industrial Park,. LESSEE shall pay a monthly maintenance fee of US$0.026 Dollars per square foot of the area of the LEASED PREMISES plus the applicable Value Added Tax. Such fees shall be paid to LESSOR or its assignee as of the Rent Commencement Date. These fees shall be paid in advance within the first five calendar days of each month, jointly with the monthly rent. In the event LESSEE does not pay such fees within the five (5) day term as set forth above, LESSEE shall pay LESSOR late payment interests at the rate of 4% (four percent) monthly. Such interest shall continue to accrue until such time payment has been effected by LESSEE. Referred fees will be increased on cumulative basis each twelve month period, as of the expiration of the twelfth month as of the Rent Commencement Date, and the increase will be of 2.5% (two point five percent) per 12 (twelve) month period.

**TENTH. INSURANCE.**

10.1. LESSOR shall insure the LEASED PREMISES against loss or damage caused by fire, lightning, all risks included within an extended coverage endorsement (cobertura de extensión de cubierta), all risks included within a hydro meteorological phenomenon endorsement (fenómenos hidrometereologicos), earthquake and volcanic eruption, debris removal and all other



20

siniestros cubiertos por una Póliza de Cobertura Amplia incluyendo pérdidas de renta, por una cantidad igual al valor total de reposición de US$ 2,400,000 Dólares (expresado en dólares, moneda del curso legal de los Estados Unidos de América, pero pagadero en Moneda Nacional) sobre el INMUEBLE ARRENDADO, edificios y mejoras, incluyendo cimentaciones y excavaciones.

10.2. La mencionada póliza de Cobertura Amplia deberá incluir seguro contra riesgos tales como: incendio, rayos, explosiones, daños por viento y huracanes, granizo, aeroplanos y otros vehículos, humo, terremoto, huelgas, disturbios, manifestaciones, vandalismo, caída de árboles, erupción volcánica, avalancha de lodo, inundación por lluvia, remoción de escombros y seguro de interrupción de rentas para cubrir aquellas rentas pagaderas en caso de los siniestros antes señalados. El seguro de interrupción de rentas deberá cubrir un periodo de doce (12) meses y deberá ser renovado anualmente.

10.3. El seguro que se requiere que obtenga el ARRENDADOR conforme a la presente Cláusula deberá adquirirse por el ARRENDADOR anualmente durante el Término de este Arrendamiento. El monto de la prima a pagarse por tal seguro, deberá ser reembolsado al ARRENDADOR por el ARRENDATARIO en un término que no exceda 15 (quince) días calendario desde el momento en que así se lo solicite el ARRENDADOR. En caso de que el ARRENDATARIO no reembolse a su requerimiento referida prima de seguro, el ARRENDATARIO pagará al ARRENDADOR intereses moratorios a razón de 4% (cuatro por ciento) mensual.

10.4. El ARRENDATARIO a su propio costo y gasto deberá asegurar el contenido, y a su propio costo y gasto, deberá mantener vigente una póliza general de seguro por daños a terceros en contra reclamos o demandas por lesiones, muerte o daño en propiedad que pueda ocurrir en o fuera del INMUEBLE ARRENDADO, dicha póliza habrá de asegurar hasta el límite de no menos de US$1'500,000.00

casualties covered by an Extended Coverage Insurance Policy, in the amount of the full replacement value of US$ 2,400,000 Dollars (expressed in Dollars, Currency of the United States of America, but payable in Mexican Currency) of the LEASED PREMISES, buildings and improvements thereon, including the foundation and excavation thereof.

10.2. Aforementioned insurance policy shall include insurance against risks such as: fire, lightning, explosion, hurricane and wind damage, hail, airplane and other vehicles, smoke, earthquakes, strikes, riots, civil disorders, vandalism, falling of trees, volcanic eruption, mud avalanche, rain flooding, removal of debris, and rental interruption insurance to cover rents payable during the time in which any of above casualties occur. The rental interruption insurance shall cover a period of twelve (12) months, and shall be renewed annually.

10.3. The insurance required to be provided by the LESSOR under this Clause shall be purchased by the LESSOR on an annual basis during the Term of this Lease. The amount of the premium payable of such insurance, shall be reimbursed to the LESSOR by the LESSEE within 15 (fifteen) calendar days after LESSOR's request. In the event LESSEE does not reimburse referred insurance premium upon demand, LESSEE will pay LESSOR late payment interests at the rate of 4% (four percent) monthly.

10.4. LESSEE at its sole cost and expense, shall insure the contents, and at its sole cost and expense, shall maintain general public liability insurance against claims for personal injury, death or property damage upon, in or about the LEASED PREMISES, such insurance to afford protection to the limit of not less than US$1,500,000.00 (One Million Five Hundred Thousand Dollars legal currency of



21

(Un Millón Quinientos mil 00/100 Dólares, Moneda del curso legal de los Estados Unidos de América). Copia simple de dichas pólizas deberán ser entregadas al ARRENDADOR por el ARRENDATARIO, en el domicilio del ARRENDADOR, en la Fecha de Ocupación Parcial y en cada renovación de dicho seguro.

El ARRENDADOR y el ARRENDATARIO en este acto renuncian al derecho de recuperar en contra del otro y en contra de los directores, empleados, agentes y representantes del otro, con motivo de pérdida o daño para la parte que renuncia a su propiedad o a propiedad de otros bajo su control, siempre que tal perdida o daño esté asegurada y sea efectivamente cobrado bajo cualquier póliza que cualquiera de ellas tenga o deba tener bajo este Arrendamiento en vigor al momento de la pérdida o daño. El ARRENDADOR y el ARRENDATARIO incluirán en sus respectivas pólizas de seguros la renuncia a cualquier derecho de subrogación que las mismas puedan tener en contra del ARRENDADOR o del ARRENDATARIO, según sea el caso.

## DÉCIMA PRIMERA. DESTRUCCIÓN.

11.1. En caso de daños o destrucción del INMUEBLE ARRENDADO, por causas no imputables al ARRENDATARIO, el ARRENDADOR deberá de inmediato con los recursos provenientes de la aseguranza, causar para que se realicen tales reparaciones, restauraciones o reconstrucciones en un periodo razonable para proporcionar al ARRENDATARIO un inmueble que tenga la misma utilidad, diseño y construcción que existían con anterioridad a tal daño o destrucción; permaneciendo este Arrendamiento vigente durante el tiempo en que dichas reparaciones, restauraciones o reconstrucción se estén realizando, en el entendido de que las rentas pagaderas aplicables al periodo de reconstrucción o reparación serán cubiertas mediante el seguro de interrupción de rentas.

11.2. En caso de que tales reparaciones, restauraciones o reconstrucciones no puedan

the United States of America). Simple copies of such policies shall be delivered to LESSOR by LESSEE, at LESSOR´s address on the Date of Partial Occupancy and upon each renewal of said insurance.

LESSOR and LESSEE each hereby waive all rights of recovery against the other and against the officers, employees, agents and representatives of the other, on account of loss by or damage to the waiving party of its property or the property of others under its control, to the extent that such loss or damage is insured against and effectively collected under any insurance policy which either party may have or is required under this Lease to have in force at the time of the loss or damage. LESSOR and LESSEE shall include in their respective insurance policies the waiver of any right of subrogation that such companies may have against LESSOR or LESSEE, as the case may be.

## ELEVENTH. DESTRUCTION.

11.1. In case of damage to or destruction of the LEASED PREMISES for causes not attributable to LESSEE, LESSOR will promptly, and with the insurance proceeds, cause for such repairs, restoration or rebuilding to be made, within a reasonable term to the extent that is necessary to provide the LESSEE with premises possessing equal utility, design and construction to that which existed prior to such damage or destruction; and this Lease shall remain in full force and effect during the time such repairs, restoration or rebuilding are/is being effected, provided, however, that during such restoration or repair period, in its case, rental payments will be paid through the above mentioned rental interruption insurance.

11.2. In the event that such repairs, restoration or rebuilding cannot be accomplished within

22

realizarse dentro de los seis (6) meses siguientes a la fecha en que ocurra tal daño o destrucción, de acuerdo con un cálculo razonable del ARRENDADOR, cualquiera de las partes podrá dar por terminado anticipadamente este Arrendamiento, mediante notificación por escrito a la otra parte dado dentro de los 15 (quince) días de calendario siguientes a la fecha en que el ARRENDADOR expida al ARRENDATARIO una notificación en el sentido de que dichas reparaciones y/o reconstrucción no puede concluirse dentro de dicho término de seis (6) meses.

11.3. En caso de que el cincuenta por ciento (50%) o más del valor de reposición del INMUEBLE ARRENDADO se vean dañadas o destruidas cualquiera de las partes podrá optar por dar el Arrendamiento por terminado mediante notificación por escrito entregada a la otra dentro de los treinta (30) días siguientes a la fecha que ocurra tal daño.

## DÉCIMA SEGUNDA.    EXPROPIACIÓN.

12.1. En caso de que el INMUEBLE ARRENDADO sea expropiado por el Gobierno para cualquier propósito público o cuasi-público, durante la vigencia del Término del Arrendamiento, este contrato se dará por terminado y se extinguirá en la fecha en que el expropiador tome posesión.

12.2. En caso de que el Arrendamiento se diere por terminado con motivo de dicha expropiación, el ARRENDADOR será la única parte que tenga derecho a ejercitar cualquier acción legal así como para llevar todas las negociaciones respecto a la indemnización y para recibir la misma. La indemnización únicamente corresponderá al ARRENDADOR, en el entendido, sin embargo, de que el ARRENDATARIO tendrá derecho a ser indemnizado por la autoridad expropiante respecto de cualquier mobiliario y equipo que haya instalado en el INMUEBLE ARRENDADO, así como en relación a cualquier gasto de reubicación respecto del mismo.

six (6) months after occurrence of the damage or destruction, in accordance with a reasonable estimate from LESSOR, either party may, terminate this Lease through written notice to the other party served within the term of 15 (fifteen) calendar as of the date on which LESSOR issues LESSEE a notice in the sense that such repairs and or reconstruction cannot be accomplished within such six (6) month term.

11.3. If fifty-percent (50%) or more of the replacement cost of the LEASED PREMISES are damaged or destroyed, either party may elect to terminate this Lease by written notice delivered to the other party within thirty (30) days of such damage.

## TWELFTH. EXPROPRIATION

12.1. In the event the LEASED PREMISES is taken by expropriation for any public or quasi-public use or purpose, during the Lease Term, this lease shall terminate and conclude on the date that the possession is taken by the expropriator.

12.2. In the event of termination of the Lease because of such taking or expropriation, LESSOR shall be the only party entitled to exercise legal action and to carry out all negotiations related to the indemnification as well as to receive the same. The corresponding award shall only correspond to LESSOR, provided, however that LESSEE shall be entitled to an expropriation award from the expropriating authority, relating to its own fixtures and fittings installed at the LEASED PREMISES and any relocation expenses relating thereto.

23

**DÉCIMA TERCERA.   DESOCUPACIÓN DEL INMUEBLE ARRENDADO.**

13.1. El ARRENDATARIO deberá, en el último día del Término de este Arrendamiento o de su renovación, o bien en caso de terminación anticipada, desocupar y entregar el INMUEBLE ARRENDADO sin demora al ARRENDADOR, en buen estado, condición y con sus reparaciones, con excepción hecha del deterioro normal debido al uso y paso del tiempo. Para efecto de lo anterior, las partes, dentro de un término de un (1) mes previo a la fecha de terminación del Término del Arrendamiento, deberán efectuar una inspección conjunta con el objeto de determinar las condiciones del INMUEBLE ARRENDADO.

13.2. Todos los letreros, inscripciones, toldos e instalaciones de naturaleza similar instalados por el ARRENDATARIO deberán ser retirados en o antes de la fecha de expiración del término de este Arrendamiento.

13.3. Todo el mobiliario, instalaciones y equipo relacionado con el negocio del ARRENDATARIO e instalado por éste, podrá ser retirado por éste en cualquier momento durante el Término del Arrendamiento o a la expiración del mismo, y el ARRENDATARIO deberá, a su propio gasto, reparar cualquier daño que resulte de la instalación y subsecuente retiro.

13.4. En el caso de que el ARRENDATARIO no retire oportunamente sus mejoras, maquinaria o equipo, el ARRENDADOR tendrá la opción de: (i) remover las propiedades del ARRENDATARIO por cuenta y costo del ARRENDATARIO; o (ii) que dichas propiedades permanezcan a beneficio del INMUEBLE ARRENDADO sin que cause el de pago de contraprestación alguna.

**DÉCIMA CUARTA.   RETENCIÓN DEL INMUEBLE ARRENDADO.**

El ARRENDATARIO, al concluir el Término del Arrendamiento, ya sea por el transcurso del tiempo u otra circunstancia, deberá entregar

**THIRTEENTH.  SURRENDER**

13.1. LESSEE shall, on the last day of the Term of this Lease or its extension or upon earlier termination, surrender and deliver the LEASED PREMISES into the possession and use of LESSOR without delay, in good order, condition and repair, except for normal wear and tear due to normal use and the passage of time. For purpose hereof, the parties shall, within a term of one (1) month prior to the end of the Lease Term, effect a joint inspection in order to determine the conditions of the LEASED PREMISES.

13.2. All signs, inscriptions, canopies and installations of like nature made by LESSEE shall be removed at or prior to the termination of this Lease.

13.3. All furniture, trade fixtures and business equipment installed by LESSEE may be removed by LESSEE at any time during or at the end of the Lease Term and the LESSEE shall, at its own expense, repair all damage resulting from the installation or removal thereof.

13.4. In the event LESSEE does not remove timely its improvements, machinery or equipment, LESSOR will have the option to: (1) remove LESSEE properties on LESSEE's account; or (2) that such properties remain for the benefit of the LEASED PREMISES without causing the payment of a consideration.

**FOURTEENTH. HOLDOVER**

The LESSEE shall at the termination of the Lease by lapse of time or otherwise, yield up immediate possession of the LEASED



24

inmediatamente la posesión del INMUEBLE ARRENDADO al ARRENDADOR; el no hacerlo provocará que el ARRENDATARIO tenga que pagar a partir de la fecha de terminación del contrato y por todo el tiempo en que dicha posesión sea retenida, una cantidad igual al precio de la renta entonces vigente más el 100% (cien por ciento) sobre dicha renta, en el entendido de que el contenido de esta cláusula no podrá ser interpretado como una renuncia por parte del ARRENDADOR a cualquier derecho o acción; tampoco, la aceptación de dicho pago o parte del mismo, o cualquier acto que aparente afirmar la ocupación por parte del ARRENDATARIO será interpretado como una renuncia por parte del ARRENDADOR a recuperar el INMUEBLE ARRENDADO.

## DÉCIMA QUINTA.    DERECHO    DEL ARRENDADOR    DE    CUMPLIR    LAS OBLIGACIONES DEL ARRENDATARIO.

15.1. Si el ARRENDATARIO en cualquier tiempo incurre en incumplimiento con respecto de cualquiera de sus compromisos adquiridos al amparo de este Contrato, en tal caso el ARRENDADOR, después de 15 (quince) días de haber dado aviso por escrito al ARRENDATARIO (o sin que impere aviso en caso de emergencia) y sin relevar al ARRENDATARIO de cualquier obligación relativa a este Contrato, podrá, sin estar obligado a ello, llevar a cabo las obligaciones que estuvieren a cargo del ARRENDATARIO establecidas en este Contrato, y podrá introducirse en el INMUEBLE ARRENDADO para dicho efecto y tomar todas las medidas necesarias que sean requeridas con dicho fin. Todas las cantidades pagadas por el ARRENDADOR y todos los gastos y costos en que incurra el ARRENDADOR en relación con el cumplimiento de las obligaciones a cargo del ARRENDATARIO, deberán ser pagados por el ARRENDATARIO al ARRENDADOR al momento en que este lo requiera.

15.2. Además de cualquier otro derecho o remedio que tenga el ARRENDADOR de conformidad con el presente instrumento o la legislación aplicable, el pago o reembolso

PREMISES to LESSOR, and failing to do so will pay as liquidated damages starting as of the termination hereof and for the whole time such possession is withheld thereafter, the price of then current rent plus 100% (one hundred) percent of the same, but the provisions of this Clause shall not be held as a waiver by LESSOR of any right or action; nor shall the receipt of said payment or any part thereof, or any act in apparent affirmation of tenancy, operate as waiver of the right of LESSOR to recover the LEASED PREMISES.

## FIFTEENTH.  LESSOR'S  RIGHT  TO PERFORM LESSEE'S COVENANTS

15.1. If LESSEE shall at any time fail to perform any one or more of its agreements made in this Lease, LESSOR, after 15 (fifteen) days written notice to LESSEE (or without notice in the case of an emergency) and without waiving or releasing LESSEE from any obligation of LESSEE contained in this Lease, may but shall be under no obligation to perform any act on LESSEE's part to be performed as provided in this Lease, and may enter upon the LEASED PREMISES for that purpose and take all such actions thereon as may be necessary therefore. All sums, paid by LESSOR and all costs and expenses incurred by LESSOR in connection with the performance of any such obligation of LESSEE, shall be payable by LESSEE to LESSOR on demand.

15.2. In addition to any other right or remedies hereunder or under applicable law, the untimely payment or reimbursement by LESSEE of any amount owed or required to be reimbursed

25

retrasado que realice el ARRENDATARIO respecto de cualquier cantidad que adeude o tenga que rembolsar el ARRENDATARIO de acuerdo a lo previsto en el presente Contrato causará un interés a razón de 4% (cuatro por ciento) mensual, el cual continuará acumulándose hasta en tanto el ARRENDATARIO efectúe el pago y/o reembolso correspondiente.

hereunder shall cause late payment interests at a rate of 4% (four percent) monthly, which interests shall continue to accrue until such time payment and/or reimbursement has been effected by LESSEE.

## DÉCIMA SEXTA. ACCESO DEL ARRENDADOR AL INMUEBLE ARRENDADO.

## SIXTEENTH. ENTRY ON LEASED PREMISES BY LESSOR

16.1. Previo aviso por escrito de parte del ARRENDADOR con por lo menos 1 (un) día de anticipación, el ARRENDATARIO deberá permitir al ARRENDADOR y a sus representantes autorizados el acceso al INMUEBLE ARRENDADO a cualquier hora razonable, para efecto de inspeccionar el mismo y llevar a cabo cualquier obra en el mismo que sea requerida o que pueda ser necesaria como consecuencia de que el ARRENDATARIO no efectúe cualquier reparación u obra o comience la misma después de diez días del aviso por escrito por parte del ARRENDADOR.

16.1. With prior notice from LESSOR with at least 1 (one) day in advance, LESSEE shall permit LESSOR and its authorized representatives to enter the LEASED PREMISES at all reasonable times for the purpose of inspecting the same and performing any work therein that may be required of it or that may be necessary by reason of LESSEE's failure to make repair or perform such work or to commence the same after ten days written notice from LESSOR.

16.2. Nada de lo contenido en esta cláusula habrá de implicar un deber para el ARRENDADOR de llevar a cabo la obra, y el hecho de que el ARRENDADOR la efectúe no constituirá una renuncia al cumplimiento por parte del ARRENDATARIO a efectuar la misma.

16.2. Nothing herein shall imply any duty upon the part of LESSOR to do any such work and performance thereof by LESSOR shall not constitute a waiver of LESSEE's default in failing to perform the same.

16.3. El ARRENDADOR tendrá derecho de entrar al INMUEBLE ARRENDADO a cualquier hora razonable durante horas hábiles con el objeto de mostrar el mismo a posibles compradores y durante los últimos 6 (seis) meses del Término del Arrendamiento o cualquier prórroga del mismo a arrendatarios potenciales, siempre que haya dado aviso al ARRENDADOR con cuando menos un (1) día de anticipación y que todos los visitantes cumplan con los requisitos estándares de seguridad del ARRENDATARIO.

16.3. LESSOR shall have the right to enter the LEASED PREMISES at all reasonable times during usual business hours for the purpose of showing the same to prospective purchasers and during the last 6 (six) months of the Lease Term or any renewal thereof to prospective tenants, provided that a one (1) day advance written notice has been provided to LESSEE and that all visitors comply with LESSEE's standard security arrangements.

## DÉCIMA SÉPTIMA. DEPÓSITO, OBLIGADO SOLIDARIO Y PAGO ANTICIPADO DE RENTA.

## SEVENTEENTH. GUARANTY DEPOSIT, GUARANTOR AND PREPAYMENT OF RENT.

26

17.1. En la misma fecha de firma del presente Contrato el ARRENDATARIO entregará al ARRENDADOR mediante transferencia bancaria a la cuenta identificada en el inciso 6.5 de la Cláusula Sexta anterior, como depósito, la cantidad neta de **US$75,315.36 Dólares** (Setenta y Cinco Mil Trescientos Quince Dólares 36/100 Moneda de los Estados Unidos de América), a fin de garantizar las obligaciones del ARRENDATARIO bajo el presente Contrato, mismo que se aplicará para garantizar la conservación del INMUEBLE ARRENDADO, y el cumplimiento de las obligaciones del ARRENDATARIO bajo el presente Contrato, las leyes y reglamentos aplicables y bajo el Reglamento que se adjunta al presente como **Anexo "H"**.

17.2. En caso de que el ARRENDATARIO incumpla con cualquiera de sus obligaciones bajo este Arrendamiento, las leyes y reglamentos aplicables o bajo el Reglamento que se adjunta al presente como **Anexo "H"** y sin perjuicio de hacer valer cualesquier otro recurso disponible bajo este Contrato o previsto por la ley aplicable, el ARRENDADOR podrá usar total o parcialmente y en cualquier momento el depósito en garantía para el pago de cualquier obligación a cargo del ARRENDATARIO, sin que para ello requiera notificar previamente al ARRENDATARIO para dicho propósito. El ARRENDADOR queda expresamente facultado para usar el depósito en garantía, sin que para ello requiera notificar previamente al ARRENDATARIO, para el pago de lo siguiente: (i) cualquier cantidad pagadera por el ARRENDATARIO de conformidad con este Contrato, las leyes y reglamentos aplicables y el Reglamento que se adjunta al presente como **Anexo "H"**; (ii) cantidades pagaderas por concepto de daños y perjuicios que sufra el ARRENDADOR; (iii) costos en que incurra el ARRENDADOR por el incumplimiento del ARRENDATARIO incluyendo honorarios de abogados. Si cualquier parte del depósito en garantía es utilizado por el ARRENDADOR conforme a lo anterior, el ARRENDATARIO deberá, dentro de los 3 (tres) días de calendario siguientes a su requerimiento, depositar en

17.1. On the execution date of this Lease LESSEE will deliver LESSOR through wire transfer to the account identified in section 6.5 of Clause Sixth above, as deposit, the amount of **US$75,315.36 Dollars** (Seventy Five Thousand Three Hundred Fifteen Dollars 36/100 currency of the United States of America), in order to guarantee LESSEE's obligations hereunder, which shall be applied to guarantee the conservation of the LEASED PREMISES and fulfillment of the obligations of the LESSEE under this Lease, applicable laws and regulations and under the Regulations which are attached hereto as **Exhibit "H"**.

17.2. Should the LESSEE breach any of its obligations under this Lease, applicable laws and regulations or under the Regulations attached hereto as **Exhibit "H"** and without prejudice to any other recourse available hereunder or under applicable law, LESSOR may at any time use the guaranty deposit, in whole or in part, for the payment of any obligation of the LESSEE, and shall not require prior notice to LESSEE for said purposes. The LESSOR is hereby expressly authorized to use the security deposit, and shall not require prior notice to LESSEE, for the payment of the following: (i) any amount payable by the LESSEE pursuant to this Lease, applicable laws and regulations and the Regulations attached hereto as **Exhibit "H"**; (ii) amounts payable for damages suffered or sustained by the LESSOR; (iii) costs incurred by the LESSOR for a breach by LESSEE including attorneys' fees. If any part of the security deposit is used by the LESSOR pursuant to the foregoing, the LESSEE shall, within the 3 (three) calendar days following its request, deposit in cash with the LESSOR an amount sufficient to restore the deposit guaranty to its original amount. Failure to comply with this obligation of the LESSEE shall be construed as a breach and cause for termination. LESSOR's obligations towards the security deposit shall be that of a debtor and not a depositary; and no interest shall accrue thereon. The security

27

efectivo con el ARRENDADOR una cantidad suficiente para restaurar el depósito en garantía a su monto original. El incumplimiento a dicha obligación del ARRENDATARIO será causal de rescisión. La obligación del ARRENDADOR respecto al depósito en garantía es la de un deudor, no de un depositario; no se causará ningún tipo de interés al respecto. El depósito en garantía o en su caso el saldo no aplicado del mismo, será devuelto al ARRENDATARIO sin interés alguno después del vencimiento o terminación anticipada del presente Contrato y una vez que se haga la debida comprobación del cumplimiento de todas las obligaciones contraídas por el ARRENDATARIO.

deposit or, in its case, the balance of the same which is not applied, shall be returned to LESSEE without interest after the expiration or termination of this Lease and after due verification of the compliance of all obligations assumed by LESSEE.

17.3. Comparece a la celebración del presente Contrato de Arrendamiento **TANGIBLE PLAY, INC.**, en su condición de OBLIGADO SOLIDARIO, y quien asume y reporta a su cargo la obligación conjunta, indistinta y solidaria con el ARRENDATARIO de pagar las rentas convenidas conforme al precio antes pactado; y adicionalmente, de cumplir con cualesquier otra obligación pecuniaria a cargo del ARRENDATARIO que se desprenda del presente Contrato, por lo que el ARRENDADOR queda facultado para reclamar judicial o extrajudicialmente cualesquier adeudo generado o causado con motivo de la celebración del presente Arrendamiento, por cualquier concepto, ya sea indistinta o conjuntamente, del ARRENDATARIO o el OBLIGADO SOLIDARIO, a su libre y discrecional elección. El OBLIGADO SOLIDARIO señala como domicilio para ser notificado o requerido el ubicado en: 195 Page Mill Road, Suite 105, Palo Alto, CA 94306 USA.

17.3. **TANGIBLE PLAY, INC.**, appears as a party upon the execution of this Lease, in the capacity as GUARANTOR, and who in such capacity does hereby assume and bear, jointly, indistinctly and severally with the LESSEE, the obligation to make the agreed rental payments pursuant to the previously agreed rental price; and in addition, to comply with any other monetary obligation of the LESSEE derived hereunder, as a result of which the LESSOR shall be entitled to collect, judicially or out of court, any debt generated or caused as a result of the execution of this Lease, for any reason, either separate or jointly, from the LESSEE or the GUARANTOR, at its sole discretion and election. The GUARANTOR indicates as its address for notification or requirement purposes, the one located at: 195 Page Mill Road, Suite 105, Palo Alto, CA 94306 USA.

17.4. Queda convenido que el OBLIGADO SOLIDARIO expresamente se obliga a pagar cualesquier adeudo u obligación contraída por el ARRENDATARIO, ya sea en forma parcial o total, derivada el presente Arrendamiento, sujetándose a los términos de los artículos 1862 y 1864 del Código Civil para el Estado de Baja California.

17.4. It is agreed that the GUARANTOR shall be expressly obligated to pay any debt or obligation assumed by the LESSEE, either in whole or in part, derived from this Lease, subject to the terms provided for in Articles 1862 and 1864 of the Civil Code for the State of Baja California.



17.5. Para inducir al Arrendador para la celebración de este Contrato, simultáneamente a la celebración del presente Contrato, el Arrendatario obtendrá y entregará a satisfacción plena del Arrendador, una garantía del OBLIGADO SOLIDARIO respecto de las obligaciones y responsabilidades del Arrendatario previstas en este Contrato en los términos y condiciones del formato que se adjunta al presente Contrato como **Anexo "M"**.

17.6. Precisamente en la "Fecha de Ocupación Final", según dicho término se define en el **inciso 3.2.2** de la **Cláusula Tercera** anterior, el ARRENDATARIO, sin necesidad de solicitud, aviso o requerimiento alguno, depositará en la cuenta bancaria del ARRENDADOR señalada en el **inciso 6.5** de la **Cláusula Sexta** anterior, el equivalente a 6 (seis) meses de la renta mensual más el Impuesto al Valor Agregado, cuya cantidad equivale a la suma de **$150,630.72 Dólares** (Ciento Cincuenta Mil Seiscientos Treinta Dólares 72/100 Moneda de los Estados Unidos de América) más el Impuesto al Valor Agregado por concepto de pago anticipado de renta del INMUEBLE ARRENDADO, en el entendido que dicho anticipo será aplicado por el ARRENDADOR en pago de las primeras 6 (seis) parcialidades mensuales de la renta a generarse a partir de la Fecha de Inicio de Renta. En caso de que el ARRENDATARIO entregue oportunamente dicho pago anticipado de renta, a partir del séptimo mes contado a desde la Fecha de Inicio de Renta, seguirá el plan de pago normal de renta según se especifica en la Clausula 6.1 del presente.

## DECIMA OCTAVA. SUBORDINACIÓN.

18.1. El ARRENDATARIO conviene en que a solicitud del ARRENDADOR subordinará este Arrendamiento (incluyendo sus prórrogas) a cualquier hipoteca o garantía que se constituya sobre el INMUEBLE ARRENDADO, en el entendido de que el acreedor hipotecario convenga en no estorbar la posesión o cualquier otro derecho del ARRENDATARIO conforme a este Arrendamiento, mientras el ARRENDATARIO continúe cumpliendo con las

17.5. To induce the LESSOR to enter into this Lease, simultaneously upon the execution of this Lease, the LESSEE shall obtain and deliver to the satisfaction of the LESSOR, a guaranty from the GUARANTOR with respect to the obligations and responsibilities of the LESSEE as provided hereunder, in the terms and conditions of the form which is attached hereto as **Exhibit "M"**.

17.6. Precisely on the "Final Occupancy Date", as such term is defined in **section 3.2.2** of **Clause Third** above, LESSEE, without the need of request, notice or requirement whatsoever, will deposit in LESSOR's bank account mentioned in **section 6.5** of **Clause Sixth** above, the equivalent to 6 (six) months of the monthly rent plus the Value Added Tax, which amount is equal to the sum of **$150,630.72 Dollars** (One Hundred Fifty Thousand Six Hundred Thirty Dollars 72/100 Currency of the United States of America) plus Value Added Tax, as prepaid rent for the LEASED PREMISES, in the understanding that such prepayment will be applied by LESSOR in payment of the first 6 (six) partial monthly payments of rent to be caused as of the Rent Commencement Date. In the event LESSEE effects timely delivery of referred advance rent payment, as of the seventh month from the Rent Commencement Date, the normal rent payment plan shall continue as outlined in Section 6.1 hereof.

## EIGHTEENTH. SUBORDINATION.

18.1. LESSEE agrees, at the request of LESSOR, to subordinate this lease (including any extensions) to any mortgage or security interest placed upon the LEASED PREMISES, provided that the holder agrees not to disturb the possession and other rights of LESSEE under this lease so long as LESSEE continues to perform its obligation hereunder and in the event of acquisition of title by said holder through foreclosure proceedings or otherwise,

29

obligaciones que asume conforme al mismo; y en caso de que tal acreedor o acreedor hipotecario adquiera la propiedad mediante remate judicial o de otra manera, deberá aceptar al ARRENDATARIO como arrendatario del INMUEBLE ARRENDADO y a cumplir las obligaciones del ARRENDADOR conforme al presente y el ARRENDATARIO conviene en reconocer como arrendador a tal adquirente o acreedor hipotecario o a cualquier otra persona que adquiera la propiedad del INMUEBLE ARRENDADO. El ARRENDATARIO y el ARRENDADOR convienen en formalizar y entregar cualquier instrumento necesario para perfeccionar los convenios contenidos en la presente.

18.2. El ARRENDATARIO y el OBLIGADO SOLIDARIO, manifiestan y garantizan al ARRENDADOR que el OBLIGADO SOLIDARIO, es sujeto de crédito con instituciones de crédito. El ARRENDATARIO y el OBLIGADO SOLIDARIO deberán proporcionar al ARRENDADOR, a solicitud de éste y según sea razonablemente solicitado, toda la información y documentación financiera que necesite el ARRENDADOR para poder obtener financiamiento con este Contrato.

18.3. El OBLIGADO SOLIDARIO proporcionará al ARRENDADOR dentro de los ciento veinte (120) días de calendario siguientes al cierre de cada ejercicio fiscal, copia de sus Estados Financieros completos auditados por una firma de contadores públicos certificados razonablemente aceptable para el ARRENDADOR.

18.4. El ARRENDATARIO desde la firma del presente Contrato renuncia al derecho de preferencia y al derecho del tanto a que se refiere el Artículo 2321 del Código Civil para el Estado de Baja California. El ARRENDATARIO conviene y renuncia desde ahora a cualesquier derecho de preferencia que establece la Legislación Civil vigente en el Estado en caso de que el legítimo propietario del INMUEBLE ARRENDADO desee vender el mismo. Queda convenido en consecuencia que el legítimo

to accept LESSEE as tenant of the LEASED PREMISES and to perform the LESSOR's obligations hereunder and LESSEE agrees to recognize such holder or any other person acquiring title to the LEASED PREMISES. LESSEE and LESSOR agree to execute and deliver any appropriate instruments necessary to carry out the agreements contained herein.

18.2. LESSEE and the GUARANTOR, represent and warrant to LESSOR that GUARANTOR is credit worthy to credit institutions. LESSEE and GUARANTOR shall provide LESSOR, upon LESSOR's request and as reasonably required, all financial information and documentation that may be required to enable LESSOR to secure financing with this Lease.

18.3. GUARANTOR shall provide LESSOR, within one hundred twenty (120) calendar days after the close of each of their fiscal years, with copies of its full financial statements audited by a certified public accounting firm reasonably acceptable to LESSOR.

18.4. LESSEE as of the date of execution hereof waives the preferred right and right of first refusal referred to under Article 2321 of the Civil Code for the State of Baja California. LESSEE hereby agrees and waives as of this moment any preferential right to which it may be entitled to as provided by the Civil Legislation in force in the State in the event that the legitimate title holder of the LEASED PREMISES desires to sell the same. It is therefore agreed that the rightful owner of the LEASED PREMISES is authorized

.30

propietario del INMUEBLE ARRENDADO queda facultado para promover y vender el INMUEBLE ARRENDADO a cualquier tercero, y para tal caso expresamente el ARRENDATARIO faculta al mismo para que realice cualquier operación de transmisión de dominio sin previo aviso y por ende también renuncia al derecho de preferencia que la Ley le confiere, y a reclamar indemnizaciones por tales conceptos.

## DÉCIMA NOVENA. TERMINACIÓN ANTICIPADA.

19.1. El hecho de que suceda cualquiera de las siguientes situaciones faculta al ARRENDADOR para dar por terminado inmediatamente el presente Arrendamiento, mediante la entrega de un simple aviso escrito al ARRENDATARIO, sin necesidad de resolución judicial alguna:

19.1.1. La reincidencia en la falta de pago puntual de la renta o cualquier otro pago que se requiera del ARRENDATARIO conforme al presente, en la forma y tiempo en que sean exigibles;

19.1.2. Salvo lo dispuesto en el **sub-inciso 19.1.1** anterior, la omisión por parte del ARRENDATARIO de cumplir o realizar cualquiera de las obligaciones, condiciones o disposiciones de este Arrendamiento, siempre y cuando tal omisión continúe por un periodo de 15 (quince) días de calendario a partir del recibo por el ARRENDATARIO de la notificación por escrito de tal hecho del ARRENDADOR;

19.1.3. El que el ARRENDATARIO llegue a cualquier transacción general o cesión en beneficio de acreedores;

19.1.4. El que el OBLIGADO SOLIDARIO llegue a cualquier transacción general o cesión en beneficio de acreedores;

19.1.5. La solicitud por o en contra del ARRENDATARIO para que se declare al ARRENDATARIO en estado de insolvencia, o una solicitud de suspensión de pagos o acción conforme a cualquier Ley relativa a insolvencia o concurso mercantil (salvo que dicha solicitud

---

to promote and sell the LEASED PREMISES to any third party and for such purposes, LESSEE expressly authorizes the same to carry out any transfer of ownership transaction without prior notice and that it therefore additionally waives any preferential right provided under the Law, including that to claim any compensation as a result thereof.

## NINETEENTH. EARLY TERMINATION.

19.1. The occurrence of any of the following events shall allow LESSOR to terminate this Lease immediately, through the issuance to LESSEE of a simple written notice, without the need for any court resolution whatsoever:

19.1.1. The repeated failure to make any payment of rent or any other payment required to be made by LESSEE hereunder on a timely basis and when due;

19.1.2. Except as provided in **sub-paragraph 19.1.1** above, the failure by LESSEE to observe or perform any of the covenants, conditions or provisions of this Lease and such default continues during a period of 15 (fifteen) calendar days after receipt by LESSEE of written notice from LESSOR;

19.1.3. The making of any general arrangement or any general assignment by LESSEE for the benefit of its creditors;

19.1.4. The making of any general arrangement or any general assignment by GUARANTOR for the benefit of its creditors;

19.1.5. The filing by or against LESSEE of a petition to have LESSEE adjudged insolvent, or a petition for reorganization or arrangement under any law relating to insolvency (unless such petition is dismissed within thirty (30) days of filing);

31

sea desechada dentro de los treinta (30) días siguientes a su presentación);

19.1.6. La solicitud por o en contra del OBLIGADO SOLIDARIO para que se declare al OBLIGADO SOLIDARIO en estado de insolvencia, o una solicitud de suspensión de pagos o acción conforme a cualquier Ley relativa a insolvencia o concurso mercantil (salvo que dicha solicitud sea desechada dentro de los treinta (30) días siguientes a su presentación);

19.1.6. The filing by or against GUARANTOR of a petition to have GUARANTOR adjudged insolvent, or a petition of reorganization or arrangement under any law relating to insolvency (unless such petition is dismissed within thirty (30) days of filing);

19.1.7. El nombramiento de un síndico o interventor que tome posesión de todos o substancialmente todos los activos de ARRENDATARIO;

19.1.7. The appointment of a trustee or receiver to take possession of all or substantially all of LESSEE's assets;

19.1.8. El nombramiento de un síndico o interventor que tome posesión de todos o substancialmente todos los activos del OBLIGADO SOLIDARIO;

19.1.8. The appointment of a trustee or receiver to take possession of all or substantially all of GUARANTOR's assets;

19.1.9. El embargo, ejecución u otra afectación judicial de todos o substancialmente todos los activos del ARRENDATARIO;

19.1.9 The attachment, execution or other judicial seizure of all or substantially all of LESSEE's assets;

19.1.10. El embargo, ejecución u otra afectación judicial de todos o substancialmente todos los activos del OBLIGADO SOLIDARIO;

19.1.10. The attachment, execution or other judicial seizure of all or substantially all of GUARANTOR's assets

19.1 11. Que el ARRENDATARIO declare por escrito su inhabilidad para pagar sus deudas;

19.1.11. That LESSEE declares in writing its inability to pay its debts;

19.1.12. Que el OBLIGADO SOLIDARIO declare por escrito su inhabilidad para pagar sus deudas;

19.1.12. That GUARANTOR declares in writing its inability to pay its debts;

19.1.13. Si el ARRENDATARIO usa el INMUEBLE ARRENDADO para fines distintos a los autorizados por el ARRENDADOR;

19.1.13. If LESSEE uses the LEASED PREMISES for uses other than those which have been approved by LESSOR;

19.1.14. Si el ARRENDATARIO suspende sus actividades por cualquier motivo o abandona el INMUEBLE ARRENDADO por cualquier razón por más de un mes. En cuyo caso, el ARRENDADOR podrá tomar la posesión del INMUEBLE ARRENDADO a los 15 (quince) días calendario siguientes a que emita el aviso de terminación. Para efectos de lo cual, el

19.1.14. If LESSEE suspends its activities for any reason or abandons or vacates the LEASED PREMISES for any reason whatsoever for more than a month. In such event, LESSOR may take possession of the LEASED PREMISES 15 (fifteen) calendar days after it issues the termination notice. For such purposes LESSOR is hereby authorized by

32

ARRENDATARIO en este acto autoriza al ARRENDADOR a fin de que promueva una jurisdicción voluntaria solicitando la devolución de la posesión del INMUEBLE ARRENDADO. Dicho procedimiento es en adición a cualquier otro recurso o acción que el ARRENDADOR tenga o pudiera tener;

19.1.15. Que el ARRENDATARIO sea sujeto de un emplazamiento a huelga y deje de pagar puntualmente la renta;

19.1.16. Que el OBLIGADO SOLIDARIO sea sujeto de un emplazamiento a huelga y el ARRENDATARIO deje de pagar puntualmente la renta;

19.1.17. Que el ARRENDATARIO incumpla con cualquier ley o reglamento de tal manera que impida el cumplimiento de sus obligaciones bajo este contrato o de alguna manera afecte el INMUEBLE ARRENDADO o los derechos del ARRENDADOR bajo el presente.

19.2. En el caso de que el presente Contrato sea terminado por el ARRENDADOR conforme al **inciso 19.1** anterior, el ARRENDATARIO pagará al ARRENDADOR como pena convencional por dicha terminación anticipada, una cantidad equivalente a la suma de la totalidad de los pagos de renta mensuales del periodo remanente del Término de éste Arrendamiento(tomando como base el monto de la entonces renta mensual) y, en su caso, el plazo remanente de cualquier prórroga que hubiere.

## VIGÉSIMA.   AMBIENTAL.

20.1. El ARRENDATARIO conviene en que salvo que fuera causado por el ARRENDADOR o los contratistas del ARRENDADOR, durante la vigencia de este Contrato y que al momento de entrega del INMUEBLE ARRENDADO al ARRENDADOR, el INMUEBLE ARRENDADO estará libre de cualquier responsabilidad ambiental-ecológica y que no existirá contaminación del suelo o de agua del subsuelo causada por el ARRENDATARIO que pudiera constituir una violación a las leyes ambientales

LESSEE to request competent authority under a "*Jurisdicción Voluntaria*" action to return possession of the LEASED PREMISES. This procedure is in addition to any other action or recourse which LESSOR may have;

19.1.15. If LESSEE is subject of a labor strike and fails to timely pay the rent;

19.1.16 If GUARANTOR is subject of a labor strike and LESSEE fails to timely pay the rent;

19.1.17. If LESSEE fails to comply with any law or regulations in any way that impedes its performance of its obligations hereunder or may otherwise affect the LEASED PREMISES or LESSOR's rights hereunder.

19.2. In the event this Lease is terminated by LESSOR pursuant to **paragraph 19.1** above, LESSEE shall pay LESSOR as conventional penalty for such early termination, an amount equivalent to the sum of all monthly rental payments (based on the then current monthly rent) for the remaining period of the Lease Term, and, in its case, for the remaining portion of the renewal term.

## TWENTIETH. ENVIRONMENTAL.

20.1. LESSEE agrees that, except where caused by LESSOR or its contractors, during the term of this Agreement and at the time of delivery of the LEASED PREMISES to LESSOR, the LEASED PREMISES will be free from any environmental liability, and that there shall be neither soil nor ground water contamination caused by LESSEE which would constitute a violation to applicable environmental laws and regulations. In the event that during the Term of this Agreement or

38

o a sus reglamentos aplicables. En caso de que durante la vigencia de este Contrato o cuando el ARRENDATARIO entregue al ARRENDADOR el INMUEBLE ARRENDADO, el INMUEBLE ARRENDADO, cualesquier tierra adyacente, el subsuelo o mantos acuíferos presenten cualquier tipo de contaminación causada por el ARRENDATARIO, el ARRENDATARIO se obliga a limpiar y remediar dicho INMUEBLE ARRENDADO o dicho suelo, subsuelo o mantos acuíferos contaminados, liberando, por lo tanto al ARRENDADOR respecto de cualquier obligación, multa, sanción o responsabilidad frente a terceros que derive de dicha contaminación. El ARRENDADOR, manifiesta y garantiza al ARRENDATARIO que a la fecha de firma del presente el INMUEBLE ARRENDADO se encuentra libre de cualquier derrame, accidente de naturaleza ambiental o disposición final o manejo o reciclaje de cualquier sustancia, material o desecho (incluyendo sin limitación aquellos considerados peligrosos bajo las Leyes Ambientales).

20.2. Las partes convienen en que 30 (treinta) días antes de la terminación programada del Contrato o al momento en que éste se dé por terminado anticipadamente, el ARRENDATARIO llevará a cabo, a su propio gasto y costo, un estudio ambiental conocido como "Fase I" sobre el INMUEBLE ARRENDADO a través de perito autorizado, con el fin de determinar si existe cualquier tipo de contaminación en el suelo o en el agua del subsuelo y cualquier otra condición ambiental en o afectando el INMUEBLE ARRENDADO. Si como resultado de dicho estudio ambiental se determina que el INMUEBLE ARRENDADO está contaminado a causa de las actividades del ARRENDATARIO, el ARRENDATARIO deberá llevar a cabo todos los actos necesarios para limpiar la contaminación que causó al INMUEBLE ARRENDADO de manera que este cumpla con las especificaciones que indique al ARRENDADOR el perito encargado de llevar a cabo el estudio ambiental sobre el INMUEBLE ARRENDADO.

20.3. Además, el ARRENDATARIO conviene en todo momento mantener al ARRENDADOR libre

when LESSEE delivers possession of the LEASED PREMISES to LESSOR, the LEASED PREMISES, any surrounding soil, underground or underground waters present any type of contamination caused by LESSEE, LESSEE hereby agrees and binds itself to clean and restore the LEASED PREMISES or such contaminated, soil, underground or underground waters, thus releasing and holding LESSOR harmless with respect to any obligation, fine, sanction or liability towards third parties, which derives from such contamination. LESSOR warrants, represents and guarantees to LESSEE that, on the date of execution hereof, the LEASED PREMISES are free of any spill, accident of environmental nature or final disposal or handling or recycling of any substance, material or waste, (including without limitation, those deemed hazardous under the Environmental Laws).

20.2. The parties hereto agree that 30 (thirty) days prior to the scheduled termination of this Lease or at the time it is early terminated, LESSEE shall carry out, at its own cost and expense, a "Phase I" environmental study over the LEASED PREMISES through an authorized expert third party, in order to determine if there is any soil or ground water contamination or any other environmental condition on or affecting the LEASED PREMISES. If as a result of such environmental study, the LEASED PREMISES are determined to be contaminated due to the activities of LESSEE therein, LESSEE shall clean-up whatever contamination exists over the LEASED PREMISES that was caused by LESSEE in order for the LEASED PREMISES to comply with the specifications indicated to LESSOR by the expert in charge of the environmental study over the LEASED PREMISES.

20.3. Furthermore, LESSEE hereby agrees to hold at all times LESSOR harmless and free of

de cualquier responsabilidad ambiental que pueda surgir por algún acto u omisión incurrida por el ARRENDATARIO, sus empleados y representantes, directores, contratistas, subcontratistas o invitados en el INMUEBLE ARRENDADO, durante el término de este Contrato.

any environmental liability that may arise from any act or omission caused by the LESSEE, its employees, representatives, directives, contractors, subcontractors, or guests on the LEASED PREMISES during the term of this Lease.

## VIGÉSIMA PRIMERA. RENOVACION DEL ARRENDAMIENTO.

## TWENTY FIRST. RENEWAL OF LEASE.

21.1. El ARRENDATARIO tendrá la opción de renovar el Término de este Arrendamiento por 2 (dos) términos adicionales sucesivos de 5 (cinco) años cada uno. La opción podrá ser ejercida a sola discreción del ARRENDATARIO por escrito, y dicho escrito, en su caso, deberá ser entregado al ARRENDADOR con por lo menos 6 (seis) meses de anticipación a la fecha de expiración del Término del Arrendamiento en vigencia. Salvo que el ARRENDADOR lo convenga por escrito de otra forma, la opción de renovar el Término de este Arrendamiento del ARRENDATARIO esta sujeta a la condición de que el ARRENDATARIO cumpla oportuna y totalmente con todas y cada una de sus obligaciones bajo el presente Contrato.

21.1. LESSEE shall have an option to extend the Term of this Lease for two (2) additional terms of 5 (five) years, each. The option shall be exercised by LESSEE in writing, and said writing shall be delivered to LESSOR at least 6 (six) months prior to the expiration of the then current Lease Term. Unless otherwise agreed in writing by LESSOR, LESSEE's option to extend the lease term is subject to the condition that LESSEE fully and timely complies with each and all of its obligations hereunder.

21.2. El OBLIGADO SOLIDARIO conviene y está de acuerdo en que para el caso de que el Término de éste Arrendamiento sea renovado, las obligaciones asumidas por el OBLIGADO SOLIDARIO conforme al presente permanecerán vigentes en su totalidad durante el plazo de renovación.

21.2. The GUARANTOR agrees and binds itself that, in the event that the Term of this Lease is renewed, the obligations assumed by the GUARANTOR hereunder shall survive and continue in force in their entirety during the renewal term.

21.3. Salvo por el monto de la renta mensual inicial, los plazos de renovación tendrán las mismas condiciones económicas que las establecidas en el presente Contrato. La renta mensual en caso de renovación, aplicable a partir del inicio de cada renovación, será establecida en base a una renta justa de mercado prevaleciente en la zona industrial donde se ubica el INMUEBLE ARRENDADO para edificios equiparables y entorno industrial equiparable. La renta justa de mercado será definida como la renta a la fecha de renovación para espacios vacantes en edificios de calidad y antigüedad comparable para arrendatarios de

21.3 Except for the monthly rent, the renewal terms shall have the same economic conditions than those stated in this Lease. The monthly rent in case of renewal, applicable as of the commencement of each renewal term will be established according to the prevailing fair market rental rate in the industrial zone where the LEASED PREMISES are located for similar buildings and similar surroundings. The fair market rental rate shall be defined as the rental rate at the time of lease renewal for vacant space in buildings of comparable quality and age for tenants of similar size, credit quality and prestige, considering also,

dimensiones similares, calidad crediticia y prestigio, considerando a su vez, el tipo y plusvalía del Complejo o Parque Industrial donde se ubiquen. La renta mensual durante los términos de renovación, será incrementada en forma acumulativa cada periodo de doce meses y el incremento será del 2.5% (dos y medio por ciento) fijo, por cada periodo de doce meses.

the type and added value of the Industrial Park or Complex where it is located. The monthly rent during the renewal terms, will be increased in a cumulative manner every twelve months and the increase will be of 2.5% (two and one half percent) fixed, per twelve month period.

**VIGÉSIMA SEGUNDA. AVISOS.**

**TWENTY SECOND. NOTICES.**

En caso de ser necesario o deseable para cualquiera de las partes hacer cualquier notificación o demanda a la otra parte conforme a las disposiciones de este Contrato, tal notificación o demanda deberá hacerse personalmente, dirigido al domicilio que aparece a continuación, cuyos domicilios son designados expresamente por las partes incluso para requerimiento de pago y emplazamiento en caso de juicio:

Whenever it shall be necessary or desirable for either of the parties to serve any notice of demand upon the other party pursuant to the provisions of this agreement, such notice or demand shall be served personally sent to the addressees set forth hereunder, which addressees are expressly designated by the parties for among other for the request of payment and serving of demands:

**ARRENDADOR**: Boulevard Insurgentes 25420, Parque Industrial El Florido, C.P. 22244, Tijuana, Baja California, México.

**LESSOR**: Boulevard Insurgentes 25420, Parque Industrial El Florido, C.P. 22244, Tijuana, Baja California, Mexico.

**ARRENDATARIO**: Via Rápida Poniente No. 16955 Interior 58, Fracc. Rio Tijuana 3ra Etapa, Tijuana, Baja California, C.P. 22226.

**LESSEE**: Via Rapida Poniente No. 16955 Interior 58, Fracc. Rio Tijuana 3ra Etapa, C.P. 22226.

**OBLIGADO SOLIDARIO**: 195 Page Mill Road, Suite 105, Palo Alto, CA 94306 USA.

**GUARANTOR**: 195 Page Mill Road, Suite 105, Palo Alto, CA 94306 USA.

**VIGÉSIMA TERCERA. TOTALIDAD DEL CONTRATO.**

**TWENTY THIRD. ENTIRE AGREEMENT**

Este contrato y sus anexos contienen todos los acuerdos y condiciones que imperan entre las partes. En consecuencia, las partes reconocen que a la firma de este contrato todos los acuerdos previos estarán debidamente formalizados y cumplidos a excepción de los contemplados en el presente.

This agreement and its Exhibits contain all the agreements and conditions between the parties. Therefore, the parties hereto agree that with the execution of this agreement, any prior agreements have been duly fulfilled and complied with, except as expressly set forth hereunder.

**VIGÉSIMA CUARTA. MODIFICACIONES.**

**TWENTY FOURTH. AMENDMENTS.**

Este contrato no podrá ser modificado en forma oral ni en ninguna otra forma que no sea por medio de convenio escrito debidamente firmado

This agreement may not be modified orally or in any other form other than under written



36

por los representantes autorizados de las partes.

**VIGÉSIMA QUINTA.    ANEXOS.**

Los documentos que se anexan al presente forman parte integral del presente Contrato de Arrendamiento y son los que se describen a continuación:

"A" Plano en el que se describe el Lote.

"B" Especificaciones y características de la Nave Industrial.

"C" Planos en los que se describe el INMUEBLE ARRENDADO.

"D" Poder del representante del ARRENDATARIO.

"E" Información, datos y documentación del ARRENDATARIO para efectos de lo establecido en la Ley Federal para la Prevención e Identificación de Operaciones con Recursos de Procedencia Ilícita.

"F" Poder del representante del OBLIGADO SOLIDARIO.

"G" Información, datos y documentación del OBLIGADO SOLIDARIO para efectos de lo establecido en la Ley Federal para la Prevención e Identificación de Operaciones con Recursos de Procedencia Ilícita.

"H" Reglamento del Parque Industrial.

"I" Mejoras que realizará al ARRENDADOR al INMUEBLE ARRENDADO.

"J" Descripción de la Fase 1 del INMUEBLE ARRENDADO.

"K" Especificaciones de cortina enrollable y nivelador.

"L" Lista de mantenimientos preventivos y correctivos a cargo del ARRENDATARIO.

agreement signed by the parties authorized representatives

**TWENTY SIXTH. ATTACHMENTS.**

The documents that are attached hereto as exhibits form and integral part of this Lease Agreement, and are described as follows:

"A" Drawing on which the Lot is described.

"B" Specifications and characteristics of the Industrial Facility.

"C" Drawings on which the LEASED PREMISES are described.

"D" Power of Attorney of LESSEE's representative.

"E" Information, data and documentation pertaining to LESSEE for purposes of the terms of the Federal Law for the Prevention and Identification of Transactions Involving Illicitly Sourced Resources.

"F" Power of Attorney of GUARANTOR's representative.

"G" Information, data and documentation pertaining to GUARANTOR for purposes of the terms of the Federal Law for the Prevention and Identification of Transactions Involving Illicitly Sourced Resources.

"H" Regulations of the Industrial Park.

"I" Improvements to be carried out by LESSOR to the LEASED PREMISES.

"J" Description of Phase 1 of the LEASED PREMISES.

"K" Roll up door and leveler specifications.

"L" List of preventive and corrective maintenance that LESSEE shall carry out.

37

"**M**"    Garantía de Arrendamiento.

**VIGÉSIMA SEXTA.**    **IDIOMA.**

El presente Contrato se celebra en inglés y en español. Las partes acuerdan que para fines de la interpretación o en caso de controversia, la versión en español será la que prevalezca.

**VIGÉSIMA SÉPTIMA.**    **LEY APLICABLE Y JURISDICCIÓN.**

En caso de controversia derivada de este contrato, las partes expresamente se someten a las leyes aplicables del Estado de Baja California, Estados Unidos Mexicanos. Asimismo, se someten a la jurisdicción de los tribunales competentes de la Ciudad de Tijuana, Baja California, México y de la Ciudad de México, a elección del ARRENDADOR, renunciando en forma expresa a cualquier fuero que pudiera corresponderles en razón a sus domicilios presentes o futuros, o por cualquier otra razón.

EN TESTIMONIO DE LO CUAL, las partes del represente celebran y firman este contrato el día 1º del mes de diciembre del año 2021 (dos mil veintiuno), ante los testigos que también proceden a firmarlo.

"**M**" Guaranty of Lease.

**TWENTY SIXTH. LANGUAGE.**

This agreement is executed and delivered into in English and Spanish versions. The parties agree that for purposes of interpretation or any controversy, the Spanish version shall prevail.

**TWENTY SEVENTH.**    **GOVERNING LAW AND JURISDICTION.**

In the event of any controversy derived from this Agreement, the parties expressly submit themselves to the applicable laws in the State of Baja California, United Mexican States. Likewise, they submit themselves to the jurisdiction of the competent courts of the City of Tijuana, Baja California, Mexico, and those of Mexico City, at LESSOR's election, expressly waiving any other forum they might otherwise have by reason of their present or future domiciles or any other reason whatsoever.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this agreement on December 1st of year 2021 (two thousand twenty one), before the witnesses who also sign the same.

**EL "ARRENDADOR" / "LESSOR"**
EL FLORIDO CALIFORNIA, S.A. DE C.V.

Dra. Georgina Serrano Cuevas.
Apoderada

Lic. José Luis Noriega Balcárcel.
Apoderado

**EL "ARRENDATARIO" / "LESSEE"**
SECCION I, S.A. DE C.V.

Gloria Idolina Rios Castro
Apoderado / Representative

**EL "OBLIGADO SOLIDARIO". / "GUARANTOR"**
TANGIBLE PLAY, INC.

Sandhya Nath
Apoderado / Representative

TESTIGOS/ WITNESSES:

Nombre/Name: Mauricio Javier Villa Sooje

Nombre/Name: Rosa Irlanda Sanchez Pasos

39