**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SAGA FORMATIONS, INC., *et al.*,[1] | Case No. 24-11161 (BLS) |
| Debtors. | (Jointly Administered) |

**CHAPTER 11 TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF
CONFIRMATION OF THE SECOND AMENDED COMBINED DISCLOSURE
STATEMENT AND CHAPTER 11 PLAN FOR THE ESTATES OF SAGA
FORMATIONS, INC., PAJEAU, INC., AND TANGIBLE PLAY, INC.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Saga Formations, Inc. f/k/a Epic Creations, Inc. (9113), Pajeau, Inc. f/k/a Neuron Fuel, Inc. (8758), and Tangible Play, Inc. (9331).

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................4

I.     Procedural History.............................................................................................4

II.    The Solicitation Process and Voting Results. ..................................................6

JURISDICTION AND VENUE .....................................................................................8

ADEQUATE NOTICE OF COMBINED HEARING....................................................8

ARGUMENT..................................................................................................................9

I.     The Disclosure Statement Should Be Approved on a Final Basis. ..................9

II.    The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and Should Be Confirmed. ...........................................................................................12

       A.    The Plan Meets All Applicable Requirements of the Bankruptcy Code. ............12

           1.    The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)). ....................................................13

       B.    The Chapter 11 Trustee Has Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)). ..........................................................25

           1.    The Chapter 11 Trustee Complied with the Disclosure and Solicitation Requirements of Section 1125..............................................26

           2.    The Chapter 11 Trustee Satisfied the Plan Acceptance Requirements of Section 1126. ..............................................................27

       C.    The Plan Is Proposed in Good Faith and Not by Any Means Forbidden by Law (Section 1129(a)(3)). .....................................................................................29

       D.    The Chapter 11 Trustee Seeks to Pay Certain Professional Fees and Expenses Subject to Court Approval (Section 1129(a)(4))..................................30

       E.    The Chapter 11 Trustee Complied with the Bankruptcy Code's Governance Disclosure Requirement (Section 1129(a)(5)). ...............................30

       F.    The Plan Does Not Require Governmental Approval of Rate Changes (Section 1129(a)(6))............................................................................................31

       G.    The Plan Is in The Best Interests of Creditors and Interest Holders (Section 1129(a)(7))............................................................................................32

i

H. The Plan can be Confirmed Notwithstanding the Requirements of Section 1129(a)(8). ........................................................................................ 34

I. The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)). ........................... 34

J. At Least One Impaired Class of Claims Accepted the Plan, Excluding the Acceptance of Insiders (Section 1129(a)(10)). ..................................................... 36

K. The Plan is Feasible (Section 1129(a)(11)). ...................................................... 36

L. The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)). ...................................................................................... 37

M. Sections 1129(a)(13)–(16) are Inapplicable. ...................................................... 38

N. Only One Plan to Be Confirmed. ....................................................................... 38

O. The Principal Purpose of The Plan is Not Avoidance of Taxes or Section 5 of the Securities Act (Section 1129(d)). ............................................................... 39

P. Section 1129(e) Does Not Apply to the Plan. ..................................................... 39

III. The Plan Satisfies the "Cramdown" Requirements of Section 1129(b). .......................... 39

A. The Plan Does Not Unfairly Discriminate with Respect to Impaired Classes That Have Not Voted to Accept the Plan (Section 1129(b)(1)). ............... 40

B. The Plan Is Fair and Equitable with Respect to the Rejecting Classes (Section 1129(b)(2)). ....................................................................................... 42

IV. The Waiver of a Stay of the Confirmation Order is Appropriate. ..................................... 43

A. Good Cause Exists to Waive the Automatic Stay of the Confirmation Order. ................................................................................................................... 43

B. Modifications to the Plan. ................................................................................... 43

CONCLUSION ........................................................................................................................ 44

## TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship*.,
  190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*,
  526 U.S. 434 (1999) ...............................................................................40

*In re 710 Long Ridge Rd. Operating Co., II, LLC*,
  No. 13-13653 (DHS), 2014 WL 886433 (Bankr. D.N.J. Mar. 5, 2014) ...............................25

*In re Ambanc La Mesa Ltd. P'ship*,
  115 F.3d 650 (9th Cir. 1997) ....................................................................41

*In re Armstrong World Indus.*,
  348 B.R. 111 (D. Del. 2006)......................................................................12

*In re Aztec Co.*,
  107 B.R. 585 (Bankr. M.D. Tenn. 1989)............................................................41

*Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999) ..........................................................................32, 42

*In re Bowles*,
  48 B.R. 502 (Bankr. E.D. Va. 1985) ..............................................................40

*In re Burns & Roe Enters., Inc.*,
  No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) ........................................44

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
  860 F.2d 94 (3d Cir. 1988) ......................................................................10

*In re Chapel Gate Apartments, Ltd.*,
  64 B.R. 569 (Bankr. N.D. Tex. 1986) .............................................................30

*In re Charter Commc'ns*,
  419 B.R. 221 (Bankr. S.D.N.Y. 2009) .............................................................34

*In re Coastal Broad. Sys., Inc.*,
  570 F. App'x 188 (3d Cir. 2014) .................................................................14

*Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*,
  279 B.R. 145 (Bankr. D. Del. 2002) .............................................................10

*In re Crdentia Corp.*,
  Case No. 10-10926 (BLS), 2010 WL 3313383 (Bankr. D. Del. May 26, 2010)..........................37

*In re Dex One Corp.*,
   No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013)............................................43

*In re Drexel Burnham*,
   960 F.2d 285 ...................................................................................................25

*In re Exide Techs.*,
   303 B.R. 48 (Bankr. D. Del. 2003) ...................................................................23

*In re Freymiller Trucking, Inc.*,
   190 B.R. 913 (Bankr. W.D. Okla. 1996) ...........................................................40

*In re Future Energy Corp.*,
   83 B.R. 470 (Bankr. S.D. Ohio 1988) ...............................................................30

*In re Gatehouse Media, Inc.*,
   No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) .........................................43

*In re Geokinetics Inc.*,
   No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013)...........................................43

*In re Glob. Safety Textiles Holdings LLC*,
   No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009) .............44

*In re Great Bay Hotel & Casino, Inc.*,
   251 B.R. 213 (Bankr. D.N.J. 2000)....................................................................40

*In re GSE Envtl., Inc.*,
   No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014)..........................................43

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) ..................................................................23

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir. 1987).............................................................................14

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
   987 F.2d 154 (3d Cir. 1993) ........................................................................ 14, 16

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987) ..........41

*In re Lapworth*,
   1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998).............................................25

*Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.)*,
   150 F.3d 503 (5th Cir. 1998) .............................................................................10

*In re Madison Hotel Assocs.*,
749 F.2d 410 (7th Cir. 1984) ........................................................................29

*Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*),
25 F.3d 1132 (2d Cir. 1994) ........................................................................26

*N.L.R.B. v. Bildisco & Bildisco*,
682 F.2d 72 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984) ......................................20

*Nantucket Invs. II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*,
61 F.3d 197 (3d Cir. 1995) ...........................................................................15

*In re NII Holdings, Inc.*,
288 B.R. 356 (Bankr. D. Del. 2002) .................................................................29

*In re Nuverra Env't Sols., Inc.*,
590 B.R. 75 (D. Del. 2018)............................................................................13

*Pettibone Corp. v. Hawxhurst*,
163 B.R. 989 (N.D. Ill. 1994) ........................................................................25

*In re Phoenix Petroleum Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001)..........................................................9, 10

*In re Physiotherapy Holdings, Inc.*,
No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013)...........................................43

*Platinum Cap., Inc. v. Sylmar Plaza, L.P.* (*In re Sylmar Plaza, L.P.*),
314 F.3d 1070 (9th Cir. 2002) .......................................................................29

*In re Revco D.S., Inc.*,
131 B.R. 615 (Bankr. N.D. Ohio 1990)............................................................37

*In re S & W Enter.*,
37 B.R. 153 (Bankr. N.D. Ill. 1984)................................................................13

*In re Scioto Valley Mortg. Co.*,
88 B.R. 168 (Bankr. S.D. Ohio 1988) ..............................................................11

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
872 F.2d 36 (3d Cir. 1989) ...........................................................................20

*In re Smith*,
357 B.R. 60 (Bankr. M.D.N.C. 2007), *appeal dismissed*, 2007 WL 1087575
(M.D.N.C. Apr. 4, 2007) ..............................................................................32

*In re Source Home Entm't, LLC*,
No. 14-11553 (KG) (Bankr. D. Del. Feb. 20, 2015).............................................43

v

*In re Trans World Airlines, Inc.*,
  261 B.R. 103 (Bankr. D. Del. 2001) ................................................................20

*In re Tribune Co.*,
  476 B.R. 843 (Bankr. D. Del. 2012) ................................................................14

*U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*,
  426 B.R. 114 (Bankr. D. Del. 2010) ................................................................22

*W. Real Est. Equities, L.L.C. v. Vill. at Camp Bowie I, L.P. (In re Vill. at Camp Bowie I, L.P.)*,
  710 F.3d 239 (5th Cir. 2013) ...........................................................................16

*In re W.R. Grace & Co.*,
  729 F.3d 311 (3d Cir. 2013) .............................................................................14

*In re Wash. Mut., Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) ..................................................... 22, 23, 25

*In re Worldcom, Inc.*,
  2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ......................................25

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ...................................................................40

**Statutes**

11 U.S.C. § 101(31) .............................................................................................31

11 U.S.C. § 1114 ..................................................................................................38

11 U.S.C. § 1122(a) ............................................................................... 13, 14, 15, 16

11 U.S.C. § 1123(a) ...............................................................................17, 18, 19, 21, 22

11 U.S.C. § 1125(a) ..................................................................................... 9, 26, 27

11 U.S.C. § 1126 ...................................................................................... 7, 26, 27, 28

11 U.S.C. § 1127 ............................................................................................. 44, 43

11 U.S.C. § 1129(a) ....................................................................................... *passim*

15 U.S.C. §§ 77a–77aa ........................................................................................39

28 U.S.C. § 157(b)(2)(A), (L), and (O) ...............................................................8

28 U.S.C. § 1334(b) .............................................................................................8

**Other Authorities**

H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 .............................. 9, 23, 25

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 ....................................... 13, 25

Claudia Z. Springer, not individually but solely as Chapter 11 Trustee (the "**Chapter 11 Trustee**") of the estates (the "**Estates**") of Saga Formations, Inc. f/k/a Epic Creations, Inc. ("**Epic**"), Pajeau, Inc. f/k/a Neuron Fuel, Inc. ("**Neuron Fuel**"), and Tangible Play, Inc. ("**Tangible Play**", and together with Epic and Neuron Fuel, the "**Debtors**"), respectfully submits her Memorandum of Law (this "**Memorandum**") in support of confirmation of the *Second Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.*, dated October 14, 2025 [D.I. 971] (as further modified, amended, or supplemented in accordance with its terms, the "**Combined Plan and Disclosure Statement**," the "**Plan**," or the "**Disclosure Statement**," as the context indicates).[2] In support of confirmation of the Plan, the Chapter 11 Trustee respectfully states:

## INTRODUCTION

1.    These Chapter 11 Cases were filed in response to a scheme by the Debtors' ultimate parent, Think & Learn Pvt. Ltd. d/b/a BYJU's, to defraud creditors out of hundreds of millions of dollars. The Chapter 11 Trustee used the Chapter 11 Cases to complete the work necessary to stabilize and sell the Debtors' businesses, put a stop to ongoing efforts by T&L and its loyalists to steal from the Debtors and interfere with their operations, and conduct an investigation to determine the causes of action that can be pursued for the benefit of the Debtors' creditors, which the proposed Plan provides the vehicle for.

2.    As described in greater detail in the Combined Plan and Disclosure Statement, the Debtors are three U.S.-based companies that previously operated educational technology companies. Between 2019 and 2021, T&L, an Indian corporation co-founded by Byju Raveendran,

---

[2]    Capitalized terms used but not otherwise defined in this Memorandum have the meanings set forth in the Combined Plan and Disclosure Statement.

acquired each of the Debtors. After being acquired by T&L, each of the Debtors guaranteed a $1.2 billion loan obligation of an indirect T&L subsidiary, BYJU's Alpha, Inc. ("**BYJU's Alpha**"), pursuant to that certain Credit and Guaranty Agreement dated as of November 24, 2021 (the "**Prepetition Credit Agreement**") with GLAS Trust Company LLC, in its capacity as administrative and collateral agent (the "**Prepetition Agent**") for the lenders (the "**Prepetition Term Loan Lenders**"). Within four months of entering into the Credit Agreement, on March 16, 2022, BYJU's Alpha was in default. Following a series of additional and continued defaults, the Prepetition Term Loan Lenders directed the Prepetition Agent to exercise remedies, including by accelerating the loan obligations and taking ownership of the pledged common stock in BYJU's Alpha. On February 1, 2024, after the Prepetition Agent secured ownership of BYJU's Alpha, BYJU's Alpha filed a voluntary chapter 11 petition in this Bankruptcy Court.

3.       On June 4 and 5, 2024, the Prepetition Agent and certain of the Prepetition Term Loan Lenders filed involuntary chapter 11 petitions against each of the Debtors. On September 19, 2024, this Bankruptcy Court entered an order for relief in the Debtors' involuntary chapter 11 cases and directed the appointment of a chapter 11 trustee [D.I. 147]. On September 23, 2024, the United States Trustee for Region 3 duly appointed Claudia Z. Springer as chapter 11 trustee of each Debtor, subject to approval by the Bankruptcy Court [D.I. 152], and on October 7, 2024, the Bankruptcy Court entered an order approving the Chapter 11 Trustee's appointment. [D.I. 180].

4.       Upon her appointment, the Chapter 11 Trustee identified an immediate need for post-petition financing. As of the Chapter 11 Trustee's appointment, the Estates had a combined total of approximately $2 million in cash on hand, which would have been insufficient to continue operations, maintain key employees, pay administrative costs, and preserve the businesses pending a marketing and sale process. Accordingly, the Chapter 11 Trustee solicited multiple parties for

financing opportunities. Ultimately the DIP Lenders, comprised of certain of the Prepetition Term Loan Lenders, were the only parties to present a financing proposal. The Chapter 11 Trustee and her advisors engaged in arms' length negotiations with the DIP Lenders over the terms of the financing and sought and obtained approval of a DIP Facility comprised of $9.5 million in new money, with an uncommitted $9.5 million accordion feature, and a proportional roll up of the DIP Lenders' pre-petition claims not to exceed $133 million.

5.      The Chapter 11 Trustee began work immediately. With the support of her legal and financial advisors, the Chapter 11 Trustee familiarized herself with and stabilized the Debtors' businesses and operations, and worked to secure the Debtors' assets, identify reliable books and records, and assemble the information necessary to provide to this Bankruptcy Court and other stakeholders. The Chapter 11 Trustee also undertook an extensive investigation into the pre- and postpetition bad acts by T&L and T&L loyalists and sought and received emergency relief from this Bankruptcy Court on numerous occasions to put a stop to malicious attempts by bad actors to divert the Debtors' assets to T&L-controlled or related parties.

6.      Once the Chapter 11 Trustee had stabilized the Debtors' businesses, with the assistance of her investment bankers, she ran a sale process for the Debtors' assets, ultimately resulting in a sale of Epic's assets for $95.1 million, less cure costs, and a sale of Neuron Fuel's assets for $2,150,000 in cash consideration plus the assumption of certain cure costs and $160,000 in non-cash additional consideration. The sales of the Epic and Neuron Fuel assets closed on May 27, 2025, and May 30, 2025, respectively. The sale process for Tangible Play did not result in a transaction, and with the advice of her legal counsel and financial advisors, the Chapter 11 Trustee determined the best path forward was to cease Tangible Play's operations and abandon its inventory. The Chapter 11 Trustee continues to evaluate liquidation sales of certain other Tangible

3

Play assets. Following the closing of the Epic and Neuron Fuel sales, the Chapter 11 Trustee repaid the Estates' obligations under the DIP Facility in full.

7.      The Chapter 11 Trustee now proposes the Plan, which builds on the Chapter 11 Trustee's work to stabilize, protect, and monetize the Debtors' assets, and sets the stage for the next step—the pursuit of causes of action against the many bad actors that led to the demise of the Debtors and harmed their creditors. The Plan is the culmination of the Chapter 11 Trustee's work to hold those who looted the Debtors accountable for their actions and to return as much value as possible to the Debtors' creditors. The only voting Class, Class 3, voted to accept the Plan.

8.      For the reasons set forth herein and in the *Declaration of Claudia Z. Springer in Support of Confirmation of the Second Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.* (the "**Springer Declaration**") filed contemporaneously herewith, and the *Declaration of Adam Gorman of Kurtzman Carson Consultants dba Verita Global Regarding the Solicitation of Votes and Tabulation of the Master Ballot Cast of the First Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.* [D.I. 995] (the "**Voting Report**"), each of which is incorporated herein by reference, and based on the record that the Chapter 11 Trustee will establish at the Confirmation Hearing, the Chapter 11 Trustee respectfully requests that the Bankruptcy Court confirm the Plan.

## **BACKGROUND**

### I.      Procedural History.

9.      As set forth above, on June 4 and 5, 2024 (the "**Petition Date**"), GLAS Trust Company LLC, in its capacity as administrative and collateral agent under the Credit Agreement, and certain lenders under the Credit Agreement filed an involuntary chapter 11 petition against each Debtor. [D.I. 1]. On June 27, 2024, this Bankruptcy Court entered an order directing joint

4

administration of the Debtors' cases for procedural purposes. [D.I. 61]. On September 23, 2024, the United States Trustee for Region 3 duly appointed Claudia Z. Springer as chapter 11 trustee of each Debtor, subject to approval by the Bankruptcy Court, [D.I. 152], and on October 7, 2024, this Bankruptcy Court entered an order approving the appointment of the Chapter 11 Trustee. [D.I. 180.] Further factual background regarding the Debtors, including their business operations and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the *Declaration of Claudia Z. Springer in Support of First Day Motions* [D.I. 193] (the "**First Day Declaration**"), which is fully incorporated herein by reference.

10.     On August 4, 2025, the Bankruptcy Court entered the *Order (I) Approving the First Amended Combined Plan and Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Voting Procedures; (III) Approving the Form of Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadlines for Filing Objections Thereto; and (VI) Granting Related Relief* [D.I. 866] (the "**Interim Approval and Procedures Order**"). The Interim Approval and Procedures Order approved, among other things, the proposed procedures for solicitation of the Plan and related notices, forms, and ballots (collectively, the "**Solicitation Packages**").

11.     On September 2, 2025, the Chapter 11 Trustee filed the *Notice of Filing of Plan Supplement* [D.I. 911] (the "**First Plan Supplement**"). This was followed, on October 14, 2025, by the *Notice of Filing of First Amended Plan Supplement* [D.I. 973] (the "**Amended Plan Supplement**") (together with the First Plan Supplement and any other plan supplement, the "**Plan Supplement**").

5

12.     On October 13, 2025, the Chapter 11 Trustee filed the *Second Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.*, which contained certain non-material modifications to the Plan filed on August 4, 2025.

13.     The deadline for all holders of Claims entitled to vote on the Plan to cast their ballots was September 9, 2025, at 4:00 p.m. (prevailing Eastern Time), extended by the Chapter 11 Trustee for Class 3 to October 19, 2025, at 4:00 p.m. (the "**Voting Deadline**"). The deadline to file objections to the Plan was also September 9, 2025, at 4:00 p.m. (prevailing Eastern Time). A combined hearing to consider (i) final approval of the Disclosure Statement and the Combined Plan and Disclosure Statement Summary as containing adequate information within the meaning of 1125 of the Bankruptcy Code and (ii) confirmation of the Plan (the "**Confirmation Hearing**") is scheduled for October 29, 2025, at 10:00 a.m. (prevailing Eastern Time). Concurrently with the filing of this Memorandum, the Chapter 11 Trustee has submitted Proposed Findings of Fact, Conclusions of Law and Order Confirming the Plan (the "**Confirmation Order**").

14.     No formal objections were filed with respect to the adequacy of the Disclosure Statement or confirmation of the Plan. The Chapter 11 Trustee has worked collaboratively with various key constituents, including the U.S. Trustee and the Prepetition Term Loan lenders, to incorporate their comments to the Combined Plan and Disclosure Statement.

## II.     The Solicitation Process and Voting Results.

15.     The Chapter 11 Trustee solicited the Plan in accordance with Interim Approval and Procedures Order.

16.     On August 8, 2025, the Publication Notice was published in the *Wall Street Journal*. An affidavit evidencing the publication of the Publication Notice was filed with the Bankruptcy Court on August 19, 2025 [D.I. 893].

17.     In accordance with the Bankruptcy Code, only Holders of Claims in Impaired Classes receiving or retaining property on account of such Claims were entitled to vote on the Plan.[3] Holders of Claims and Interests were not entitled to vote if their rights are: (a) Unimpaired by the Plan; or (b) Impaired by the Plan such that they will receive no distribution of property under the Plan. As a result, the following Classes of Claims and Interests were not entitled to vote on the Plan, and the Chapter 11 Trustee did not solicit votes from Holders of such Claims and Interests:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 - Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 - Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 4 - General Unsecured Claims | Impaired | Deemed to Reject |
| Class 5 - Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 - 510(b) Claims | Impaired | Deemed to Reject |
| Class 7 - Interests | Impaired | Deemed to Reject |

18.     The Chapter 11 Trustee solicited votes on the Plan from Holders of Claims in Class 3, the only class of Impaired Classes receiving or retaining property on account of such Claims.

19.     On October 27, 2025, the Solicitation Agent filed the Voting Report. [D.I. 995.] The voting results, as reflected in the Voting Report, are summarized as follows:

---

[3]     *See* 11 U.S.C. § 1126.

| TOTAL BALLOTS COUNTED | | | | |
|---|---|---|---|---|
| **VOTING CLASS** | **ACCEPT** | | **REJECT** | |
| | **Amount** | **Number** | **Amount** | **Number** |
| | **%** | **%** | **%** | **%** |
| **Class 3-Prepetition Term Loan Claims** | $1,169,768,961.98 | 1 | $0 | 0 |
| | 100% | 100% | 0% | 0% |

20.     In sum, Class 3, the only voting Class, voted to accept the Plan pursuant to the Master Ballot submitted by the Agent, which reflected the votes of all beneficial interest holders to accept the Plan.

## JURISDICTION AND VENUE

21.     This Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. § 1334(b). Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O), and the Bankruptcy Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

## ADEQUATE NOTICE OF COMBINED HEARING

22.     In accordance with Bankruptcy Rules 2002, 6006, 9007, and 9014, the Interim Approval and Procedures, the Combined Hearing Notice and the solicitation procedures set forth therein, adequate notice of (a) the time for filing objections to confirmation of the Plan and final approval of the Disclosure Statement; (b) the transactions, settlements, and compromises contemplated thereby; and (c) the Combined Hearing was provided to all holders of Claims and Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Combined Hearing is necessary or required.

## ARGUMENT

### I.   The Disclosure Statement Should Be Approved on a Final Basis.

23.     Section 1125(b) of the Bankruptcy Code requires that, before soliciting votes on a plan, the plan proponent must provide a disclosure statement that contains adequate information regarding the proposed plan. Section 1125(a) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.[4]

24.     The amount and type of information required to satisfy section 1125(a) must be determined case-by-case. The legislative history of section 1125 indicates that the threshold of what constitutes "adequate information" is flexible and based on the circumstances of each case.[5] Courts also have broad discretion to determine what constitutes adequate information necessary to satisfy the requirements of section 1125(a).[6] This grant of discretion was intended to facilitate the effective emergence from chapter 11 in the broad range of businesses in which chapter 11 debtors engage.[7] A disclosure statement must provide creditors entitled to vote on the plan with

---

[4]     *See* 11 U.S.C. § 1125(a)(1).

[5]     H.R. Rep. No. 95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6364.

[6]     *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that the determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court.") (internal quotations omitted).

[7]     See H.R. Rep. No. 95-595, at 408–409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6364–65.

information that is "reasonably practicable" to permit an "informed judgment."[8] The general purpose of the disclosure statement is to set forth sufficient facts to permit a creditor to make an informed evaluation of the merits of the plan.[9]

25.    Bankruptcy courts are afforded broad discretion in determining whether a disclosure statement contains adequate information.[10] Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of the relevant case. In that regard, courts generally examine whether a disclosure statement contains, if applicable, the following types of information:

- the circumstances that gave rise to the filing of the bankruptcy petition;

- a description of the available assets and their value;

- the anticipated future of the debtor;

- the sources of information provided in the disclosure statement;

- the condition and performance of the debtor while in chapter 11;

- information regarding claims against the estate;

- a liquidation analysis setting forth the estimated return that creditors would receive if the debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code;

- the accounting and valuation methods used to produce the financial information in the disclosure statement;

- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the

---

[8]    *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 158 n.26 (Bankr. D. Del. 2002).

[9]    *See Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988); *Phoenix Petroleum*, 278 B.R. at 392.

[10]    *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("[I]n determining what constitutes 'adequate information' with respect to a particular disclosure statement, '[b]oth the kind and form of information are left essentially to the judicial discretion of the court . . . the information required will necessarily be governed by the circumstances of the case.'") (quoting S. Rep. No. 95-989, at 121 (1978)); *cert. denied*, 119 S. Ct. 2019 (1999).

debtor;

- a summary of the chapter 11 plan;

- an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

- financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

- information relevant to the risks being taken by the creditors and interest holders;

- the tax consequences of the plan; and

- the relationship of the debtor with its affiliates.[11]

This list is not meant to be exhaustive, nor do courts require all the information on this list to be included in a disclosure statement. Rather, the court must decide what information is appropriate in each case.

26.     Here, the Combined Plan and Disclosure Statement contains adequate information, as required by section 1125, so that creditors were able to make an informed decision in voting to accept or reject the Plan. The Combined Plan and Disclosure Statement is comprehensive and contains the type of information described above. Specifically, the Combined Plan and Disclosure Statement includes: (a) significant events preceding and during the Debtors' Chapter 11 Cases; (b) the Debtors' prepetition operations and capital structure; (c) the Chapter 11 Trustee's work to stabilize, operate, and sell the businesses; (d) the Chapter 11 Trustee's investigation; (e) a liquidation analysis; (f) the designation and treatment of Claims and Interests under the Plan; (g) a detailed description of the method to fund the Plan and make Distributions to creditors under the Plan; (h) a description of the nature and extent of likely claims against the Estates, including administrative claims; (i) provisions governing releases, injunctions, exculpations, and Retained

---

[11]     *See, e.g., In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988).

Causes of Action; (j) the risk factors affecting the Plan; (k) the federal tax consequences related to the Combined Plan and Disclosure Statement; (l) a summary of the Combined Plan and Disclosure Statement's structure; (m) the conditions precedent for confirmation and effectiveness of the Combined Plan and Disclosure Statement; (n) the voting and confirmation procedures; and (o) a summary of the Bankruptcy Code and other requirements for confirmation.

27.    Accordingly, the Chapter 11 Trustee submits that the proposed Disclosure Statement, as supplemented, contains more than sufficient detail to permit holders of Claims entitled to vote on the Plan to make an informed judgment on whether to accept or reject the Plan and should therefore be approved on a final basis.

## II.    The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and Should Be Confirmed.

### A.    The Plan Meets All Applicable Requirements of the Bankruptcy Code.

28.    To confirm the Plan, the Bankruptcy Court must find that the Plan satisfies the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[12] The Chapter 11 Trustee submits, based on the record of these Chapter 11 Cases, the Springer Declaration, the Voting Report, and the Chapter 11 Trustee's arguments set forth herein, that the applicable burden is clearly satisfied and the Plan complies with all relevant sections of the Bankruptcy Code (in particular, sections 1122, 1123, 1125, 1126, and 1129), the Bankruptcy Rules, and applicable non-bankruptcy law. The Plan far exceeds the preponderance of the evidence standard set forth in the Bankruptcy Code and will be further supported by evidence that will be submitted at the Confirmation Hearing. The Chapter 11 Trustee thus respectfully requests that the Bankruptcy Court confirm the Plan.

---

[12]    *See In re Armstrong World Indus.,* 348 B.R. 111, 120 (D. Del. 2006) ("[T]he debtor's standard of proof that the requirements of § 1129 are satisfied is preponderance of the evidence.").

1.    **The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).**

29.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan "comply with the applicable provisions of the Bankruptcy Code."[13] The principal objective of section 1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan.[14] Consequently, the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of sections 1122 (governing the classification of claims and interests) and 1123 (dictating the contents of a plan) of the Bankruptcy Code. As explained below, the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1), including sections 1122 and 1123 of the Bankruptcy Code.

a.    **The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.**

30.    Section 1122 of the Bankruptcy Code provides that "[e]xcept as otherwise provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[15] For a classification structure to satisfy section 1122 of the Bankruptcy Code, substantially similar claims or interests need not be grouped in the same class.[16] Instead, claims or interests placed in a particular class must be substantially similar to each other.[17] Courts in this jurisdiction and others

---

[13]    11 U.S.C. § 1129(a)(1).

[14]    The legislative history of section 1129(a)(1) explains that this provision is intended to draw in the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively. S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re S & W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were Sections 1122 and 1123.").

[15]    11 U.S.C. § 1122(a).

[16]    *See, e.g., In re Nuverra Env't Sols., Inc.*, 590 B.R. 75, 96 (D. Del. 2018).

[17]    *Id.*

have recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis for doing so.[18]

31.    The Third Circuit "permits the grouping of similar claims in different classes[]" as long as those classifications are reasonable.[19] The classifications, however, cannot be "arbitrarily designed" to secure the approval of an impaired class when "the overwhelming sentiment of the impaired creditors [i]s that the proposed reorganization of the debtor would not serve any legitimate purpose."[20] Separate classes of similar claims are reasonable when each class represents "a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed."[21]

32.    Because claims only need to be "substantially" similar to be placed in the same class, plan proponents have broad discretion in determining to classify claims. Courts have identified several grounds justifying the separate classification of claims, including: (a) where members of a class possess different legal rights; and (b) where sound business reasons support separate classification.[22] Additionally, section 1122(b) of the Bankruptcy Code expressly permits separate classification of certain claims for purposes of administrative convenience.[23]

33.    Here, the Plan appropriately classifies Claims and Interests as follows:

---

[18]    *See In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) ("The Bankruptcy Court has 'broad discretion' to decide if a plan satisfies that requirement, and [the Third Circuit] will uphold a plan's classification scheme so long as it is 'reasonable' and does not 'arbitrarily designate classes.'" (citing *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes))).

[19]    *In re Jersey City Med. Ctr.*, 817 F.2d at 1061 ("Although not explicit in § 1122, a corollary to that rule is that the 'grouping of similar claims in different classes' is permitted so long as the classification is 'reasonable.'") (internal citation omitted); *see also In re Coastal Broad. Sys., Inc.*, 570 F. App'x 188, 193 (3d Cir. 2014); *In re Tribune Co.*, 476 B.R. 843, 854–55 (Bankr. D. Del. 2012).

[20]    *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993).

[21]    *Id*.

[22]    *Id*.

[23]    11 U.S.C. § 1122(b).

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 - Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 - Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 3 – Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 - General Unsecured Claims | Impaired | Deemed to Reject |
| Class 5 - Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 - 510(b) Claims | Impaired | Deemed to Reject |
| Class 7 - Interests | Impaired | Deemed to Reject |

34.    The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because each Class is composed of substantially similar Claims or Interests, respectively, and the Claims and Interests in each separate class differ from those in every other class due to differing legal rights of the Holders of Claims and Interests in each separate Class.

35.    Section 1129(a)(10) of the Bankruptcy Code requires that, if any class of claims is impaired under a chapter 11 plan, at least one such impaired class must vote to accept the plan for it to be confirmed.[24]    The primary concern with a debtor's classification scheme is whether the debtor's separate classes were designed solely to gerrymander votes to guarantee an impaired

---

[24]    *See* 11 U.S.C. § 1129(a)(10); *Nantucket Invs. II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 209 n.18 (3d Cir. 1995) ("Where the debtor cannot secure the acceptance of all classes of impaired claims, the Bankruptcy Code permits the confirmation of a plan over the objections of impaired classes under certain conditions through a procedure known as a cram down." (citations omitted)).

accepting class to satisfy section 1129(a)(10) of the Bankruptcy Code.[25] Here, no party has raised any formal or informal objection to the Plan's classification of Claims and Interests, and the Debtors' classification scheme is appropriate because it is not designed to gerrymander an Impaired accepting vote on the Plan.

36.     Accordingly, the Chapter 11 Trustee submits that the Plan fully complies with section 1122 of the Bankruptcy Code.

### b. The Plan Satisfies the Mandatory Requirements of Section 1123(a) of the Bankruptcy Code.

37.     The seven applicable requirements of section 1123(a) of the Bankruptcy Code generally relate to the specification of Claims treatment and classification, the equal treatment of Claims within classes, and the mechanics of implementing a plan.[26] The Plan satisfies each of these requirements.

38.     *Specification of Classes, Impairment, and Treatment*. The first three requirements of section 1123(a) are that the plan specify (a) the classification of claims and interests other than certain tax and priority administrative claims, (b) whether such claims and interests are impaired

---

[25]     *See John Hancock Mut. Life Ins. Co.*, 987 F.2d at 159 ("[W]here . . . the sole purpose and effect of creating multiple classes is to mold the outcome of the voting, it follows that the classification scheme must provide a reasonable method for counting votes.  In a 'cram down' case, this means that each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed.  Otherwise, the classification scheme would simply constitute a method for circumventing the requirement set out in 11 U.S.C. § 1129(a)(10)."); *W. Real Est. Equities, L.L.C. v. Vill. at Camp Bowie I, L.P. (In re Vill. at Camp Bowie I, L.P.)*, 710 F.3d 239, 247 (5th Cir. 2013) ("[I]n [*Greystone*] we held that a plan proponent cannot gerrymander creditor classes *solely* for purposes of obtaining the impaired accepting class necessary to satisfy § 1129(a)(10). . . . *Greystone* does not stand for the proposition that a court can ride roughshod over affirmative language in the Bankruptcy Code to enforce some Platonic ideal of a fair voting process." (emphasis added)).

[26]     *See* 11 U.S.C. § 1123(a). Section 1123(a)(8) is inapplicable to these Chapter 11 Cases because it is applicable only to individual debtors.

or unimpaired, and (c) the precise nature of their treatment under the plan.[27] For the reasons set forth above, Article IV of the Plan properly satisfies the requirements of 1123(a)(1)-(3).[28]

39.     ***Equal Treatment***. The fourth requirement of section 1123(a) is that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment."[29] The Plan meets this requirement because Holders of Allowed Claims or Interests in each Class will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class, unless a Holder of an Allowed Claim agrees to less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

40.     ***Adequate Means for Implementation***. The fifth requirement of section 1123(a) is that a plan must provide "adequate means" for its implementation.[30] The Plan provides a detailed blueprint for its implementation.

41.     Article VIII of the Plan, in particular, sets forth the means for implementation of the Plan, which include, *inter alia*: (a) the establishment and funding of the Plan Reserves, (b) the vesting of the Wind-Down Debtor Assets in the Wind-Down Debtors, (c) the Wind-Down Financing Facility, (d) the appointment of the Plan Administrator, (e) the sources of consideration for Plan distributions and the provisions governing distributions,  and (f) the resolution of Disputed Claims.

---

[27]     *See* 11 U.S.C. § 1123(a)(1)–(3).

[28]     Plan, Art. IV.A., B.

[29]     11 U.S.C. § 1123(a)(4).

[30]     *See* 11 U.S.C. § 1123(a)(5). Section 1123(a)(5) specifies that adequate means for implementation of a plan may include, among other things: (a) retention by the debtor of all or part of its property; (b) the transfer of property of the estate to one or more entities; (c) cancellation or modification of any indenture; (d) curing or waiving of any default; (e) amendment of the debtor's charter; or (f) issuance of securities for cash, for property, for existing securities, in exchange for claims or interests, or for any other appropriate purpose.

42.     The precise terms governing the execution of these transactions are set forth in greater detail in the Plan.[31] Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

43.     ***Non-Voting Securities***. The sixth requirement of section 1123(a) is that a plan must contemplate a provision in the reorganized debtor's corporate charter, if the debtor is a corporation, that prohibits the issuance of non-voting equity securities or, with respect to preferred stock, adequate provisions for the election of directors upon an event of default.[32] Section 1123(a)(6) is not applicable under the Plan because no new equity securities are being issued by the Debtors under the Plan. The Debtors' corporate entities will be wound down and will not be issuing securities. Thus, the requirement that the Debtors' new organizational documents prohibit the issuance of nonvoting equity securities does not apply in these Chapter 11 Cases.

44.     ***Selection of Officers and Directors***. Finally, section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan."[33] Article V.D of the Plan provides: "The Plan Administrator shall be immediately and automatically deemed appointed by the Debtors or the Wind-Down Debtors, as applicable, as the sole director and the sole officer of each of the Wind-Down Debtors, and the Plan Administrator shall succeed to the powers of the Debtors' directors and officers and the Chapter 11 Trustee." The Plan Supplement identifies Timothy Pohl as the Plan Administrator. [D.I. 973.] Accordingly, the Chapter 11 Trustee respectfully submits that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

---

[31]     Plan, Arts. V, VI, VIII.

[32]     11 U.S.C. 1123(a)(6).

[33]     11 U.S.C. § 1123(a)(7).

    **c.   The  Plan  Appropriately  Contains  Certain  Discretionary Components Permitted by Section 1123(b) of the Bankruptcy Code.**

45.      Section 1123(b) sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.[34] Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the Estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.[35] Among other provisions, the Plan proposes treatment for Executory Contracts and Unexpired Leases, provides a structure for Claim allowance and disallowance, and establishes a distribution process for the satisfaction of Allowed Claims entitled to distributions under the Plan. Additionally, the Plan contains provisions implementing certain releases and exculpations, discharging claims and interests and permanently enjoining certain causes of action. The Chapter 11 Trustee has determined, as the fiduciary of the Estates and in the exercise of her reasonable business judgment, that each of the discretionary provisions of the Plan is appropriate given the circumstances of these Chapter 11 Cases.

46.      ***Impairment of Classes (Section 1123(b)(1)).*** In accordance with section 1123(b)(1) of the Bankruptcy Code, Article IV of the Plan classifies and describes the treatment for Claims and Interests under the Plan and identifies which Claims and Interests are impaired or unimpaired.

47.      ***Executory Contracts and Leases (Section 1123(b)(2)).*** As described in Article IX of the Plan, on the Effective Date, each Executory Contract or Unexpired Lease shall be deemed

---

[34]    *See* 11 U.S.C. § 1123(b).

[35]    11 U.S.C. § 1123(b)(1)–(3), (6).

automatically rejected by the Chapter 11 Trustee unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are otherwise provided for in the Plan, such as being specifically assumed in connection with confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) have been previously assumed, assumed and assigned, or rejected by the Chapter 11 Trustee pursuant to any Bankruptcy Court order; (c) are the subject of a pending motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a pending objection with respect thereto) that is pending on the Confirmation Date; or (d) are a contract, release, or other agreement or document entered into in connection with the Plan.

48.     Under section 1123(b)(2) of the Bankruptcy Code, "a plan may, subject to section 365, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected."[36] Section 365(a) of the Bankruptcy Code provides that a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease. Bankruptcy courts generally approve a debtor's decision to assume, assume and assign, or reject executory contracts or unexpired leases where such decision is made in the exercise of such debtor's sound business judgment and benefits its estate.[37] The business judgment standard requires that the court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice.[38]

---

[36]     11 U.S.C. § 1123(b)(2).

[37]     *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *N.L.R.B. v. Bildisco & Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984).

[38]     *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).

49.      The Chapter 11 Trustee believes that such relief is appropriate as the Debtors are no longer operating entities and thus have no need for their remaining contracts after the Effective Date (and those contracts will continue to be an unnecessary expense of the Estates if not rejected).[39] The Plan provides that parties with Claims arising from the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed by the Rejection Bar Date which is the later of: (a) the General Bar Date; (b) thirty (30) days after the entry of an order by the Bankruptcy Court authorizing such rejection; or (c) such other date, if any, as the Bankruptcy Court may fix in the order authorizing such rejection.

50.      The Chapter 11 Trustee believes that confirmation of the Plan is a sufficient forum to address the rejection of the Debtors' executory contracts and unexpired leases, and that the notice of the Effective Date will provide sufficient notice to all counterparties of the deadline to file claims against the Debtors for rejection damages. The Chapter 11 Trustee is not assuming any Executory Contracts or Unexpired Leases.

51.      ***Settlement and Adjustment of Claims (Section 1123(b)(3)).*** Section 1123(b)(3) of the Bankruptcy Code provides that a plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[40] In accordance with section 1123(b)(3) of the Bankruptcy Code, Article IV of the Plan extinguishes or modifies, or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class. In addition, Article X provides for certain Debtors' and Estates' Releases and Article V provides that the Retained Causes of Action will vest in the Wind-Down Debtors and that the Plan Administrator will investigate and/or adjudicate and may compromise or settle, all such Retained Causes of Action.

---

[39]      *See* Springer Declaration, ¶ 16.

[40]      11 U.S.C. § 1123(b)(3)(A).

52.    ***Modification of Rights of Holders of Claims (Section 1123(b)(5)).*** Article IV of the Plan modifies the rights of Holders of Claims as set forth therein.

53.    ***Other Appropriate Provisions (Section 1123(b)(6)).*** Section 1123(b)(6) of the Bankruptcy Code also authorizes the inclusion of "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[41] The Plan includes several such discretionary provisions, including various terms discharging, releasing, and enjoining the pursuit of certain Claims. The release and exculpation provisions set forth in the Plan are the result of extensive good-faith and arm's-length negotiations by and among the Chapter 11 Trustee and certain parties subject to the release, exculpation, and injunction provisions. As demonstrated below, such provisions are consistent with applicable case law and precedent in this district, comply with the Bankruptcy Code in all respects, and should be approved in all respects as integral components of the Plan.

### d.  The Debtor Release is Appropriate.

54.    A debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[42]

55.    Article X.D of the Plan provides that each Released Party is deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released by each of the Debtors, their Estates, the Chapter 11 Trustee, and the Wind-Down Debtors (the "**Debtor Release**").

---

[41]    11 U.S.C. § 1123(a)(6).

[42]    *U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether the compromise is fair, reasonable, and in the best interest of the estate." (internal citations omitted)).

56.     In summary, the proposed Debtor Release releases any estate claims against (a) the current Prepetition Term Loan Lenders; (b) the Prepetition Agent; (c) the DIP Lenders; (d) the DIP Agent; (e) the Petitioning Lender Creditors, and each of their Related Parties and any other related Persons, but solely in their capacity as such. Certain aspects of these releases were already approved by the Final DIP Order.

57.     With respect to any other releases, courts in this jurisdiction typically assess the propriety of a "debtor release" in light of five "*Zenith* factors" in the context of a chapter 11 plan:[43]

- whether the third party has made a substantial contribution to the debtor's reorganization;

- whether the release is essential to the debtor's reorganization;

- whether a substantial majority of creditors support the release; and

- whether there is an identity of interest between the debtor and the third party; and

- whether the plan provides for payment of all or substantially all of the claims in the class or classes affected by the release.

No one factor is dispositive, nor is a proponent required to establish each factor for the release to be approved.[44]

58.     The *Zenith* factors support the proposed Debtor Release, and no party objects to the Debtor Release. ***First***, each of the Released Parties made substantial contributions to the Debtors and their Estates and aided in the reorganization process. The Released Parties contributed by providing the financing necessary for the Chapter 11 Trustee to prosecute these Chapter 11 Cases, and, in the case of the Petitioning Lender Creditors, by stopping the bad actors from further

---

[43]     *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (citing *In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999)).

[44]     *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) ("These factors . . . simply provide guidance in the [c]ourt's determination of fairness."); *In re Exide Techs.*, 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that factors are not exclusive or conjunctive requirements).

depleting the Estates' assets by seeking the protection of this Bankruptcy Court and participating in various hearings in this bankruptcy.

59.     *Second*, the Debtor Release is essential to the Plan itself. Without the Debtor Release, there would be no acceptance of the Plan and no financing to effectuate the post-Effective Date transactions contemplated by the Plan.

60.     *Third*, as evidenced by the Voting Report and as noted herein, the Plan, inclusive of the Debtor Release, was approved by the only voting Class.

61.     *Fourth*, the Plan provides a means, through the vesting of the Retained Causes of Action, to return value to the Debtors' creditors.

62.     Accordingly, the Debtor Release is justified and in the best interests of the Debtors' creditors.

### e. The Exculpation Provision is Appropriate and Should be Approved.

63.     Article X.A of the Plan provides for the exculpation of the Exculpated Parties. The Exculpation is fair and appropriate under both applicable law and the facts and circumstances of these Chapter 11 Cases. The Exculpated Parties are limited to: (i) the Chapter 11 Trustee and her Related Parties, including the Estates' Professionals; and (ii) the CPO. Further, the exculpation is limited to acts or omissions occurring after the Petition Date and before the Effective Date in connection with the Chapter 11 Trustee's prosecution of the Chapter 11 Cases, and to provide that the Exculpation does not protect the Exculpated Parties from liability resulting from actual fraud, willful misconduct, or gross negligence. Courts in this jurisdiction have held exculpation provisions to be appropriate where limited to estate fiduciaries and to conduct not constituting

gross negligence or willful misconduct.[45] Accordingly, the Exculpation provides reasonable and appropriate protections and should be approved.

#### f.   The Injunction Is Narrowly Tailored and Should Be Approved.

64.     Article X.B and C of the Plan provides for an injunction that is necessary to implement the Plan's release and exculpation provisions. The injunction generally provides that all entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined from prosecuting or otherwise pursuing claims released or exculpated under the Plan. The Plan's release and exculpation provisions, each of which were material components of the Plan, would be substantially weakened without the injunction provision. Accordingly, the injunction provision should be approved.[46]

### B.     The Chapter 11 Trustee Has Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).

65.     Section 1129(a)(2) of the Bankruptcy Code requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.[47] Case law and legislative history indicate this section principally reflects the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code, which prohibits solicitation of plan votes without a court-approved disclosure statement.[48] As set forth below, the Chapter 11 Trustee has complied with the applicable

---

[45]     *See Wash. Mut.*, 442 B.R. at 350–51 (holding that exculpation must be limited to estate fiduciaries and conduct not constituting gross negligence or willful misconduct).

[46]     *See In re Drexel Burnham*, 960 F.2d 285, 293 (holding that a court may approve an injunction provision where such provision "plays an important part in the debtor's reorganization plan"); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, No. 13-13653 (DHS), 2014 WL 886433, at *12 (Bankr. D.N.J. Mar. 5, 2014) (same); *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989, 995 (N.D. Ill. 1994) (same).

[47]     *See* 11 U.S.C. § 1129(a)(2).

[48]     *See In re Lapworth*, 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Worldcom, Inc.*, 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy

provisions of the Bankruptcy Code regarding disclosure and plan solicitation, including sections 1125 and 1126, as well as Bankruptcy Rules 3017 and 3018, Local Rule 3017-1, and the Interim Approval and Procedures Order.

> **1.    The Chapter 11 Trustee Complied with the Disclosure and Solicitation Requirements of Section 1125.**

66.    Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[49] Section 1125 of the Bankruptcy Code ensures that parties in interest are fully informed regarding a debtor's condition so that they may make an informed decision whether to approve or reject the plan.[50]

67.    The Chapter 11 Trustee has satisfied section 1125 of the Bankruptcy Code here. Before the Chapter 11 Trustee solicited votes on the Plan, the Bankruptcy Court conditionally approved the Disclosure Statement as containing adequate information and following the Bankruptcy Court's entry of the Interim Approval and Procedures Order, the Voting Agent sent the Solicitation Packages, including instructions for accessing electronic or hard-copy versions of the Plan and Disclosure Statement, to all Holders of Claims entitled to vote on the Plan and tabulated votes on the Plan consistent with the Bankruptcy Court-approved procedures, as evidenced by the Voting Report. The Chapter 11 Trustee, through the Voting Agent, complied

---

Code"); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

[49]    11 U.S.C. § 1125(b).

[50]    *See Momentum Mfg. Corp. v. Emp. Creditors Comm*. (*In re Momentum Mfg. Corp*.), 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

with the content and delivery requirements of the Interim Approval and Procedures Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code. Further, the Chapter 11 Trustee did not solicit acceptances of the Plan from any holder of a Claim before entry of the Interim Approval and Procedures Order and thus complied with section 1125(b) of the Bankruptcy Code. The Chapter 11 Trustee also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.

68. Finally, as set forth herein and in the Springer Declaration, the Chapter 11 Trustee at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with section 1125 of the Bankruptcy Code. Therefore, the Chapter 11 Trustee respectfully requests that this Bankruptcy Court grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

2. **The Chapter 11 Trustee Satisfied the Plan Acceptance Requirements of Section 1126.**

69. Section 1126 of the Bankruptcy Code provides that only holders of claims and equity interests allowed under section 502 of the Bankruptcy Code in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[51] As noted above, the Chapter 11 Trustee did not solicit votes on the Plan from the following Classes:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 - Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 - Other Priority Claims | Unimpaired | Presumed to Accept |

---

[51] *See* 11 U.S.C. § 1126.

| Class | Status | Voting Rights |
|---|---|---|
| Class 4 - General Unsecured Claims | Impaired | Deemed to Reject |
| Class 5 - Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 - 510(b) Claims | Impaired | Deemed to Reject |
| Class 7 - Interests | Impaired | Deemed to Reject |

70.     Holders of Claims in the Unimpaired Classes are conclusively presumed to accept the Plan and holders of Claims and Interests in the Deemed Rejecting Classes are deemed to reject the Plan and, therefore, were not entitled to vote on the Plan.[52] Thus, the Chapter 11 Trustee solicited votes only from holders of Claims in Class 3 (the "**Voting Class**") because this is the only Class that is Impaired and entitled to receive a distribution under the Plan.[53] The Voting Report, summarized above, reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.[54]

71.     Sections 1126(c) and (d) of the Bankruptcy Code specify that holders of an impaired class of claims or interests must vote in favor of a plan by at least two-thirds in amount and more than one-half in number of the allowed claims, or interests, of such class to accept the plan.[55] The Voting Agent reviewed all Ballots received in accordance with the procedures

---

[52]     11 U.S.C. 1126(f), (g).

[53]     *See* Plan, Art. III.A., B.

[54]     "A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of [section 1126], that have accepted or rejected such plan." 11 U.S.C. 1126(c). No Class of Interests was entitled to vote on the Plan. *See* Plan, Art. III.A-B. Therefore, the Debtors do not need to comply with section 1126(d) of the Bankruptcy Code.

[55]     *See* 11 U.S.C. §§ 1126(c), (d)

28

approved pursuant to the Interim Approval and Procedures Order. As set forth above, of those who timely voted, Holders of Claims in Class 3 in excess of these statutory thresholds voted to accept the Plan.[56] Based on the foregoing, the Chapter 11 Trustee submits that the Plan satisfies the requirements of section 1129(a)(2).

**C.  The Plan Is Proposed in Good Faith and Not by Any Means Forbidden by Law (Section 1129(a)(3)).**

72.  Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[57] Where a plan satisfies the purpose of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[58] Thus, "good faith" should be evaluated in light of the totality of the circumstances surrounding the development of the plan.[59]

73.  The Chapter 11 Trustee negotiated, developed, and proposed the Plan in good faith in accordance with section 1129(a)(3) and no party asserts otherwise. Throughout these Chapter 11 Cases, the Chapter 11 Trustee engaged in extensive, arm's-length negotiations with key constituencies as she worked to achieve the financing necessary to conduct the Chapter 11 Cases, stabilize the business operations, conduct sales of the assets, and develop the Plan, which provides the path for additional recovery. Accordingly, the Plan and the Chapter 11 Trustee's conduct satisfy section 1129(a)(3) of the Bankruptcy Code.

---

[56]  *See* Voting Report, Exhibit A.

[57]  11 U.S.C. § 1129(a)(3).

[58]  *See In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002) (concluding that 1129(a)(3) is satisfied when "the Plan has been proposed with the legitimate purpose of reorganizing the business affairs of each of the debtors and maximizing the returns available to creditors of the Debtors").

[59]  *See Platinum Cap., Inc. v. Sylmar Plaza, L.P.* (*In re Sylmar Plaza, L.P.*), 314 F.3d 1070, 1074 (9th Cir. 2002); *see also In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984) (stating that to determine compliance with section 1129(a)(3), the court examines the plan "in light of the totality of the circumstances surrounding confection of the plan") (internal citation omitted).

**D.     The Chapter 11 Trustee Seeks to Pay Certain Professional Fees and Expenses Subject to Court Approval (Section 1129(a)(4)).**

74.     Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under the plan be subject to approval of the Bankruptcy Court as reasonable.[60] No one has objected to the Plan on the basis that it does not satisfy section 1129(a)(4).

75.     As set forth in the Plan, all payments made or to be made by the Estates for services or for costs or expenses in connection with these Chapter 11 Cases prior to the Effective Date, including all Professional Fee Claims, are subject to approval of the Bankruptcy Court.[61] Article III.M of the Plan provides that final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date of the Plan must be filed no later than forty-five (45) days after the Effective Date for determination of the Allowed amounts of such fees by the Bankruptcy Court, after notice and a hearing, in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders.[62] Accordingly, the Plan fully complies with the requirements of section 1129(a)(4).

**E.     The Chapter 11 Trustee Complied with the Bankruptcy Code's Governance Disclosure Requirement (Section 1129(a)(5)).**

76.     The Bankruptcy Code requires that a plan proponent disclose the "identity and affiliations" of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan.[63] Section 1129(a)(5)(A)(ii) further requires that the appointment or

---

[60]     *See* 11 U.S.C. § 1129(a)(4); *see also In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[61]     *See* Plan, Art. II.

[62]     *Id*.

[63]     11 U.S.C. § 1129(a)(5)(A)(i).

continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[64] In addition, section 1129(a)(5)(B) also requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider.[65]

77.      The Chapter 11 Trustee has satisfied the foregoing requirements. Articles V and VI of the Plan provide for the winding down of the Debtors and the management of the Wind-Down Debtors by the Plan Administrator and the Wind-Down Debtors Oversight Committee.    In addition, as part of the Plan and/or Plan Supplement (including the Plan Administrator Agreement), the Chapter 11 Trustee has disclosed the identity, responsibilities, and compensation of the Plan Administrator (Timothy Pohl) and the composition of the Wind-Down Debtors Oversight Committee.[66] The Plan Administrator Agreement provides that the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of Holders of Claims and Interests who are entitled receive distributions pursuant to Plan.[67] Therefore, the requirements under Section 1129(a)(5) of the Bankruptcy Code are satisfied.

**F.      The Plan Does Not Require Governmental Approval of Rate Changes (Section 1129(a)(6)).**

78.      Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan.[68] The Plan does not provide for any rate changes over

---

[64]      11 U.S.C. § 1129(a)(5)(A)(ii).

[65]      11 U.S.C. § 1129(a)(5)(B).

[66]      D.I. 973.

[67]      *Id*.

[68]      11 U.S.C. § 1129(a)(6).

which a governmental regulatory commission has jurisdiction. The Chapter 11 Trustee submits that Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Plan.

**G.      The Plan Is in The Best Interests of Creditors and Interest Holders (Section 1129(a)(7)).**

79.      Section 1129(a)(7) of the Bankruptcy Code—the "best interests of creditors" test—requires that, with respect to each impaired class of claims or interests, either each holder of a claim or interest of such class (a) has accepted the plan; or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors liquidated under chapter 7 of the Bankruptcy Code.[69] The best interests test applies if a class of claims or interests entitled to vote does not vote unanimously to accept a plan, even if the class as a whole votes to accept the plan.[70] The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation.[71]

80.      The Plan satisfies section 1129(a)(7), and no party asserts otherwise. As set forth in the Disclosure Statement, the Chapter 11 Trustee, with the assistance of their financial advisors, prepared a liquidation analysis estimating potential recoveries under a hypothetical chapter 7 liquidation (the "**Liquidation Analysis**"), and compared the range of recoveries under the Liquidation Analysis to the recoveries generated under the Plan.[72] As set forth in the Liquidation

---

[69]      11 U.S.C. § 1129(a)(7)(A).

[70]      *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

[71]      *See In re Smith*, 357 B.R. 60, 67 (Bankr. M.D.N.C. 2007), *appeal dismissed*, 2007 WL 1087575 (M.D.N.C. Apr. 4, 2007) ("In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions.") (citations omitted).

[72]      *See* Combined Plan and Disclosure Statement, Exhibit A.

Analysis, the recoveries provided under the Plan to all holders of Claims and Interests are at least as much as (and, indeed, in many instances, more than) the potential recoveries available in a chapter 7 liquidation. The Liquidation Analysis demonstrates that the Plan satisfies section 1129(a)(7).

81.    The Chapter 11 Trustee submits that, if each of the Chapter 11 Cases were converted to a case under chapter 7 of the Bankruptcy Code, the value of distributions to each impaired class of Claims or Interests or each rejecting Creditor would be less than the value of distributions under the Plan. As detailed in the Liquidation Analysis, the assets available for distribution under chapter 7 would be substantially less than under the Plan. Several factors contribute to smaller distributions: (a) the Estates would incur costs, such as professional fees, in winding up Chapter 7 cases; (b) the Chapter 7 process would take substantially longer; and (c) a chapter 7 trustee and professionals would incur costs in becoming familiar with the Debtors' assets (in these Chapter 11 Case, primarily the Retained Causes of Action), and likely would realize less value than the Plan Administrator.

82.    The Liquidation Analysis is sound, reasonable, and incorporates justified assumptions and estimates regarding the liquidation of the Debtors' assets and claims, such as the (a) additional costs and expenses that would be incurred by the Estates as a result of a chapter 7 liquidation and (b) substantial increase in claims that may arise in a chapter 7 liquidation.[73] The estimates regarding the Debtors' assets and liabilities incorporated into the Liquidation Analysis are based upon the knowledge and familiarity of the Chapter 11 Trustee's professionals and advisors with the Debtors' business, their relevant experience in chapter 11 proceedings, and their

---

[73]    Springer Declaration, ¶¶ 33–40.

industry and financial experience.[74] Additionally, the Chapter 11 Trustee's Liquidation Analysis is entitled to deference.[75]

83.     For the foregoing reasons, the Chapter 11 Trustee submits that the Plan provides an equal or better potential recovery for Holders of Claims and Interests as compared to a liquidation under chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code.

### H.     The Plan can be Confirmed Notwithstanding the Requirements of Section 1129(a)(8).

84.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or be unimpaired under a plan.[76] As discussed above, certain Classes of Claims were unimpaired and conclusively presumed to accept the Plan. Class 3 voted to accept the Plan. Classes 4 (General Unsecured Claims), 5 (Intercompany Claims), 6 (Section 510(b) Claims), and 7 (Interests) are deemed to reject the Plan. While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the deemed rejecting Classes, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

### I.     The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)).

85.     Section 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash

---

[74]     *Id.*

[75]     *See In re Charter Commc'ns*, 419 B.R. 221, 261–62 (Bankr. S.D.N.Y. 2009) (discrediting creditors' objection to liquidation analysis because it consisted of a "largely speculative exercise of listing possible incremental recoveries and offered no reliable opinions as to the likelihood that any of these identified sources of possible extra value would ever materialize").

[76]     11 U.S.C. § 1129(a)(8).

payments. In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims. No party has objected to confirmation on the basis of section 1129(a)(9) of the Bankruptcy Code.

86.    In accordance with section 1129(a)(9), the Plan generally provides that each Holder of an Allowed Administrative Claim will receive, in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Estates in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Chapter 11 Trustee or the Wind-Down Debtors, as applicable; or (e) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court. [77] In addition, Allowed Professional Fee Claims will be paid in Cash from funds held in the Professional Fee Escrow

---

[77]    *See* Plan, Art. II.K.

35

Account,[78] and Allowed Priority Tax Claims will be paid in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.[79]

87.     Accordingly, the Plan complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.     At Least One Impaired Class of Claims Accepted the Plan, Excluding the Acceptance of Insiders (Section 1129(a)(10)).**

88.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims must either accept the plan or be unimpaired under the plan. As an alternative, section 1129(a)(10) provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, excluding acceptance by any insider.[80] As detailed herein and in the Voting Report, Class 3 is Impaired and voted to accepted the Plan, exclusive of any acceptances by insiders.[81] Thus, the Plan has been accepted by at least one Voting Class holding Impaired, non-insider claims with respect to each Debtor. Accordingly, the Plan satisfies the requirements of section 1129(a)(10).

**K.     The Plan is Feasible (Section 1129(a)(11)).**

89.     Section 1129(a)(11) requires that the Bankruptcy Court find that a plan is feasible as a condition precedent to confirmation. Specifically, the Bankruptcy Court must determine that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is provided for in the plan.[82]

---

[78]     *See* Plan, Art. II.M.

[79]     *See* Plan, Art. II.N.

[80]     11 U.S.C. § 1129(a)(10).

[81]     *See* Voting Report, <u>Exhibit A</u>.

[82]     *See* 11 U.S.C. § 1129(a)(11).

90.     Post-confirmation, the completion of the Debtors'/Estates' liquidation and wind-down is proposed in the Plan and no further financial reorganization of the Debtors is contemplated. As set forth in the Springer Declaration, while the Plan provides for the liquidation of the Debtors/Estates, it also provides for the funding, through the Wind-Down Financing Facility, to allow the Plan Administrator to conduct the liquidation, including the analysis and prosecution of the Retained Causes of Action, in an orderly and value maximizing process.[83] The conditions precedent to the Effective Date are reasonably likely to be satisfied.[84] The Chapter 11 Trustee anticipates having sufficient funds and resources available as of the Effective Date to consummate the Combined Plan and Disclosure Statement.[85] Under these circumstances, because the Plan contemplates the liquidation and wind-down of the Debtors, feasibility has been met.[86] Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.[87]

**L.      The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).**

91.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.[88] Article III.O of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors or the Wind-Down Debtors, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are

---

[83]     Springer Declaration, ¶ 46.

[84]     *Id*.

[85]     *Id*.

[86]     *See In re Crdentia Corp.*, Case No. 10-10926 (BLS), 2010 WL 3313383, at *9 (Bankr. D. Del. May 26, 2010) ("The Plan provides for a workable scheme of liquidation and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code."); *see also In re Revco D.S., Inc.*, 131 B.R. 615, 622 (Bankr. N.D. Ohio 1990) (holding that "Section 1129(a)(11) is satisfied as the plan provides that the property of [the] Debtors shall be liquidated").

[87]     *Id.*

[88]     *See* 11 U.S.C. § 1129(a)(12).

converted, dismissed, or closed, whichever occurs first.[89] Accordingly, the Plan complies with section 1129(a)(12).

## M. Sections 1129(a)(13)–(16) are Inapplicable.

92. A number of the Bankruptcy Code's confirmation requirements are inapplicable to the Plan. The Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.[90] Section 1114(a) of the Bankruptcy Code defines retiree benefits as medical benefits.[91] Because the Debtors do not provide retiree medical benefits, section 1129(a)(13) of the Bankruptcy Code is inapplicable here. Section 1129(a)(14) is inapplicable to the Plan because the Debtors are not subject to any domestic support obligations. Section 1129(a)(15) of the Bankruptcy Code applies only to debtors that are individuals and therefore does not apply here because none of the Debtors are "individuals" as defined in the Bankruptcy Code. Section 1129(a)(16) of the Bankruptcy Code applies only to debtors that are nonprofit entities or trusts and therefore does not apply here.

## N. Only One Plan to Be Confirmed.

93. Section 1129(c) of the Bankruptcy Code provides that the bankruptcy court may confirm only one plan.[92] Because the Plan is the only plan before the Bankruptcy Court, section 1129(c) of the Bankruptcy Code is satisfied.

---

[89] *See* Plan, Art. II.B.

[90] 11 U.S.C. § 1129(a)(13).

[91] Section 1114(a) of the Bankruptcy Code defines "retiree benefits" as "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title." 11 U.S.C. § 1114(e).

[92] *See* 11 U.S.C. § 1129(c).

**O.** **The Principal Purpose of The Plan is Not Avoidance of Taxes or Section 5 of the Securities Act (Section 1129(d)).**

94.     Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[93] The Plan has been proposed in good faith and not for the avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933. Moreover, no federal, state or local government unit, or any other party has raised any objection to the Plan on these or any other grounds, and all Priority Tax Claims will be paid in full pursuant to the Plan. The Chapter 11 Trustee therefore submits that the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**P.** **Section 1129(e) Does Not Apply to the Plan.**

95.     The provisions of section 1129(e) of the Bankruptcy Code apply only to a "small business case." These Chapter 11 Cases are not "small business cases" and, accordingly, section 1129(e) of the Bankruptcy Code has no application to the Plan.

**III.** **The Plan Satisfies the "Cramdown" Requirements of Section 1129(b).**

96.     Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[94] To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-

---

[93]     *See* 11 U.S.C. § 1129(d); *see also* Securities Act of 1933, ch. 38, § 5, 48 Stat. 74, 77-78 (codified as amended at 15 U.S.C. §§ 77a–77aa).

[94]     *See* 11 U.S.C. § 1129(b).

accepting impaired classes.[95] No party has objected on the basis that the Plan either "discriminates unfairly" or is not in fact "fair and equitable."

97.    The Chapter 11 Trustee received the requisite votes from the Voting Class, Class 3, which was the only class entitled to vote on the Plan. Classes 4 (General Unsecured Claims), 5 (Intercompany Claims), 6 (Section 510(b) Claims), and 7 (Interests) (collectively, the "**Rejecting Classes**") were not entitled to vote on the Plan and are deemed to reject the Plan. Notwithstanding that the Plan was not accepted by such Impaired Classes, the Plan satisfies the "cramdown" requirements under section 1129(b).

A.    **The Plan Does Not Unfairly Discriminate with Respect to Impaired Classes That Have Not Voted to Accept the Plan (Section 1129(b)(1)).**

98.    The Plan does not discriminate unfairly with respect to the Rejecting Classes. Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[96] Generally, courts have held that a plan unfairly discriminates in violation of section 1129(b) only if similarly situated claims receive materially different treatment without a reasonable basis for the disparate treatment.[97] A plan does not unfairly discriminate where it provides different treatment to two or more classes that are comprised of dissimilar claims

---

[95]    *See* 11 U.S.C. § 1129(b)(1); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999) (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

[96]    *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *see also In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[97]    *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 228 (Bankr. D.N.J. 2000) (noting that one of "the hallmarks of the various tests" is "whether there is a reasonable basis for the discrimination. . . . ").

or interests.[98] Likewise, there is no unfair discrimination if, taking into account the particular facts and circumstances of the case, there is a reasonable basis for the disparate treatment.[99]

99.    Here, the Plan's treatment of the Rejecting Classes is proper because all similarly situated holders of Claims and Interests will receive substantially similar treatment and the Plan's classification scheme rests on a legally acceptable rationale. Where the Plan provides differing treatment for certain Classes of Claims or Interests, the Chapter 11 Trustee has a rational basis for doing so. The Plan separately classified Claims into the voting Class 3 (Prepetition Term Loan Claims) based upon the secured nature of those Claims. Class 4 General Unsecured Claims includes Claims held by parties that do not have security for their claims. Class 5 (Intercompany Claims) is legally distinct from both of these Classes, as the Intercompany Claims consist of Claims held by and among the Debtors against other Debtors. Class 6 (Section 510(b) Claims) (if any) is also a legally distinct Class. Class 7 (Interests) consists of all Interests in the Debtors. Class 7 is legally distinct in nature from all other Classes. All Interests in the Debtors are classified together and afforded the same treatment under the Plan.

100.    Accordingly, there is no unfair discrimination among the Classes and there is a reasonable basis for the disparate treatment among those Classes. With respect to the rejecting Classes, there is no unfair discrimination because there are no other Classes containing creditors with Claims or Interests similar to those in such Classes and each Class contains Claims and Interests that are similarly situated. Accordingly, the Plan does not discriminate unfairly against

---

[98]    *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 655 (9th Cir. 1997); *In re Aztec Co.*, 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987); *aff'd sub nom., Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

[99]    *Aztec Co.*, 107 B.R. at 590.

such Classes. Thus, the Plan does not "discriminate unfairly" with respect to any impaired Classes of Claims or Interests.

B.    **The Plan Is Fair and Equitable with Respect to the Rejecting Classes (Section 1129(b)(2)).**

101.    For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the "absolute priority" rule and satisfy the requirements of section 1129(b)(2).[100] Generally, this requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired rejecting class not receive any distribution under a plan on account of its junior claim or interest.[101]

102.    In the present case, the Plan is fair and equitable with respect to Class 4. No classes junior to Class 4 will receive a recovery under the Plan. Accordingly, the Plan satisfies the requirements of sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) and, therefore, is fair and equitable with respect to rejecting classes and Classes 5, 6, and 7.[102]

103.    Accordingly, the Plan is "fair and equitable" with respect to all Impaired Classes of Claims and Interests and satisfies section 1129(b) of the Bankruptcy Code.

---

[100]    11 U.S.C. § 1129(b)(2)(B)(ii); 11 U.S.C. § 1129(b)(2)(C)(ii); *see also 203 N. LaSalle*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

[101]    *See 203 N. LaSalle*, 526 U.S. at 459.

[102]    Springer Declaration, ¶ 51.

## IV.    The Waiver of a Stay of the Confirmation Order is Appropriate.

### A.    Good Cause Exists to Waive the Automatic Stay of the Confirmation Order.

104.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Bankruptcy Court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon court order.

105.    The Chapter 11 Trustee submits that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.[103] As noted above, these Chapter 11 Cases and the related transactions were negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information. Each day the Debtors remain in chapter 11 they incur significant administrative and professional costs.

106.    Based on the foregoing, the Chapter 11 Trustee requests a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

### B.    Modifications to the Plan.

107.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the

---

[103]    *See, e.g., In re Source Home Entm't, LLC*, No. 14-11553 (KG) (Bankr. D. Del. Feb. 20, 2015) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re GSE Envtl., Inc.*, No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) (same); *In re Gatehouse Media, Inc.*, No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) (same); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) (same).

requirements of sections 1122 and 1123 of the Bankruptcy Code. Furthermore, when a plan proponent files a modified plan with the court, the modified plan becomes the Plan. Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder. Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[104]

108.    The Chapter 11 Trustee filed a modified version of the Plan which includes technical clarifications and resolves certain formal and informal comments to the Plan by parties in interest. Such modifications are immaterial and thus comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. No modifications will require additional solicitation or disclosure is required on account of the modifications, and such modifications should be deemed accepted by all creditors that previously accepted the Plan.

## CONCLUSION

109.    For all of the reasons set forth herein, in the Springer Declaration and the Voting Report, the Chapter 11 Trustee respectfully requests that the Bankruptcy Court confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Confirmation Order, waiving the stay imposed by Bankruptcy Rule 3020(e), overruling any

---

[104]    *See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

objections, and granting such other and further relief as may be appropriate under the circumstances.

Dated: October 27, 2025
Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

/s/ *Alexis R. Gambale*
Henry J. Jaffe (No. 2987)
Joseph C. Barsalona II (No. 6102)
Alexis R. Gambale (No. 7150)
824 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
Email: hjaffe@pashmanstein.com
    jbarsalona@pashmanstein.com
    agambale@pashmanstein.com
-and-

**JENNER & BLOCK LLP**
Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 923-2952
Email: csteege@jenner.com
    mroot@jenner.com
    wwilliams@jenner.com

*Co-Counsel to the Chapter 11 Trustee*