## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SAGA FORMATIONS, INC., *et al.*,[1] | Case No. 24-11161 (BLS) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF CLAUDIA Z. SPRINGER IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN FOR THE ESTATES OF SAGA FORMATIONS, INC., PAJEAU, INC., AND TANGIBLE PLAY, INC

I, Claudia Z. Springer, hereby declare under penalty of perjury:

1.      I am the duly appointed Chapter 11 Trustee (the "**Chapter 11 Trustee**") of Saga Formations, Inc. f/k/a Epic Creations, Inc. ("**Epic**"), Pajeau, Inc. f/k/a Neuron Fuel, Inc. ("**Neuron Fuel**"), and Tangible Play, Inc. ("**Tangible Play**," together with Epic and Neuron Fuel, collectively the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

2.      I am also a Principal in the Philadelphia office of Novo Advisors, a restructuring-focused consulting firm. Prior to joining Novo Advisors in 2021, I practiced bankruptcy law for more than 40 years, most recently as a partner at Reed Smith LLP and Duane Morris LLP.

3.      I am familiar with the terms of the *Second Amended Combined Disclosure Statement and Chapter 11 Plan of for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.*, dated October 14, 2025 [D.I. 971] (as further modified, amended, or

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Saga Formations, Inc. f/k/a Epic Creations, Inc. (9113), Pajeau, Inc. f/k/a Neuron Fuel, Inc. (8758), and Tangible Play, Inc. (9331).

supplemented from time to time in accordance with its terms, the "**Combined Plan and Disclosure Statement**", the "**Plan**" or the "**Disclosure Statement**" as the context indicates).[2]

4.      I am over the age of 18 and competent to testify, and I am duly authorized to submit this declaration (this "**Declaration**") in support of Confirmation of the Plan. Except where specifically noted, the statements in this Declaration are based on my personal knowledge or opinion, on information that I have received in consultation with my advisors, or on my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

## GENERAL BACKGROUND AND DEVELOPMENT OF THE PLAN

5.      I have reviewed and am generally familiar with the terms and provisions of the Plan. With my counsel, I was personally involved in the development and negotiation of the Plan. The Plan is the result of good faith, arm's-length negotiations among myself and key stakeholders, including the Debtors' secured creditors and the United States Trustee.

6.      On August 4, 2025, the Court entered the *Order (I) Approving the First Amended Combined Plan and Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Voting Procedures; (III) Approving the Form of Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadlines for Filing Objections Thereto; and (VI) Granting Related Relief* [D.I. 866] (the "**Interim Approval and Procedures Order**") which, *inter alia*, (a) approved the Disclosure Statement on an interim basis for solicitation purposes, (b) scheduled a combined hearing to approve the Disclosure Statement on a final basis and to

---

[2]        Capitalized terms used but not otherwise defined in this Memorandum have the meanings set forth in the Combined Plan and Disclosure Statement.

2

confirm the Plan, and (c) established procedures for solicitation of the Plan and tabulation of votes to accept or reject the Plan. To the best of my knowledge, with the assistance of Kurtzman Carson Consultants, LLC d/b/a Verita Global, my claims, noticing and voting agent (the "**Voting Agent**"), consistent with the solicitation and noticing procedures approved through the Interim Approval and Procedures Order, the applicable provisions of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), I, with the assistance of my professionals, commenced solicitation of the Plan on August 12, 2025 in accordance with the Interim Approval and Procedures Order. [*See* D.I. 892, 893].

7.      On September 2, 2025, I filed the *Notice of Filing of Plan Supplement* [D.I. 911] (the "**First Plan Supplement**"). This was followed, on October 14, 2025, by the *Notice of Filing of First Amended Plan Supplement* [D.I. 973] (the "**Amended Plan Supplement**") (together with the First Plan Supplement and any additional plan supplements, the "**Plan Supplement**").

8.      On October 13, 2025, I filed the *Second Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.*, which contained certain non-material modifications to the August 4, 2025, version of the Plan.

## COMPLIANCE WITH THE BANKRUPTCY CODE

9.      It is my understanding that the Bankruptcy Code sets forth certain requirements that any chapter 11 plan must comply with to be confirmed. I believe the Plan complies with each requirement to the extent that requirement applies to the Debtors. The following is a recitation of certain features and characteristics of the Plan, organized by the section of the Bankruptcy Code to which I understand they are relevant.

I.      **Section 1129(a)(1)—Compliance with all Applicable Provisions of the Bankruptcy Code.**

10.     I understand that section 1129(a)(1) of the Bankruptcy Code requires a chapter 11 plan to comply with all applicable provisions of the Bankruptcy Code. As set forth herein, I believe the Plan does so and should be confirmed.

A.      **Sections 1122 And 1123(a)(1).**

11.     I understand that sections 1122 and 1123(a)(1) of the Bankruptcy Code govern the manner in which a debtor may classify claims and interests. Article IV.A of the Plan provides for the following classification scheme for Claims and Interests:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 - Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 - Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 3 – Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 - General Unsecured Claims | Impaired | Deemed to Reject |
| Class 5 - Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 - 510(b) Claims | Impaired | Deemed to Reject |
| Class 7 - Interests | Impaired | Deemed to Reject |

12.     The Plan satisfies section 1123(a)(1) of the Bankruptcy Code because it designates classes of Claims and Interests, other than certain tax and priority administrative Claims. The Plan's classification of Claims and Interests satisfies section 1122 of the Bankruptcy Code because each Class is composed of substantially similar Claims or Interests, respectively, and the Claims

4

and Interests in each separate class differ from those in every other class due to differing legal rights of the Holders of Claims in each separate Class. I understand that no party has objected to Confirmation on the basis that the Plan fails to satisfy sections 1122 or 1123(a)(1) of the Bankruptcy Code. Accordingly, I believe that the Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**B.      Sections 1123(a)(2) and 1123(a)(3).**

13.      I understand that sections 1123(a)(2) and (3) of the Bankruptcy Code require that a chapter 11 plan specify the classes of claims or interests that are unimpaired by a plan and the treatment of each class of claims or interests that is impaired. Article IV.B of the Plan delineates the Classes of Claims and Interests and whether they are Impaired or Unimpaired by the Plan and sets forth the treatment of each Class of Claims and Interests. Accordingly, I believe that the Plan satisfies the requirements of sections 1123(a)(2) and (3) of the Bankruptcy Code.

**C.      Section 1123(a)(4).**

14.      I understand that section 1123(a)(4) of the Bankruptcy Code requires that a chapter 11 plan provide the same treatment to each claim or interest of a particular class. Article IV.B of the Plan sets forth the treatment of each Class of Claims and Interests and provides the same treatment to each Claim or Interest in each particular Class. Accordingly, I believe that the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**D.      Section 1123(a)(5).**

15.      I understand that section 1123(a)(5) of the Bankruptcy Code requires that a chapter 11 plan provide adequate means for a plan's implementation. Article IV of the Plan, in particular, sets forth the means for implementation of the Plan, which include, *inter alia*: (a) the establishment and funding of the Plan Reserves, (b) the vesting of the Wind-Down Debtor Assets in the Wind-Down Debtors, (c) the Wind-Down Financing Facility, (d) the appointment of the Plan

5

Administrator, (e) the sources of consideration for Plan distributions and the provisions governing distributions, and (f) the resolution of Disputed Claims. Accordingly, I believe that the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### E.    Section 1123(a)(6).

16.    I understand that section 1123(a)(6) of the Bankruptcy Code sets forth certain requirements in connection with the issuance of equity securities and voting powers thereunder for corporations. Section 1123(a)(6) is not applicable under the Plan because no new equity securities are being issued. The Debtors' corporate entities will be wound down and will not be issuing securities. Thus, I understand that the requirement that the Debtors' new organizational documents prohibit the issuance of nonvoting equity securities and section 1123(a)(6) of the Bankruptcy Code is inapplicable.

### F.    Section 1123(a)(7).

17.    I understand that section 1123(a)(7) of the Bankruptcy Code requires that a chapter 11 plan contain only provisions related to selecting directors and officers that are consistent with the interests of creditors and equity security holders and with public policy. Article V.D of the Plan provides: "The Plan Administrator shall be immediately and automatically deemed appointed by the Debtors or the Wind-Down Debtors, as applicable, as the sole director and the sole officer of each of the Wind-Down Debtors, and the Plan Administrator shall succeed to the powers of the Debtors' directors and officers and the Chapter 11 Trustee." The Plan Supplement identifies Timothy Pohl as the Plan Administrator. [D.I. 973.] Accordingly, I believe that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### G.    Section 1123(b)

18.    I have been advised that section 1123(b) of the Bankruptcy Code allows a plan to include a variety of permissive provisions. I believe that each of the Plan's permissive provisions comports with section 1123(b):

- **Section 1123(b)(1) (Impairment of Classes):** Article IV of the Plan classifies and describes the treatment for Claims and Interests under the Plan and identifies which Claims and Interests are impaired or unimpaired.

- **Section 1123(b)(2) (Executory Contracts and Unexpired Leases):** As described in Article IX of the Plan, on the Effective Date, each Executory Contract or Unexpired Lease shall be deemed automatically rejected by the Chapter 11 Trustee unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are otherwise provided for in the Plan, such as being specifically assumed in connection with confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) have been previously assumed, assumed and assigned, or rejected by the Chapter 11 Trustee pursuant to any Bankruptcy Court order; (c) are the subject of a pending motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a pending objection with respect thereto) that is pending on the Confirmation Date; or (d) are a contract, release, or other agreement or document entered into in connection with the Plan. I believe this relief is appropriate as the Debtors are no longer operating entities and thus have no need for their remaining contracts after the Effective Date (and those contracts will continue to be an unnecessary expense of the Estates if not rejected. I further believe that confirmation of the Plan is a sufficient forum to address the rejection of the Debtors' executory contracts and unexpired leases, and that the notice of the Effective Date will provide sufficient notice to all counterparties of the deadline to file claims against the Debtors for rejection damages.

- **Section 1123(b)(3) (Settlement and Adjustment of Claims):** In accordance with section 1123(b)(3) of the Bankruptcy Code, Article IV of the Plan extinguishes or modifies, or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class. In addition, Article X provides for certain Debtors' and Estates' Releases and Article V provides that the Retained Causes of Action will vest in the Wind-Down Debtors and that the Plan Administrator will investigate and/or adjudicate and may compromise or settle, all such Retained Causes of Action.

- **Section 1123(b)(5) (Modification of Rights of Holders of Claims):** Article IV of the Plan modifies the rights of Holders of Claims as set forth therein.

7

19.     I have been advised that section 1123(b)(6) of the Bankruptcy Code also authorizes the inclusion of "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." The Plan includes several such discretionary provisions, including various terms discharging, releasing, and enjoining the pursuit of certain Claims. The release and exculpation provisions set forth in the Plan are the result of extensive good-faith and arm's-length negotiations by and among me and certain parties subject to the release, exculpation, and injunction provisions. I have been advised that such provisions are consistent with applicable case law and precedent in this district and comply with the Bankruptcy Code in all respects, and I believe they are integral components of the Plan.

## II.     The Debtors' Release is Appropriate.

20.     I understand that Article X.D of the Plan provides for a release of certain Claims and Causes of Action of the Debtors, their Estates, the Chapter 11 Trustee, and the Wind-Down Debtors (the "**Debtors' Release**").  When negotiating the Debtors' Release, I, with the assistance of my advisors, determined that pursuing claims and causes of action against the Released Parties would not be in the best interests of the Debtors, their Estates, or their stakeholders because such claims and causes of action were unlikely to be sufficiently material to warrant the litigation costs associated with their prosecution. I believe that the Debtors' Release reflects an appropriate and reasonable exercise of my business judgment regarding the risk and expense of pursuing claims and causes of action, on the one hand, and the benefits of retaining those same claims and causes of action on the other. In addition, except as otherwise provided in the Plan, the Plan excludes Retained Causes of Actions from the Debtors' Release.

21.     In addition, I believe that the Debtors' Release is fair, reasonable, and in the best interests of the Debtors' Estates. Each of the categories of the Released Parties has contributed

significantly to the Debtors' chapter 11 efforts, including negotiating and formulating the Plan and related settlements, facilitating the progress made during these Chapter 11 Cases, and in the case of the Petitioning Lender Creditors, by stopping the bad actors from further depleting the Estates' assets by seeking the protection of this Court.

22.    I also believe the Debtors' Release is essential to the Plan itself. Without the Debtors' Release, there would be no acceptance of the Plan and no financing to effectuate the post-Effective Date transactions contemplated by the Plan. In addition, because the Retained Causes of Action are excluded, the Plan provides a means, through the vesting of the Retained Causes of Action, to return value to the Debtors' creditors.  For these reasons, I believe that the Debtors' Release is fair, reasonable, in the best interest of the Estates, and a valid exercise of my business judgment, and should be approved.

**III.    The Plan's Exculpation Provisions Are Appropriate.**

23.    Article X.A of the Plan provides for the exculpation of the Exculpated Parties. The Exculpated Parties are limited to: (i) the Chapter 11 Trustee and her Related Parties, including the Estates' Professionals; and (ii) the CPO. Further, the exculpation is limited to acts or omissions occurring after the Petition Date and before the Effective Date in connection with my prosecution of the Chapter 11 Cases, and to provide that the Exculpation does not protect the Exculpated Parties from liability resulting from actual fraud, willful misconduct, or gross negligence. I understand the Exculpation Provision is intended to prevent collateral attacks against the Exculpated Parties that have acted in good faith to help facilitate the administration of these Chapter 11 Cases. The Exculpation Provision is an integral part of the Plan and otherwise satisfies the governing standards in the Third Circuit. Based on information provided by my advisors, I understand this provision provides necessary and customary protections to those Exculpated Parties whose efforts were and

9

continue to be vital to formulating and implementing the Plan. Accordingly, I believe that the Court should approve the Plan's Exculpation Provision.

## IV. The Injunction Provision is Appropriate.

24.     Article X.B and C of the Plan provides for an injunction that is necessary to implement the Plan's release and exculpation provisions. The injunction generally provides that all entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined from prosecuting or otherwise pursuing claims released or exculpated under the Plan. The Plan's release and exculpation provisions, each of which were material components of the Plan, would be substantially weakened without the injunction provision. Accordingly, the injunction provision should be approved.

25.     I believe that the Injunction is necessary to implement, preserve, and enforce the Plan's release, discharge, exculpation, and gatekeeping provisions, which are integral to the Plan. Furthermore, the Injunction is properly tailored to achieve its objective and only encompasses Claims or Causes of Action that have been voluntarily released. Accordingly, I believe that the Court should approve the Injunction in connection with approving the release and exculpation provisions included in the Plan.

## V. Section 1129(a)—Other Requirements.

### A. Section 1129(a)(2).

26.     I understand that section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan of reorganization to comply with the "applicable provisions" of the Bankruptcy Code, and, in that regard, is specifically intended to ensure compliance with the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code. Based on my review of information provided by my advisors, along with the Voting Report, I believe that the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code.

10

**B.      Section 1129(a)(3).**

27.      I understand that section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be proposed in good faith and not by any means forbidden by law. With the assistance of my advisors, I negotiated, developed, and proposed the Plan in good faith. Throughout these Chapter 11 Cases, I, along with the assistances of my advisors, engaged in extensive, arm's-length negotiations with key constituencies as I worked to achieve the financing necessary to conduct the Chapter 11 Cases, stabilize the business operations, conduct sales of the assets, and develop the Plan, which provides the path for additional recovery.

28.      Based on the foregoing, I believe that the Plan is "not by any means forbidden by law" and, indeed, is in full compliance with the Bankruptcy Code and applicable non-bankruptcy law. Accordingly, I believe the Plan was proposed in good faith in compliance with section 1129(a)(3) of the Bankruptcy Code.

**C.      Section 1129(a)(4).**

29.      I understand that section 1129(a)(4) of the Bankruptcy Code requires that any payment to be made by a debtor for services or expenses in connection with the chapter 11 case or plan are subject to approval by the Court.

30.      As set forth in the Plan, all payments made or to be made by the Estates for services or for costs or expenses in connection with these Chapter 11 Cases prior to the Effective Date, including all Professional Fee Claims, are subject to approval of the Court.[3] Article II.M of the Plan provides that final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date of the Plan must be filed no later than 45 days after the Effective Date for determination of the Allowed amounts of such fees by

---

[3] *See* Plan, Art. II.

11

the Court, after notice and a hearing, in accordance with the procedures established by the Bankruptcy Code and prior Court orders. Based on the foregoing, I believe the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**D.      Section 1129(a)(5).**

31.      As part of the Plan and Plan Supplement, I have disclosed the identity of the Plan Administrator and the composition of the Wind-Down Debtors Oversight Committee. These appointments will allow the Wind-Down Debtors to wind down under applicable law in an orderly fashion and make distributions to creditors and is consistent with the interests of creditors and interest holders and with public policy. I believe that the manner of naming and selecting the Plan Administrator and the composition of the Wind-Down Debtors Oversight Committee is consistent with public policy. Accordingly, I believe that the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**E.      Section 1129(a)(6).**

32.      I understand that section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan. I believe section 1129(a)(6) is inapplicable to these Chapter 11 Cases, as the Plan does not provide for any rate changes.

**F.      Section 1129(a)(7).**

33.      I understand that section 1129(a)(7) requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain, on account of their claim or interest, property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code at that time. Accordingly, I understand that the "best interests test" is satisfied where the estimated recoveries under a proposed plan for

a debtors' stakeholders that reject that plan are greater than or equal to the recoveries such stakeholders would receive in a hypothetical chapter 7 liquidation. Based on my familiarity with the businesses, operations, and assets of the Debtors, my understanding of the Plan, and the events that have occurred during these Chapter 11 Cases, I believe that the Plan satisfies the "best interests test" of section 1129(a)(7) of the Bankruptcy Code.

34.     I and my advisors have analyzed the value of the Plan to the Estates and have concluded that the Plan provides for a greater recovery than would be the case in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. More specifically, my advisors have prepared a hypothetical liquidation analysis, attached as Exhibit A to the Plan (the "**Liquidation Analysis**"). The Liquidation Analysis demonstrates that in a chapter 7 liquidation, holders of Claims and Interests would receive less than is projected under the Plan.

35.     At my direction, my advisors carefully completed the Liquidation Analysis after extensive due diligence. In addition, the Liquidation Analysis was completed with the direct involvement of individuals under my direct supervision. I am familiar with the methods used and the conclusions reached in preparing the Liquidation Analysis. It is my understanding that the Liquidation Analysis represents the best estimate of the cash proceeds, net of liquidation-related costs that would be available for distribution to the holders of Claims and Interests if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code.

36.     The assumptions and estimates in the Liquidation Analysis are appropriate in the context of these Chapter 11 Cases and are based upon the knowledge and expertise of my professionals and personnel who have extensive knowledge of the Debtors' business and financial affairs as well as relevant industry and financial experience. The Plan contemplates providing recoveries to, among others, the holders of Claims in Classes 1, 2, and 3. As set forth in the

Liquidation Analysis and herein, recoveries under the Plan are higher than recoveries estimated to be available if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

37.     Based on the Liquidation Analysis, it is my conclusion that the recoveries to the Holders of Claims and Interests under the Plan are at least as much as (and, in many instances, exceed) the potential recoveries provided to the holders of Claims and Interests in a liquidation under chapter 7 of the Bankruptcy Code and, therefore, the Plan satisfies the "best interests" test under section 1129(a)(7) of the Bankruptcy Code.

38.     I understand that, subject to the assumptions and qualifications contained therein, the Liquidation Analysis establishes that all Holders of Claims and Interests in Impaired Classes will receive or retain property under the Plan valued, as of the Effective Date, in an amount greater than or equal to the value of what they would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. I believe that the Liquidation Analysis is sound, reasonable, and incorporates justified assumptions and estimates regarding the liquidation of the Debtors' assets and claims, such as the (a) additional costs and expenses that would be incurred by the Debtors as a result of a chapter 7 liquidation and (b) substantial increase in claims that may arise in a chapter 7 liquidation.

39.     I believe that the assumptions and estimates in the Liquidation Analysis are appropriate in the context of these Chapter 11 Cases and are based upon the collective knowledge and expertise of my advisors, all of whom have intimate knowledge of the Debtors' businesses and relevant industry or restructuring experience.

40.     Based on the foregoing, I believe that the Plan satisfies the requirements of the "best interests" test under section 1129(a)(7) of the Bankruptcy Code.

**G.    Section 1129(a)(8).**

41.    I understand that section 1129(a)(8) requires that each class of claims or interests either accept a plan or be unimpaired under a plan. Class 3 voted to accept the Plan. Classes 4 (General Unsecured Claims), 5 (Intercompany Claims), 6 (Section 510(b) Claims), and 7 (Interests) are deemed to reject the Plan. While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the deemed rejecting Classes, I believe the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**H.    Section 1129(a)(9).**

42.    I understand that section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a chapter 11 plan and that the holders of certain other priority claims receive specified deferred cash payments.

43.    In accordance with section 1129(a)(9), the Plan generally provides that each Holder of an Allowed Administrative Claim will receive, in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Estates in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (d) at such time

15

and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Chapter 11 Trustee or the Wind-Down Debtors, as applicable; or (e) at such time and upon such terms as set forth in a Final Order of the Court.[4] In addition, Allowed Professional Fee Claims will be paid in Cash from funds held in the Professional Fee Escrow Account, and Allowed Priority Tax Claims will be paid in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

44.     Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**I.      Section 1129(a)(10).**

45.     I understand that section 1129(a)(10) of the Bankruptcy Code requires that, if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. As detailed herein and in the Voting Report, Class 3, is Impaired and voted to accept the Plan, exclusive of any acceptances by insiders.[5] Accordingly, I believe the Plan satisfies the requirements of section 1129(a)(10). Section 1129(a)(11).

46.     I understand that section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation or further reorganization of the debtor or any successor thereto. I understand section 1129(a)(11) of the Bankruptcy Code to require a plan to be "feasible."

47.     The Plan is a liquidating plan that provides for the liquidation and distribution of the Debtors' assets and the wind-down of the Debtors. No further financial reorganization of the Debtors is contemplated. Post-confirmation, the completion of the Debtors'/Estates' liquidation and wind-down is proposed in the Plan and no further financial reorganization of the Debtors is

---

[4]      *See* Plan, Art. II.K.
[5]      *See* Voting Report, <u>Exhibit A</u>.

contemplated. The Plan provides for the funding, through the Wind-Down Financing Facility, to allow the Plan Administrator to conduct the liquidation, including the analysis and prosecution of the Retained Causes of Action, in an orderly and value maximizing process. The conditions precedent to the Effective Date are reasonably likely to be satisfied. I anticipate having sufficient funds and resources available as of the Effective Date to consummate the Combined Plan and Disclosure Statement. Under these circumstances, because the Plan contemplates the liquidation and wind-down of the Debtors, feasibility has been met. Therefore, I believe the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**J.     Section 1129(a)(12).**

48.     I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930. Article II.O of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors or the Wind-Down Debtors, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**K.     Sections 1129(a)(13).**

49.     I understand that section 1129(a)(13) of the Bankruptcy Code requires chapter 11 plans to continue all retiree benefits (as defined in section 1114 of the Bankruptcy Code). I understand that, because the Debtors do not provide retiree medical benefits, section 1129(a)(13) of the Bankruptcy Code is inapplicable here.

**L.     Sections 1129(a)(14)–(16).**

50.     I understand that sections 1129(a)(14) and 1129(a)(15) of the Bankruptcy Code apply only to debtors that are individuals, and that section 1129(a)(16) of the Bankruptcy Code applies only to debtors that are nonprofit entities or trusts. The Debtors are not individuals or

nonprofit entities or trusts, and therefore I believe that these sections of the Bankruptcy Code are inapplicable.

## VI.    Section 1129(b) of the Bankruptcy Code.

51.    I understand that, under section 1129(b)(1) of the Bankruptcy Code, if all applicable requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) of the Bankruptcy Code are satisfied, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. I further understand that a plan that all impaired classes have not accepted (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code) can still be confirmed if that plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. I believe that the Plan satisfies the "fair and equitable" requirement with respect to all rejecting classes and does not discriminate unfairly.

## VII.    Section 1129(c) of the Bankruptcy Code.

52.    I understand that the Plan is the only plan filed in these Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code does not apply.

## VIII.    Section 1129(d) of the Bankruptcy Code.

53.    I believe that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of section 5 of the Securities Act. To my knowledge, no governmental unit has objected to Confirmation of the Plan on such grounds.

## GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER

54.    Under the circumstances, I believe that it is appropriate for the Bankruptcy Court to permit me to consummate the Plan and commence its implementation without delay after the entry of the Confirmation Order. Moreover, I believe the transactions, releases, and liquidation, and proposed distributions contemplated by the Plan were vigorously negotiated among sophisticated parties and are premised on maximizing value for the stakeholders in these Chapter

11 Cases. Given that the Combined Plan and Disclosure statement is a plan a liquidation and that further delay of the Effective Date will only result in the Debtor's incurrence of value-consuming administrative costs, immediate effectiveness of the Confirmation Order would facilitate my efforts to take the steps necessary to consummate the Plan.

55.    Finally, given the extensive efforts to provide each of the voting parties and other stakeholders with a full measure of adequate notice, I believe that staying the Confirmation Order will not serve any ends related to due process. Accordingly, I believe a waiver of any stay imposed by the Bankruptcy Rules is appropriate under the circumstances so that the proposed Confirmation Order may be effective immediately upon its entry.

## ADVERSE CONSEQUENCES OF NON-CONFIRMATION OF THE PLAN

56.    If the Plan is not confirmed in the near term, I believe the Estates will incur substantial administrative costs relating to the pendency of these Chapter 11 Cases or the conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. I believe the Plan is in the best interests of the Estates and the Debtors' creditors. Accordingly, I believe it is imperative that the Plan be confirmed as quickly as possible.

## CONCLUSION

57.    For the reasons discussed above, as the Chapter 11 Trustee, and having been involved in virtually every aspect of these Chapter 11 Cases, it is my belief that confirmation of the Plan is appropriate, is in the best interests of the Debtors and their Estates, and should be approved

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

19

Dated: October 27, 2025

*/s/ Claudia Z. Springer*
Name:  Claudia Z. Springer
Title:   Chapter 11 Trustee