**<u>Exhibit B-1</u>**

**Revised Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made this [●] day of [●], 2025, by and among the Chapter 11 Trustee, on behalf of the Estates of Saga Formations, Inc. (f/k/a Epic! Creations, Inc.), Pajeau, Inc. (f/k/a Neuron Fuel, Inc.), and Tangible Play, Inc. (collectively, the "Epic Debtors"), BYJU's Alpha, Inc. ("Alpha" and, together with the Epic Debtors, the "Debtors" or the "Wind-Down Debtors," as applicable), and Timothy R. Pohl (the "Plan Administrator"), in accordance with the *Second Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.* [Epic Docket No. [●]] (the "Epic Plan") and the *Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* [Alpha Docket No. 475] (the "Alpha Plan" and, together with the Epic Plan, the "Plans") as each may from time to time be amended, supplemented, or otherwise modified in accordance with the terms thereof.[1]

## RECITALS

WHEREAS, Alpha filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 1, 2024 (the "Alpha Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") thereby commencing the chapter 11 case of Alpha (the "Alpha Case");

WHEREAS, GLAS and certain Prepetition Term Loan Lenders party to the Prepetition Credit Agreement (the "Petitioning Creditors") filed involuntary petitions against Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc. under chapter 11 of the Bankruptcy Code on June 4–5, 2024 (the "Epic Petition Date") in the Bankruptcy Court;

WHEREAS, on September 16, 2024 (the "Order for Relief Date"), the Bankruptcy Court entered the *Order for Relief in Involuntary Cases and Appointing Chapter 11 Trustee* [Epic Docket No. 147] (the "Order for Relief") granting the relief requested by the Petitioning Creditors and commencing the chapter 11 cases of the Epic Debtors (the "Epic Cases" and, together with the Alpha Case, the "Chapter 11 Cases");

WHEREAS, pursuant to the Order for Relief and upon the *Application of the United States Trustee for Entry of an Order Approving the Appointment of Claudia Z. Springer as Chapter 11 Trustee* [Epic Docket No. 151] (the "Trustee Application") the Bankruptcy Court entered the *Order Approving the Appointment of Claudia Z. Springer as Chapter 11 Trustee* [Epic Docket No. 180] (the "Trustee Order");

WHEREAS, on May 20, 2025, the Bankruptcy Court entered the *Order (I) Approving the Sale of Neuron Fuel, Inc.'s Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith and (III) Granting Related Relief* [Epic Docket No. 723] (the "Neuron Fuel Sale Order"), and the *Order (I) Approving the Sale of Epic! Creations, Inc.'s Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving the*

---

[1]    Capitalized terms used but not otherwise defined herein have the meaning set forth in the Epic Plan or the Alpha Plan, as applicable.

*Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith and (III) Granting Related Relief* [Epic Docket No. 724] (the "Epic Sale Order");

WHEREAS, the Plans contemplate that a Plan Administrator will be appointed as of the Effective Date (as defined below) to administer the Plans in accordance with the terms of the Plans and this Agreement and to take such other actions as may be authorized under the Plans and this Agreement;

WHEREAS, the Plans provide that the Plan Administrator will, among other things, retain, preserve, liquidate, and distribute the Retained Assets and pursue, enforce, and litigate the Retained Causes of Action for the benefit of the Holders of certain Claims, as further set forth in the Plans;

WHEREAS, on [●] [●], 2025, the Bankruptcy Court entered an order confirming the Epic Plan [Epic Docket No. [●]] (the "Epic Confirmation Order"), and on [●] [●], 2025, the Bankruptcy Court entered an order confirming the Alpha Plan [Alpha Docket No. [●]] (the "Alpha Confirmation Order" and, together with the Epic Confirmation Order, the "Confirmation Orders");

WHEREAS, pursuant to the Plans and the Confirmation Orders, the Plans became effective on [●] [●], 2025 (the "Effective Date");

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plans; and

WHEREAS, Timothy R. Pohl has agreed to serve as the Plan Administrator in accordance with this Agreement and the Plans.

NOW, THEREFORE**,** in consideration of the foregoing and the covenants and agreements set forth herein, as well as the relevant provisions of the Plans, the parties hereto agree as follows:

## ARTICLE I

## ACCEPTANCE AND APPOINTMENT; FIDUCIARY STATUS

**Section 1.1    Acceptance and Appointment**.  Timothy R. Pohl hereby (a) accepts appointment as the Plan Administrator as of the Effective Date and (b) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plans, this Agreement, orders of the Bankruptcy Court, and applicable law, in each case, on and after the Effective Date.  Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plans, or the Confirmation Orders, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to his or her position as such.

**Section 1.2    Fiduciary**.  On and after the Effective Date, the Plan Administrator shall, subject to the powers and authority of the Wind-Down Debtors Oversight Committee, act as the sole director and sole officer of each of the Wind-Down Debtors and the exclusive representative of the Estates of the Wind-Down Debtors.  The Plan Administrator shall perform its obligations consistent with the Plans, this Agreement and applicable orders of the Bankruptcy Court.

2

Pursuant to the Plans, the Plan Administrator shall act in a fiduciary capacity on behalf of the interest of all Holders of Claims that will receive distributions pursuant to the Plans.

**ARTICLE II**

**GENERAL POWERS, RIGHTS AND OBLIGATIONS**
**OF THE PLAN ADMINISTRATOR**

**Section 2.1    General Powers**.  On and after the Effective Date, subject in each instance to the terms and conditions of the Plans, the Confirmation Orders and any further order of the Bankruptcy Court, the Plan Administrator shall have the following rights, powers, duties and responsibilities:

(a)    Except as otherwise provided in the Plans, the Confirmation Orders or in this Agreement, the Plan Administrator shall control and exercise authority over the Wind-Down Debtor Assets, over the acquisition, management and disposition thereof and over the management and conduct of the affairs of the Wind-Down Debtors.  The Plan Administrator will be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  To the extent necessary, on and after the Effective Date, the Plan Administrator, in its capacity as Plan Administrator, shall be deemed to be a judicial substitute for the applicable Debtors as the party in interest in the Chapter 11 Cases, under the Plans, or in any judicial proceeding or appeal to which any of the Debtors is a party. For the avoidance of doubt and notwithstanding anything in this Agreement to the contrary, the powers and authority of the Plan Administrator shall in all respects be subject to the terms of the Plans and the Confirmation Orders.  The Plan Administrator shall execute all agreements and other documents on behalf of the Wind-Down Debtors with the signature "as Plan Administrator".

(b)    The Plan Administrator shall have control over the day-to-day decisions and operations of the Wind-Down Debtors except as specifically provided for in the Plans, the Confirmation Orders or this Agreement.  To the extent the Wind-Down Debtors Oversight Committee and Plan Administrator disagree regarding a proposed action by, or course of conduct for, the Wind-Down Debtors that is expressly subject to the consent of the Wind-Down Debtors Oversight Committee, the Wind-Down Debtors Oversight Committee shall control; *provided, however*, the Plan Administrator retains the right to challenge the ultimate decision(s) of the Wind-Down Debtors Oversight Committee in the event that the Plan Administrator reasonably believes such action or course of conduct would amount to a violation of his or her duties or obligations hereunder by motion to the Bankruptcy Court.  The Plan Administrator, in seeking such Bankruptcy Court determination, shall certify that the parties met and conferred (or the Plan Administrator unsuccessfully pursued a meet and confer) regarding such proposed action or course of conduct in good faith and were unable to reach resolution.  The Bankruptcy Court shall retain jurisdiction regarding any such dispute.

(c)    In connection with the management of the Wind-Down Debtors and implementation of the Plans on behalf of the Wind-Down Debtors, the duties and powers of the Plan Administrator shall include any and all powers and authority to implement the Plans and to make distributions thereunder and Wind-Down the business and affairs of the Wind-Down

Debtors, all without the need for further order of the Bankruptcy Court, in each case subject to the consent of the Wind-Down Debtors Oversight Committee to the extent such consent is required pursuant to the Plans, the Confirmation Orders, or this Agreement, including, but not limited to:

    (i)    implementing the Wind-Down and making distributions contemplated by the Plans;

    (ii)    marshalling, collecting, marketing for sale, liquidating and winding down any of the Debtors' assets constituting the Wind-Down Debtor Assets;

    (iii)    overseeing the accounts of the Debtors and the Wind-Down Debtors and the Wind-Down and dissolution of the Debtors and the Wind-Down Debtors;

    (iv)    implementing, pursuing, and adhering to the terms of the Plans, the Confirmation Orders, any Purchase Agreement and Sale Order, and any related documents;

    (v)    receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and, where appropriate, causing the Wind-Down Debtors to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtors to invest any moneys held as Wind-Down Debtor Assets;

    (vi)    opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtors, including, in the Plan Administrator's discretion, separate bank accounts for each of the Debtors;

    (vii)    establishing a Liquidating Trust or similar vehicle to the extent that the Plan Administrator, in consultation with the Wind-Down Debtors Oversight Committee, deems it to be reasonably necessary or beneficial in effectuating the Wind-Down;

    (viii)    entering into any agreement or executing any document or instrument required by or consistent with the Plans or the Confirmation Orders, and performing all obligations thereunder;

    (ix)    protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Retained Causes of Action) vested in the Wind-Down Debtors by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(x)     reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(xi)    seeking the examination of any Person or Entity pursuant to Federal Rule of Bankruptcy Procedure 2004 or otherwise;

(xii)   entering into a financing facility, including the Wind-Down Financing Facility, to fund the pursuit of the Retained Causes of Action or otherwise facilitate the Wind-Down;

(xiii)  retaining professionals, disbursing agents, and other agents, independent contractors, and third parties on behalf of the Wind-Down Debtors, the Plan Administrator and/or the Wind-Down Debtors Oversight Committee, and paying the reasonable compensation thereof;

(xiv)   paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets;

(xv)    investigating, reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Retained Causes of Action;

(xvi)   reviewing and compelling turnover of the Debtors' or the Wind-Down Debtors' property;

(xvii)  calculating and making all distributions to the Holders of Allowed Claims against each Debtor, as provided for in, or contemplated by, the Plans;

(xviii) withholding from the amount distributable to any Person or Entity the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of its agents or professionals, may be required to be withheld from such distribution under the income tax or other Laws of the United States or of any state or political subdivision thereof;

(xix)   in reliance upon the Debtors' Schedules, the official register of Claims maintained in the Chapter 11 Cases, and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and

administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtors;

(xx)    making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtors, and filing tax returns for the Debtors, the Wind-Down Debtors, or the Liquidating Trust (if applicable) pursuant to and in accordance with the Plans, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtors, as applicable; *provided, however*, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(xxi)    abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

(xxii)    seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(xxiii)    establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtors as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtors;

(xxiv)    purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(xxv)    undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtors', the Liquidating Trust's (if applicable), or the Plan Administrator's duties under the Plans, including reporting and making required payments of Statutory Fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

6

(xxvi)    retaining, terminating, appointing, hiring, or otherwise employing employees, personnel, management, and directors at any of the Wind-Down Debtors to the extent necessary to carry out the purposes of the Plans, including, without limitation, to address any disputes between the Wind-Down Debtors;

(xxvii)    exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plans, the Confirmation Orders, any Purchase Agreement, and this Agreement; and

(xxviii)    taking all other actions consistent with the provisions of the Plans, the Confirmation Orders, and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtors.

(d)    All Cash or other property held or collected by the Wind-Down Debtors shall be used solely for the purposes contemplated by the Plans and this Agreement.

(e)    The Plan Administrator shall not authorize the Wind-Down Debtors to enter into or engage in any trade or business or use or dispose of any Wind-Down Debtor Assets in furtherance of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Plans.

(f)    From and after the Effective Date, the Plan Administrator, on behalf of the Wind-Down Debtors, shall be solely authorized, with respect to those Claims or Interests which are not Allowed hereunder or by Bankruptcy Court order, to review, and where appropriate, allow or object to Claims and (if applicable) Interests, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtors.  Pursuant to the Plans, the Wind-Down Debtors reserve the right to seek an order of the Bankruptcy Court extending any Claims Objection Deadline.

(g)    When all Disputed Claims have become Allowed or Disallowed, all Retained Causes of Action have been pursued, settled, resolved or abandoned, and all remaining Cash has been distributed in accordance with the Plans (or the Plan Administrator otherwise determines in its reasonable business judgment that the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to complete its duties), the Plan Administrator (with the consent of the Wind-Down Debtors Oversight Committee) shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.  Upon a certification to be filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plans and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of

state for the state in which each Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors.

**Section 2.2    Pursuit and Resolution of Causes of Action.**    Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Wind-Down Debtors shall, with the consent of the Wind-Down Debtors Oversight Committee, have the right to investigate, pursue or not pursue, compromise, or settle any dispute with respect to the Wind-Down Debtor Assets (including the Retained Causes of Action). On and after the Effective Date, the Wind-Down Debtors may, without further Bankruptcy Court approval but with the consent of the Wind-Down Debtors Oversight Committee, commence, litigate, and settle any Retained Causes of Action or Claims relating to any Wind-Down Debtor Assets, or rights to payment or Claims that belong to each Debtor as of the Effective Date, or are instituted by the Wind-Down Debtors on or after the Effective Date, except as otherwise expressly provided herein or in the Plans. The Wind-Down Debtors shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code. In pursuing any Claim, right, or Cause of Action, including the Retained Causes of Action, the Wind-Down Debtors (and any Liquidating Trust, as applicable) shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action may be brought under section 546 of the Bankruptcy Code. For the avoidance of doubt, the Plan Administrator may seek (but is not required to seek or obtain) Bankruptcy Court approval of any settlement of any Retained Causes of Action.

**Section 2.3    Retention of Attorneys and Other Professionals by Plan Administrator**. The Plan Administrator shall have the right to retain the services of attorneys, accountants, consultants, financial advisors and other professionals that, in the discretion of the Plan Administrator, with the consent of the Wind-Down Debtors Oversight Committee, are necessary to assist the Plan Administrator in the performance of his or her duties, including any professional employed by the Debtors, the Chapter 11 Trustee, the Prepetition Agent, the DIP Agent, the DIP Lenders, the Prepetition Term Loan Lenders or other parties in interest in the Chapter 11 Cases, without notice or approval of the Bankruptcy Court. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors upon the submission of statements to the Plan Administrator without notice or approval of the Bankruptcy Court. Effective as of the Effective Date, Quinn Emanuel Urquhart & Sullivan, LLP and Young Conaway Stargatt & Taylor, LLP shall be counsel to the Plan Administrator.

**Section 2.4    Privileges**. On the Effective Date, any attorney client privilege, work product protections, or other privilege or immunity held by any of the Debtors, including any predecessors, committee or sub-committees, or other designated Entities or Persons (including, for the avoidance of doubt, the Chapter 11 Trustee) shall vest in and be succeeded to by the Wind-Down Debtors. The Plan Administrator, on behalf of the Wind-Down Debtors and with the consent of the Wind-Down Debtors Oversight Committee, shall have exclusive authority to waive or not waive the Debtors' and Wind-Down Debtors' privileges. For the avoidance of doubt, the Plan Administrator's receipt of such information (or the transfer of any privileged books and records provided to the Plan Administrator) shall not waive any privileges and such privileges are fully preserved. Nothing herein or in the Plans shall preclude the Wind-Down Debtors Oversight Committee from obtaining information reasonably necessary to perform its obligations set forth

in the Plans or this Agreement, nor shall the Wind-Down Debtors Oversight Committee's receipt of privileged information from the Plan Administrator be deemed to waive any privilege otherwise applicable and belonging to the Plan Administrator and/or the Wind-Down Debtors. The Chapter 11 Trustee, the Prepetition Agent, the DIP Agent, the DIP Lenders, the Prepetition Term Loan Lenders, and the professionals of any of the foregoing shall be permitted to share any work product, analysis or discovery obtained relating to the Retained Causes of Action or other matters relevant to the Wind-Down with the Plan Administrator, the Wind-Down Debtors Oversight Committee, and its and their respective advisors, without waiver of any privileges.

Section 2.5    **Cooperation and Access to Information**.  On and after the Effective Date, the Wind-Down Debtors shall maintain documents in accordance with the Debtors' standard document retention policies, if any, as such policies may be altered, amended, modified, or supplemented by the Wind-Down Debtors, subject to the approval of the Wind-Down Debtors Oversight Committee.  The Debtors and the Chapter 11 Trustee, and any directors and officers that are Released Parties, as applicable, shall use their commercially reasonable best efforts to provide cooperation necessary to maximize the value of the Retained Causes of Action and any Claims or Causes of Action, including, without limitation (a) providing (or directing third parties to provide) the Plan Administrator and its professionals, or other parties and their professionals at the direction of the Plan Administrator, with full access to the Debtors' and Wind-Down Debtors' books, records, and other documents that are relevant to the Retained Causes of Action or other matters relevant to the Wind-Down (including privileged documents and materials insofar as such documents and materials are relevant to the Retained Causes of Action or other maters relevant to the Wind-Down), (b) providing the Plan Administrator and its professionals with reasonable access to employees and agents of the Debtors and Wind-Down Debtors (including, for the avoidance of doubt, the commercially reasonable best efforts from any directors or officers that are "Released Parties" under the Plans to cooperate), as applicable, for fact finding, consultation, interviews, and as witnesses (including as needed to authenticate documents where appropriate) that are relevant to the Retained Causes of Action or other matters relevant to the Wind-Down, (c) taking commercially reasonable measures to retain documents relevant to the Retained Causes of Action, consistent with the "Cooperation" provisions in the Plans, and (d) providing commercially reasonable assistance to maximize the value of the Retained Causes of Action and Claims and Causes of Action against any parties that are not "Released Parties," including, for the avoidance of doubt, the Excluded Parties, as reasonably determined by the Wind-Down Debtors Oversight Committee, the Plan Administrator, or any of their respective professionals.

In connection with this engagement, upon reasonable request, the Plan Administrator shall have complete and full access to all relevant information that the Plan Administrator deems appropriate.  It is understood that the Plan Administrator (a) is relying solely upon the information supplied by the Debtors, the Chapter 11 Trustee, and their respective representatives without assuming any responsibility for independent investigation or verification thereof, and (b) shall have the absolute and unconditional right to rely on the information provided by the Debtors, the Chapter 11 Trustee, and their respective representatives and shall not incur any liability by relying on such information.

The Plan Administrator shall be permitted, in his or her discretion, with the consent of the Wind-Down Debtors Oversight Committee, to abandon, destroy or otherwise dispose of any books

and records of the Debtors and/or Wind-Down Debtors that the Plan Administrator deems not necessary for the continued administration of the Plans or the Wind-Down, or required to be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability for same.

To the extent that the Wind-Down Debtors or the Plan Administrator request cooperation from the Chapter 11 Trustee or a Professional after the Effective Date that will cause such Professional or the Chapter 11 Trustee to expend more than a de minimis amount of time or to incur out-of-pocket costs to comply with such request, such Professional or the Chapter 11 Trustee shall not be required to provide the requested cooperation without compensation at such Professional's standard hourly rates and reimbursement for such actual expenses.

**Section 2.6**      **Potential Conflicts**.  Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the performance of any aspect of their duties under this Agreement, the issue shall first be brought to the attention of the Wind-Down Debtors Oversight Committee, and then to the Bankruptcy Court for consideration, if bringing to the Bankruptcy Court's attention is deemed appropriate by the Wind-Down Debtors Oversight Committee.

**Section 2.7**      **Liquidating Trust**.  The Plan Administrator, in his or her discretion (subject to the terms of the Plans and the Confirmation Orders and with the prior consent of the Wind-Down Debtors Oversight Committee) shall have the right to establish a Liquidating Trust to the extent the Plan Administrator determines that a Liquidating Trust would more efficiently Wind-Down the Estates, or otherwise maximize value for the Holders of Claims entitled to distributions from the Wind-Down Debtors under the Plans.  The rights of the Wind-Down Debtors Oversight Committee shall equally apply with respect to a Liquidating Trust in the event a Liquidating Trust is formed.

## ARTICLE III

## THE WIND-DOWN DEBTORS OVERSIGHT COMMITTEE[2]

**Section 3.1**      **Formation and Membership of the Wind-Down Debtors Oversight Committee**.  An oversight committee (the "Wind-Down Debtors Oversight Committee") shall be formed as of the Effective Date to oversee the Wind-Down (including certain actions of the Plan Administrator) as set forth in and pursuant to the terms of the Plans and this Agreement.   The initial Wind-Down Debtors Oversight Committee shall consist of five voting members and one non-voting observational member to be identified in the Plan Supplement prior to the Effective Date and appointed as follows:

>    (i)      two (2) voting members appointed by Affiliates of Redwood Capital Management (each, a "Redwood Nominee");

---

[2]      [**NTD**: Governance structure subject to ongoing review/discussion.]

       (ii)      one (1) voting member appointed by Affiliates of Veritas Capital (the "<u>Veritas Nominee</u>");

       (iii)     one (1) voting member appointed by Affiliates of HG Vora Capital Management (the "<u>HG Vora Nominee</u>");

       (iv)     one (1) voting member appointed by the Holders of Allowed Prepetition Term Loan Claims representing more than 50% of the aggregate amount of all Allowed Prepetition Term Loan Claims held by members of the SteerCo (as defined below) who do not at such time have an initial appointment right pursuant to Sections 3.1(i)–(iii) (the "<u>SteerCo Nominee</u>"); and

       (v)      one (1) non-voting member appointed by the Prepetition Agent (the "<u>Agent Nominee</u>").

**Section 3.2     Appointment Rights; Vacancies on the Wind-Down Debtors Oversight Committee**.  Vacancies on the Wind-Down Debtors Oversight Committee shall be filled by a Person designated by the applicable nominating party(ies) (*e.g.*, if a Redwood Nominee resigns from the Wind-Down Oversight Committee, such vacancy shall be filled by Affiliates of Redwood Capital Management), subject to the following:

       (i)      in the event that any of Redwood Capital Management, Veritas Capital or HG Vora Capital Management reduces its Position to less than one-half (1/2) of its Position as of the Effective Date, then one (1) appointee of such institution shall be automatically removed from the Wind-Down Debtors Oversight Committee;

       (ii)     in the event that Redwood Capital Management further reduces its Position to less than one-quarter (1/4) of its Position as of the Effective Date, then the second Redwood Nominee shall be automatically removed from the Wind-Down Debtors Oversight Committee;[3] and

       (iii)     in the event that GLAS Trust Company, LLC, or any of its affiliates, is terminated or replaced as the Prepetition Agent, the Agent Nominee shall be replaced by any successor agent.

Any vacancy resulting from Sections 3.2(i)–(ii) shall be filled by a new member appointed by the Holders of Allowed Prepetition Term Loan Claims representing more than 50% of the aggregate amount of all Allowed Prepetition Term Loan Claims held by Affiliates of Redwood Capital

---

[3]    For purposes of this Section 3.2, "Position" shall mean, as a percentage of the total amount of Prepetition Term Loan Claims currently outstanding as of any given date, the cumulative amount held by any such institution and any affiliate(s) thereof.

Management, Veritas Capital, HG Vora Capital Management, Värde Partners, Silver Point Capital, and HPS Investment Partners (collectively, the "SteerCo") that do not maintain an individual appointment right pursuant to Sections 3.1 and 3.2 hereof,[4] except that to the extent only one Redwood Nominee remains, also including in the aggregate amount of Allowed Prepetition Term Loan Claims held by Redwood Capital Management in excess of one-quarter (1/4) of its Position as of the Effective Date; *provided*, *however*, that in the event the aggregate Position of the SteerCo is reduced to less than one-quarter (1/4) of all Allowed Prepetition Term Loan Claims, then any vacancy shall be filled by majority vote of the Holders of Allowed Prepetition Term Loan Claims. No reduction in Position as set forth in this Section 3.2 shall be deemed to occur solely on account of a distribution pursuant to the Plans. The Plan Administrator and the Wind-Down Debtors Oversight Committee shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Debtors Oversight Committee for cause or an order otherwise reconstituting the Wind-Down Debtors Oversight Committee for cause.

**Section 3.3     Term of Service**. Upon the earlier to occur of (a) the completion of all the Plan Administrator's duties, responsibilities and obligations under the Plans and this Agreement, and (b) dissolution of all of the Wind-Down Debtors in accordance with the Plans, the Wind-Down Debtors Oversight Committee shall be automatically disbanded and its members shall have no further duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Plans and their implementation.

**Section 3.4     General Oversight and Consent of the Wind-Down Debtors Oversight Committee**. On and after the Effective Date, subject in each instance to the terms and conditions of the Plans, the Confirmation Orders and any further order of the Bankruptcy Court, the Wind-Down Debtors Oversight Committee shall function analogous to a board of directors (or other comparable governing body) with the rights, powers, duties and responsibilities to oversee the Plan Administrator and the Wind-Down of the Wind-Down Debtors. The Wind-Down Debtors Oversight Committee shall stay informed (through any means determined to be appropriate by the Wind-Down Debtors Oversight Committee in coordination with the Plan Administrator and any professionals of each of the foregoing) regarding the administration of the Wind-Down and shall assist the Plan Administrator in developing a strategy to maximize the value of the Wind-Down Debtor Assets for the benefit of the Holders of Claims entitled to distributions from the Wind-Down Debtors under the Plans. All privileges, immunities, and protections afforded a board of directors (or other comparable governing body), including without limitation, the attorney-client privilege, work-product doctrine, and director or fiduciary indemnities, are expressly preserved.

The Wind-Down Debtors Oversight Committee shall maintain an affirmative consent right over any final decisions or actions that the Wind-Down Debtors Oversight Committee and/or the Plan Administrator determine to be material to the administration of the Wind-Down, including,

---

[4]     By way of illustration, if the Veritas Nominee is removed from the Wind-Down Debtors Oversight Committee pursuant to Section 3.2(i) hereof, but the HG Vora Nominee and at least one Redwood Nominee have not been removed from the Wind-Down Debtors Oversight Committee, then the vacancy resulting from the Veritas Nominee's removal would be filled by the Holders of Allowed Prepetition Term Loan Claims representing more than 50% of the aggregate amount of all Allowed Prepetition Term Loan Claims held by Affiliates of Veritas Capital, Värde Partners, Silver Point Capital, and HPS Investment Partners.

for the avoidance of doubt, (a) making any material distributions to the Holders of Claims (including any reserves withheld from such distribution), (b) determining to prosecute, enforce, settle or abandon any material Retained Causes of Action, (c) determining to sell, otherwise monetize, or abandon any material Wind-Down Debtor Assets (other than the Retained Causes of Action), (d) establishing any Liquidating Trust or similar vehicle, and (e) entering into any financing arrangement (other than the Wind-Down Financing Facility, but including any incremental borrowing thereunder).    Except as provided otherwise by this Agreement, the Wind-Down Debtors Oversight Committee shall act by majority vote.  For the avoidance of doubt, the Plan Administrator shall have the sole discretion to make decisions or take actions with respect to any immaterial or *de minimis* Retained Causes of Action and other Wind-Down Debtor Assets; *provided* that the Wind-Down Debtors Oversight Committee may determine in its sole discretion to require its consent or otherwise issue a direction with respect to any matters relevant to the Wind-Down.

Section 3.5    **Reporting to the Wind-Down Debtors Oversight Committee**.  After the Effective Date, and until the Wind-Down Debtors Oversight Committee is disbanded, the Plan Administrator shall provide the Wind-Down Debtors Oversight Committee with any reports and other information reasonably requested by the Wind-Down Debtors Oversight Committee from time to time (including any reports that are filed with the Bankruptcy Court on behalf of the Wind-Down Debtors).  Nothing herein or in the Plans shall preclude the Wind-Down Debtors Oversight Committee from requesting additional information from the Plan Administrator in the exercise of the Wind-Down Debtors Oversight Committee's duties under the Plans or this Agreement.

Section 3.6    **Fiduciary Responsibilities**.  The voting members of the Wind-Down Debtors Oversight Committee shall maintain the same fiduciary responsibilities as the Plan Administrator.

Section 3.7    **The Chapter 11 Trustee; Control Rights**.  Notwithstanding anything to the contrary in the Plans or the Confirmation Orders, for so long as the Chapter 11 Trustee remains a defendant or plaintiff in any lawsuit related to the Epic Debtors, the Epic Wind-Down Debtors, or the Epic Estates, including the India Lawsuit, the Chapter 11 Trustee, with the advice of her counsel, shall have the right to control the defense or prosecution of such lawsuit; *provided that*, on and after the Effective Date of the Epic Plan, the Plan Administrator and the Wind-Down Debtors Oversight Committee shall have the right to co-control the defense or prosecution of such lawsuit with the Chapter 11 Trustee, with all decisions being made with the agreement of both the Chapter 11 Trustee and the Plan Administrator.    The Chapter 11 Trustee, the Plan Administrator, and the Wind-Down Debtors Oversight Committee agree to coordinate and cooperate in good faith with respect to any actions or inactions to be taken in such lawsuit, and to the extent of any disagreement with respect to such actions or inactions, upon motion by the Chapter 11 Trustee or the Plan Administrator, the Chapter 11 Trustee and the Plan Administrator agree to allow the Bankruptcy Court to decide the dispute.  For the avoidance of doubt, the reference to the Chapter 11 Trustee continues to refer to Ms. Springer following the Effective Date.

Section 3.8    **Potential Conflicts.**    In the event that any matter under review or consideration by the Wind-Down Debtors Oversight Committee may involve a conflict of interest with respect to any member of the Wind-Down Debtors Oversight Committee, such member shall

disclose to the other members such potential conflict and either (a) voluntarily recuse itself from participating in discussions and voting on the matter, or (b) be excluded from voting on such matter by a unanimous vote of the other members.  In the event there is a disagreement regarding whether a matter involves a conflict of interest, such disagreement may be brought to the Bankruptcy Court for resolution by any member of the Wind-Down Debtors Oversight Committee.

Section 3.9    **No Compensation**.  Members of the Wind-Down Debtors Oversight Committee shall receive no compensation from the Wind-Down Debtors or the Plan Administrator on account of their membership on the Wind-Down Debtors Oversight Committee except for reimbursement of their reasonable and documented out of pocket expenses (which, for the avoidance of doubt, shall not include the fees or expenses of any professionals retained by any individual member of the Wind-Down Debtors Oversight Committee to represent such individual member).

Section 3.10    **Professionals.**  The Wind-Down Debtors Oversight Committee shall be entitled to retain professionals (without further notice or approval by the Bankruptcy Court), paid by the Wind-Down Debtors (without further notice or approval by the Bankruptcy Court), to advise the Wind-Down Debtors Oversight Committee, which professionals may be Professionals or other advisors who previously advised the Chapter 11 Trustee, the Debtors, the Prepetition Agent, the DIP Agent, the DIP Lenders, and/or the Prepetition Term Loan Lenders.

Section 3.11    **Common Interest**.    The Plan Administrator and Wind-Down Debtors Committee acknowledge and agree that they share a common legal interest with respect to the implementation of the Plans.  The Parties further agree that any communications, documents, or information exchanged between them falling within the scope of this common interest shall be protected by all applicable privileges and protections, including as set forth in Section 3.4 of this Agreement.  For the avoidance of doubt, the Wind-Down Debtors Oversight Committee's retention of professionals, including counsel, shall not on its own be construed as creating an adversarial relationship with the Wind-Down Debtors or the Plan Administrator.

## ARTICLE IV

## TERM OF SERVICE, RESIGNATION AND REMOVAL OF THE PLAN ADMINISTRATOR; APPOINTMENT OF SUCCESSOR; STANDARD OF CARE; COMPENSATION OF PLAN ADMINISTRATOR AND PROFESSIONALS

Section 4.1    **Term of Service**.  The Plan Administrator shall serve in such capacity through the earlier of (a) the date on which the Wind-Down Debtors are dissolved and (b) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve.

Section 4.2    **Resignation of the Plan Administrator**.  The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Wind-Down Debtors Oversight Committee and the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be chosen by the Wind-Down Debtors Oversight Committee in accordance with this Agreement.

**Section 4.3    Removal of Plan Administrator**.   The Wind-Down Debtors Oversight Committee shall have the authority to remove the Plan Administrator at any time, with or without cause.  During the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator, the Plan Administrator shall continue to discharge its rights, obligations, and duties set forth in the Plans and this Agreement.

**Section 4.4    Continuity; Appointment of a Successor Plan Administrator**.

(a)    The death, incapacity, dissolution, resignation, or removal of the Plan Administrator shall not operate to terminate any agency or employment created by this Agreement or invalidate any action theretofore taken by the Plan Administrator.  In the event of a vacancy by reason of death, incapacity, dissolution, resignation or removal of the Plan Administrator or prospective vacancy by reason of resignation or removal, the Wind-Down Debtors Oversight Committee shall appoint a successor Plan Administrator and the Wind-Down Debtors shall file a notice with the Bankruptcy Court with respect to any successor Plan Administrator.

(b)    If the Wind-Down Debtors Oversight Committee has not appointed a successor Plan Administrator within thirty (30) days of the occurrence or effectiveness, as applicable, of the prior Plan Administrator's death, incapacity, dissolution, resignation or removal, then the Bankruptcy Court, upon the motion of counsel to the Plan Administrator or another party in interest, shall approve a successor to serve as the Plan Administrator.

(c)    A successor Plan Administrator, without any further action or approval, shall (i) become fully vested with all the rights, powers, duties, and obligations of the Plan Administrator and (ii) become the sole director and sole officer of each of the Wind-Down Debtors; *provided*, *however*, that no Plan Administrator shall be liable for the acts or omissions of any prior or subsequent Plan Administrator.

**Section 4.5    Standard of Care**.   None of the Plan Administrator, members of the Wind-Down Debtors Oversight Committee, their respective affiliates and agents, professionals or any of their respective officers, directors and employees to the fullest extent permitted by applicable law, shall be personally liable to any Person or Entity for actions taken under or pursuant to this Agreement or the Plans, except to the extent that its, his, or her own acts constitutes criminal behavior, gross negligence, fraud, or willful misconduct. For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Plans, the Plan Administrator and the members of the Wind-Down Debtors Oversight Committee, each in their capacities as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

**Section 4.6    Indemnification**.

(a)    The Wind-Down Debtors shall indemnify and hold harmless (a) the Plan Administrator (in his or her capacity as such and as sole officer and sole director of each of the Wind-Down Debtors and representative of the Estates), (b) the members of the Wind-Down Debtors Oversight Committee, and (c) all professionals retained by the Wind-Down Debtors or Wind-Down Debtors Oversight Committee, each in their capacities as such (collectively, the

"Indemnified Parties" and each, an "Indemnified Party"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to costs and expenses of investigating, analyzing and responding to claims, and attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Indemnified Party's criminal behavior, gross negligence, fraud or willful misconduct, with respect to the Wind-Down Debtors or the implementation or administration of the Plans or this Agreement.  To the extent an Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced by the Wind-Down Debtors (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined through a Final Order that such Indemnified Party is not entitled to be indemnified therefore).  The indemnification provisions of the Plans or this Agreement shall remain available to and be binding upon any former Plan Administrator or former member of the Wind-Down Debtors Oversight Committee (or the estate of any decedent Plan Administrator or member of the Wind-Down Debtors Oversight Committee) and shall survive the termination of this Agreement.  For the avoidance of doubt, the Wind-Down Debtors shall be jointly and severally liable for any indemnification obligations provided for herein or in the Plan.

(b)    For the avoidance of doubt, the Wind-Down Debtors will also be subject to the terms of that indemnification commitment outlined in Article V.J of the Epic Plan.

**Section 4.7    Exculpation**.  Neither the Plan Administrator, the members of the Wind-Down Debtors Oversight Committee, nor any professionals retained by the Wind-Down Debtors or Wind-Down Debtors Oversight Committee, each in its capacity as such (collectively, the "Exculpated Parties" and each, an "Exculpated Party") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Exculpated Party's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plans, the Confirmation Orders, any other order of the Bankruptcy Court or applicable law or as may arise by reason of any action, omission or error of an Exculpated Party, and Persons dealing or having any relationship with the Wind-Down Debtors and/or the Estates shall have recourse only to the Wind-Down Debtor Assets and shall look only to the Wind-Down Debtor Assets to satisfy any liability or other obligations incurred in carrying out the terms of the Plans and this Agreement, and the Exculpated Parties shall not have any personal obligation to satisfy any such liability; *provided*, *however*, that the foregoing limitations shall not apply to any acts or omissions ultimately and finally determined by a final and non-appealable order of a court of competent jurisdiction to be the direct result of such Exculpated Party's criminal behavior, gross negligence, fraud or willful misconduct.  None of the Exculpated Parties is deemed to be responsible for any other Exculpated Party's actions or inactions.  The Exculpated Parties may, in connection with the performance of their functions hereunder and under the Plans, and in their sole and absolute discretion, consult with professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals or any order of the Bankruptcy Court.  Notwithstanding such authority, such Exculpated Parties shall

16

not be under any obligation to consult with any professionals and their determination not to do so shall not result in the imposition of liability, unless such determination is based upon criminal behavior, gross negligence, fraud or willful misconduct as determined by a final and non-appealable order of a court of competent jurisdiction; *provided* that in no event will any such person be liable for punitive, exemplary, consequential, or special damages under any circumstances. Any action taken or omitted to be taken by the Exculpated Parties after the Effective Date on the advice of counsel or with the approval of the Bankruptcy Court will conclusively be deemed not to constitute criminal behavior, gross negligence, fraud, or willful misconduct. The foregoing indemnification and exculpation with respect to any Exculpated Party shall survive the termination of such Exculpated Party from the capacity for which it was deemed indemnified and exculpated and the termination or modification of this Agreement.

      **Section 4.8**     **Insurance**. The Plan Administrator is authorized (but not required) to obtain and pay at the expense of the Wind-Down Debtors all reasonably necessary insurance coverage for itself, the Wind-Down Debtors and the Wind-Down Debtors Oversight Committee and its members, and their respective agents, representatives, and employees or independent contractors, in connection with the Chapter 11 Cases and the Wind-Down of the Wind-Down Debtors (in the form of any errors and omissions policy or otherwise), including, but not limited to, coverage with respect to commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors, which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator, in consultation with the Wind-Down Debtors Oversight Committee, after the termination of this Agreement.

      **Section 4.9**     **Burden of Proof**. In any proceeding brought by the Wind-Down Debtors, any member of the Wind-Down Debtors Oversight Committee (whether current or former), or any other Person who is bound by this Agreement challenging any action, determination or failure to act of the Plan Administrator or the Wind-Down Debtors Oversight Committee in the Plan Administrator's or Wind-Down Debtors Oversight Committee's discharge of its respective duties under this Agreement, the Person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted criminal behavior, gross negligence, fraud or willful misconduct.

      **Section 4.10**     **Reliance by the Plan Administrator and Wind-Down Debtors Oversight Committee**. The Plan Administrator and the Wind-Down Debtors Oversight Committee (the "Reliance Parties" and each, a "Reliance Party") may absolutely rely on, and shall be fully protected in acting or refraining from acting if it relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that each of them, as applicable, has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of criminal behavior, gross negligence, fraud, or willful misconduct in respect of the Reliance Parties' duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Agreement, each of them, as applicable, may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if

applicable, not acting) thereon. The Reliance Parties may consult with counsel and other professionals with respect to matters the Reliance Parties reasonably believe to be in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by a Reliance Party. A Reliance Party shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon. The Reliance Parties shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plans or any other document executed in connection therewith, and the Reliance Parties shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

Section 4.11 **Reliance by Entities Dealing with the Plan Administrator**. In the absence of actual knowledge to the contrary, any Person or Entity dealing with the Wind-Down Debtors shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Wind-Down Debtors, and shall have no obligation to inquire into the existence of such authority.

Section 4.12 **Compensation of Plan Administrator and Professionals**.

(a) For its services, the Plan Administrator shall receive fair and reasonable compensation by way of a monthly fee in the amount of $75,000 per month. Such monthly fee shall be payable in advance on the first day of each month beginning with the first full month following the Effective Date.

(b) In addition to the fees describe above, the Plan Administrator shall be entitled to reimbursement of all reasonable and documented costs and expenses.

(c) The Plan Administrator's compensation structure may be modified from time to time by agreement between the Plan Administrator the Wind-Down Debtors Oversight Committee.

(d) All professionals retained by the Wind-Down Debtors or Wind-Down Debtors Oversight Committee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses reasonably incurred in rendering such services. Such professionals shall deliver to the Plan Administrator (and the Wind-Down Debtors Oversight Committee if requested) reasonably detailed monthly invoices or fee statements.

(e) The payment of the fees and expenses of the Plan Administrator and professionals retained by the Wind-Down Debtors or the Wind-Down Debtors Oversight Committee shall be paid from the Wind-Down Debtor Assets in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

Section 4.13 **Information and Reporting.** In its discretion or at the request of the Wind-Down Debtors Oversight Committee, from time to time the Plan Administrator may file with the Bankruptcy Court a statement describing the progress of the Wind-Down and the activities of the Wind-Down Debtors, in such detail and covering such matters as the Plan Administrator determines is appropriate in its discretion (in consultation with the Wind-Down Debtors Oversight Committee).

## ARTICLE V

## TERMINATION

**Section 5.1    Termination**.  This Agreement shall terminate upon the dissolution of the Wind-Down Debtors and the entry of an order by the Bankruptcy Court closing the Chapter 11 Cases.  All provisions of this Agreement that expressly survive by their terms shall remain in effect in accordance with their terms.  All of the protective provisions contained in Article IV of this Agreement shall survive the termination of this Agreement and the death, dissolution, resignation or removal, as may be applicable, of the Plan Administrator, the Indemnified Parties, the Exculpated Parties, and the Reliance Parties and shall inure to the benefit of their respective heirs and assigns.

**Section 5.2    Obligations of the Plan Administrator Upon Termination**.  Upon or as soon as practicable after termination of this Agreement, the Plan Administrator shall (solely at the expense of the Wind-Down Debtors and with the consent of the Wind-Down Debtors Oversight Committee) (a) file a certificate or other document with the Bankruptcy Court stating that (i) the assets of the Wind-Down Debtors have been exhausted and final distributions of Cash have been made under the Plans or (ii) the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to continue the Wind-Down process, and (b) be deemed to have resigned as the sole officer, and sole director of each of the Wind-Down Debtors.  Upon the filing of certificate(s) described in clause (a) of the preceding sentence, the relevant Debtors and/or Wind-Down Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Wind-Down Debtors or payments to be made in connection therewith.

**Section 5.3    No Other Duties or Obligations**.  The Plan Administrator shall have no duties or obligations under law or otherwise except as set forth in this Agreement and pursuant to the Plans.  Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to the terms hereof, the Plan Administrator shall have no further duties or obligations hereunder and pursuant to the Plans.

## ARTICLE VI

## DISTRIBUTIONS

**Section 6.1    Reserves**.  Before making distributions to any to Holders of Claims, the Plan Administrator shall, in his or her reasonable discretion, ensure there are reserves in an amount sufficient to meet any and all accrued expenses and obligations of the Wind-Down Debtors, including amounts owing under the Wind-Down Financing Facility and near-term anticipated fees and expenses of the Wind-Down Debtors, including professional fees and expenses, and fees owed to the U.S. Trustee, in each case as applicable and in accordance with the Plans and the Confirmation Orders.

**Section 6.2    Distributions Under the Plans**.

(a)    Any Distributions for the benefit of Holders of Allowed Prepetition Term Loan Claims shall be made to the Prepetition Agent to be applied in accordance with the Intercreditor Agreement and the Prepetition Credit Agreement.

(b)    Distributions shall be made in accordance with the Plans and the Confirmation Orders.  With respect to all payments and distributions made under the Plans, the Plan Administrator shall cause the Wind-Down Debtors to comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants or other professionals, shall have the right to rely on the advice of such in connection with all tax and reporting matters.

(c)    Any party entitled to receive any property or distribution under the Plans shall, upon request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator, Form W-9 or, if the payee is a foreign Person, an applicable Form W-8, unless such Person is exempt under the internal revenue code and so notifies the Plan Administrator.  If such request is made by the Plan Administrator or such other Person designated by the Plan Administrator and the Claim Holder fails to comply within ninety (90) days after the request, the amount of such distribution shall irrevocably revert to the Wind-Down Debtors and any Claim in respect of such distribution shall be expunged without need of further order of the Bankruptcy Court and the Holder thereof shall be forever barred from asserting such Claim against any Debtor and their respective assets and property.  The Plan Administrator may, but is not required to, file a notice with the Bankruptcy Court indicating which Claims are to be expunged for failure to comply with such requests for tax information or on account of being unclaimed distributions.  If such information is requested, the request shall be sent to the address provided in proofs of claim submitted or, if no such form has been provided, to the last known address for such entity provided by the Debtors to the Plan Administrator.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

**Section 7.1    Descriptive Headings**.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**Section 7.2    Amendment and Waiver**.  This Agreement may be amended or modified by the Plan Administrator with the consent of the Wind-Down Debtors Oversight Committee in any way that is not inconsistent with the Plans or the Confirmation Orders and that is necessary to implement the provisions of the Plans and to facilitate the Wind-Down and maximize the value of the Wind-Down Debtor Assets (including to clarify any ambiguity or inconsistency or render the Agreement in compliance with its stated purposes).

**Section 7.3    Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the rules of conflict of laws

of the State of Delaware or any other jurisdiction that would result in the application of law of a jurisdiction other than Delaware.

Section 7.4    **Counterparts; Effectiveness**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same agreement. Executed copies of this Agreement may be delivered by facsimile, electronic mail, PDF or other electronic means and shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.5    **Severability; Validity**.  If any provision of this Agreement or the application thereof to any Entity or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other Entities or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

Section 7.6    **Notices**.  Any notice or other communication hereunder shall be deemed given upon (a) confirmed delivery by a standard overnight carrier or when delivered by hand, or (b) the expiration of five (5) Business Days after the date mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice), and in all instances shall include a concurrent copy via e-mail to the e-mail addresses set forth below:

> **If to the Plan Administrator**:
>
> Timothy R. Pohl
> Attn: [●]
> [ADDRESS]
> [ADDRESS]
> Tel: [●]
> Email: [●]
>
> with a copy to counsel:
>
> Quinn Emanuel Urquhart & Sullivan, LLP
>
> Attn: Susheel Kirpalani (susheelkirpalani@quinnemanuel.com), Benjamin Finestone (benjaminfinestone@quinnemanuel.com), Daniel Holzman (danielholzman@quinnemanuel.com), and Jianjian Ye (jianjianye@quinnemanuel.com);
>
> and
>
> Young Conaway Stargatt & Taylor, LLP
>
> Attn: Robert S. Brady (rbrady@ycst.com), Kenneth J. Enos (kenos@ycst.com), Jared W. Kochenash (jkochenash@ycst.com) and Timothy R. Powell (tpowell@ycst.com).

**If to the Wind-Down Debtors Oversight Committee**:

[●]

with a copy to counsel for the Prepetition Agent:

Kirkland & Ellis, LLP

Attn: Patrick J. Nash, Jr. (patrick.nash@kirland.com), Brian Schartz (bschartz@kirkland.com), and Jordan Elkin (jordan.elkin@kirkland.com)

and

Reed Smith LLP

Attn: Nicholas Vislocky (nvislocky@reedsmith.com)

**Section 7.7     Change of Address**.  Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice to the parties listed in Section 7.6 of this Agreement in the manner set forth therein.  Such change of address shall be effective ten (10) Business Days after service of such notice.

**Section 7.8     Relationship to Plans**.  The principal purpose of this Agreement is to aid in the implementation of the Plans and, therefore, this Agreement incorporates and is subject to the provisions of the Plans and Confirmation Orders.  To that end, the Plan Administrator, with the oversight of the Wind-Down Debtors Oversight Committee, shall have full power and authority to take any action consistent with the purpose and provisions of the Plans and Confirmation Orders, whether or not such action is specified in this Agreement.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plans or Confirmation Orders, the provisions of the Plans and Confirmation Orders control.

**Section 7.9     Meaning of Terms**.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, and words importing the singular number include the plural number and vice versa.

**Section 7.10     Retention of Jurisdiction**.  As provided in Article XII of the Plans, the Bankruptcy Court shall retain jurisdiction over the Wind-Down Debtors, including, but not limited to, for the purpose of interpreting and implementing the provisions of this Agreement; provided, however, that nothing in this Section or Article XII of the Plans shall prevent the Plan Administrator or the Wind-Down Debtors from pursuing the Retained Causes of Action in jurisdictions other than the Bankruptcy Court.

**Section 7.11     Assignment**.  Neither this Agreement nor any of the rights, duties or obligations of any of the parties hereto may be assigned without Bankruptcy Court approval; provided that, for the avoidance of doubt, this Section shall not be deemed to restrict trading of the Prepetition Term Loan Facility, the Wind-Down Financing Facility or any other credit facility.

**Section 7.12    Successors and Assigns; No Third-Party Beneficiaries**.    This Agreement shall be binding on and shall inure to the benefit of each of the parties and their respective successors and assigns, except as otherwise provided herein.   No party may assign, transfer, hypothecate or otherwise convey its respective rights, benefits, obligations or duties hereunder without the prior express written consent of the other parties and any such purported assignment, transfer, hypothecation, or other conveyance by any party without the prior express written consent of the other parties shall be null and void and of no force or effect; provided that, for the avoidance of doubt, this Section shall not be deemed to restrict trading of the Prepetition Term Loan Facility, the Wind-Down Financing Facility or any other credit facility.   The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the parties with respect to the transactions contemplated hereby and no Entity shall be a third-party beneficiary of any of the terms and provisions of this Agreement, other than each of the Indemnified Parties and the Exculpated Parties with respect to Section 4.6 and Section 4.7, respectively, unless specifically set forth in this Agreement.

**Section 7.13    Effective Date**.    This Agreement shall become effective on the Effective Date; *provided*, *however*, that to the extent the Epic Plan and the Alpha Plan become effective on different days, (a) this Agreement shall only become legally binding upon the Epic Debtors upon the Effective Date of the Epic Plan and (b) this Agreement shall only become binding upon Alpha upon the Effective Date of the Alpha Plan.

[*Remainder of page intentionally left blank.*]

**IN WITNESS WHEREOF,** the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written and effective as of the Effective Date.

ON BEHALF OF THE ESTATES OF SAGA FORMATIONS, INC., PAJEAU, INC., AND TANGIBLE PLAY, INC.

By: _____

Name: _____

Title: _____


ON BEHALF OF THE ESTATE OF BYJU'S ALPHA, INC.

By: _____

Name: _____

Title: _____


AS PLAN ADMINISTRATOR ON BEHALF OF THE WIND-DOWN DEBTORS

By: _____

Name: _____

Title: _____