**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SAGA FORMATIONS, INC., *et al.*,[1] | ) | Case No. 24-11161 (BLS) (Jointly Administered) |
| Debtors. | ) | **Hearing Date:** TBD<br>**Objection Deadline:** September 1, 2026<br>**Related Docket No.:** 1204 |

**SHIFT CAPITAL, INC.'S OBJECTION TO THE PLAN ADMINISTRATOR'S MOTION PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 DIRECTING THE PRODUCTION OF DOCUMENTS AND EXAMINATION OF DEBTORS' BANKS AND MCA LENDERS**

Shift Capital, Inc. ("Shift Capital"), by and through its undersigned counsel, hereby submits this objection (this "Objection") to the *Motion Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order Directing the Production of Documents and Examination of Debtors' Banks and MCA Lenders* [Docket No. 1204] (the "Rule 2004 Motion") filed by the Plan Administrator (the "Plan Administrator") on July 23, 2026. In support of the Objection, Shift Capital also submits the attached *Declaration of Steven B. Eichel* (the "Eichel Decl."), and respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1. The Court should deny the Rule 2004 Motion as to Shift Capital because the Plan Administrator has not met his burden of establishing good cause for the requested examination. Generally, good cause exists when a Rule 2004 examination is necessary to establish the examining party's claim or when denial of the request would cause undue hardship or injustice.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Saga Formations, Inc. f/k/a Epic Creations, Inc. (9113), Pajeau, Inc. f/k/a Neuron Fuel, Inc. (8758), and Tangible Play, Inc. (9331).

[2] The Plan Administrator has granted an extension of time to September 1, 2026 for Shift Capital To file this Objection. Accordingly, this Objection is timely.

Here, although the Plan Administrator believes that the Debtors repaid funds provided by the Merchant Cash Advance funders ("MCA Funders"), Shift Capital voluntarily produced documents—including a bank statement—showing that the funds at issue were transferred not between Shift Capital and any Debtor, but between Shift Capital and non-debtor Whitehat Education Technology LLC ("Whitehat"). Despite receiving the bank statement and other documents, the Plan Administrator has not identified any potential claim that he may assert against Shift Capital on behalf of the Debtors. The Court therefore should deny the Rule 2004 Motion because the Plan Administrator has not established good cause: the documents produced show that there is no basis for a claim against Shift Capital, and Rule 2004 may not be used to investigate matters unrelated to the Debtors' estates. At a minimum, the Court should deny the requests for documents and an examination to the extent they concern non-debtors, including Whitehat.

## **FACTUAL BACKGROUND**

2. On October 29, 2025, the Court confirmed the Debtors' chapter 11 plan ("Plan") and the Plan became effective on March 31, 2026. *See* Docket Nos. 1009, 1148. Under the Plan, the Plan Administrator seeks to pursue claims that were preserved for the benefit of the Debtors' estates.

3. On or about June 30, 2026, counsel for the Plan Administrator sent out a letter requesting that Shift Capital provide certain documents and testimony concerning the topics for examination that were attached to the letter.

4. Upon receiving the letter, Shift Capital's counsel contacted counsel for the Plan Administrator and provided certain documentation.

5. On July 23, 2026, the Plan Administrator filed the Rule 2004 Motion seeking documents and testimony concerning the following areas of discovery: (i) information relevant to the Debtors' transactions with their MCA Funders, (ii) information regarding the disposition of

the MCAs[3], and (iii) information regarding the Debtors' bank-account balances during the periods in which the loans were originated and repaid. *See* Rule 2004 Motion ¶ 25.

6. The Rule 2004 Motion asserts that (i) the requested discovery would assist the Plan Administrator in fulfilling his post-effective-date duties to implement the Plan, investigate the Retained Causes of Action, and maximize value for the Debtors' estates and their creditors, and (ii) the Plan Administrator seeks discovery from the MCA Funders themselves, who may be able to provide information regarding the disbursements and repayments associated with the MCAs. *See* Rule 2004 Motion ¶ ¶ 26, 29.

7. Notwithstanding the Plan Administrator's stated purpose, the requested discovery on Exhibit D to the Rule 2004 Motion includes, among other things, "All Documents and Communications sufficient to show each and every transfer of funds, including their amounts, between or among You [which includes Shift Capital], on the one hand, and any of the Loan Parties, on the other hand, including Documents and Communications concerning any consideration provided by You to the Loan Parties in exchange for any such transfers." The proposed topics for oral examination likewise include all transfers or other transactions between or among You [which includes Shift Capital] and the Debtors and/or any of the other Loan Parties. The defined term "Loan Parties" encompasses both Debtors and non-debtors, including Whitehat, the entity with which Shift Capital transferred funds to and received funds from. Thus, the Plan Administrator seeks both oral and written discovery concerning transactions between Shift Capital and non-debtors.

8. In an effort to resolve the matter without litigation, Shift Capital provided the Plan Administrator's counsel with certain documents, including a bank statement showing that the

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Rule 2004 Motion.

transfers at issue were made between Shift Capital and non-debtor Whitehat. A true and correct copy of the communication to the Plan Administrator's counsel is attached to the Eichel Decl. as **Exhibit A**.[4] None of the documents reflected any transfers between Shift Capital and any of the Debtors. Despite receiving these documents, the Plan Administrator has not identified any viable theory of liability against Shift Capital because the documents show that the relevant transactions occurred solely between Shift Capital and a non-debtor.

## ARGUMENT

### I. Legal Standard

9. Rule 2004 examinations are discretionary, and the Plan Administrator bears the burden of establishing good cause and a reasonable basis for each category of requested discovery. *See, e.g.*, Fed. R. Bankr. P. 2004(a) (providing that "the court *may* order the examination of any entity") (emphasis added); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626–27 (Bankr. D. Del. 2016) ("[P]arties do not have an absolute right to Rule 2004 examinations—the granting of a Rule 2004 examination is dependent on the discretion of the Court . . . [and] [t]he party seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.").

10. "[T]he burden of showing good cause is an affirmative one and is not satisfied merely by showing that justice would not be impeded by the production of the requested documents." *In re Wilcher*, 56 B.R. 428, 435 (Bankr. N.D. Ill. 1985). A movant must establish "that the proposed examination 'is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice.'"

[4] Shift Capital submits the correspondence that enclosed the referenced bank statement, but has not included the bank statement itself, which was produced pursuant to FRE 408 and contains sensitive business information. A copy of the bank statement is available for the Court's review if requested.

*In re AOG Entm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) (quoting *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004)). In evaluating the Plan Administrator's request for a Rule 2004 examination, the Court must "balance the competing interests of the parties, weighing the relevance and necessity of the information sought by examination." *Id.* (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)). Mere relevance, standing alone, does not establish good cause. *Id.*

11. Accordingly, in evaluating a request for Rule 2004 discovery, the Court must weigh the asserted usefulness of the requested discovery against the costs and burdens imposed on the examinee. *See, e.g., In re Hammond*, 140 B.R. 197, 201 (Bankr. S.D. Ohio 1992) ("After determining that [a] Rule 2004 examination is necessary for the protection of the examiner's legitimate interests, the bankruptcy court must balance the examiner's interests against the [examinee's] interests in avoiding the cost and burden of disclosure."); *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied.").

## II. The Plan Administrator Failed to Demonstrate Good Cause for the Requested Discovery as it Relates to Non-Debtors

12. Federal Rule of Bankruptcy Procedure 2004 provides that, on the motion of a party in interest, the Court may order the examination of any entity. *See* Fed. R. Bankr. P. 2004(a). The examination may relate only to "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b)(1). The examination may also address the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummation

of a plan and the consideration given or offered, and any other matter relevant to the case or to formulating a plan. Fed. R. Bankr. P. 2004(b)(2).

13. The central question is whether a debtor may use Rule 2004 to obtain from a third party documents concerning a non-debtor affiliate to pursue claims. The answer turns on whether the requested information concerns claims belonging to the debtor's estate or third-party claims that do not belong to the estate.

14. In *In re Millennium Lab Holdings II, LLC,* 562 B.R. 614, 628–29 (Bankr. D. Del. 2016), the bankruptcy court granted a post-confirmation trustee's Rule 2004 motion on behalf of the Corporate Trust, which held the Debtors' retained claims, permitting the trustee to examine third parties, including creditors, concerning the Debtors' financial collapse and potential prepetition causes of action. The court concluded that the requested examination fell squarely within Rule 2004's purpose because the trustee sought to identify assets, examine transactions, and determine whether wrongdoing had occurred against the Debtors' estates. *Id.*

15. However, *Millennium Lab* recognized a critical limitation: Rule 2004 may not be used to investigate claims belonging to third parties rather than to the debtor's estate. In *Millennium Lab*, the same trustee also sought Rule 2004 discovery on behalf of the Lender Trust, which held non-debtor claims contributed by consenting lenders against non-debtor third parties. The court denied that portion of the motion, holding that the investigation fell outside Rule 2004's scope and purpose because the lenders' claims did not concern the debtor's property, liabilities, or financial condition, would not facilitate the recovery and distribution of the debtor's assets, and would not otherwise aid in administering the case. *Id.* That holding is directly on point.

16. As detailed above, Shift Capital voluntarily produced certain documents and information available to it, including records showing that the transaction at issue occurred

between Shift Capital and non-debtor Whitehat. Although the Plan Administrator therefore possesses the information most relevant to his investigation, he has not explained how the requested discovery concerning the non-debtor Loan Parties relates to the Debtors' acts, conduct, property, liabilities, or financial condition; the administration of the Debtors' estates; the operation of the Debtors' business; or any other matter relevant to the case or the formulation of a plan. Because the Plan Administrator has not established good cause for further discovery concerning non-debtor Loan Parties, the Court should deny the Rule 2004 Motion as to Shift Capital, at least to that extent. *See Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. III. 1985) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.") (quoted in *In re Mathews*, No. 18-mc-80-LPS, 2018 U.S. Dist. LEXIS 178364, at *7 (D. Del. Oct. 17, 2018)).

17. Moreover, Shift Capital has expended time and resources responding to the Plan Administrator's requests, including participating in several conference calls with counsel and voluntarily producing documents. A bank statement that was produced shows that the relevant transfers involved non-debtor Whitehat, yet the Plan Administrator has identified no theory supporting a claim against Shift Capital. He therefore has not established that further document production or an oral examination is necessary, or that denial of the Rule 2004 Motion would cause injustice or prejudice. Under these circumstances, the costs and burdens of the additional discovery sought far outweigh any purported benefit. Accordingly, the Plan Administrator has not demonstrated good cause for the broad discovery sought from Shift Capital, and the Court should deny the Rule 2004 Motion.

**RESERVATION OF RIGHTS**

18. Shift Capital reserves the right to amend, modify, or supplement this Objection and to raise additional objections to the Rule 2004 Motion at any hearing concerning the Motion.

19. Pursuant to Local Rule 9013-1(h), Shift Capital does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**CONCLUSION**

Shift Capital recognizes the Plan Administrator's need to obtain documents to determine whether the Debtors possess viable causes of action. Shift Capital, however, has produced documents showing that both its payment and the payments it received involved the same non-debtor, Whitehat. Because the Plan Administrator has neither identified nor alleged a viable claim against Shift Capital, and has not shown that denying the requested discovery would cause undue hardship or injustice, Shift Capital should not be required to bear the expense of an oral examination or produce additional documents unrelated to the Debtors. Accordingly, the Court should deny the Rule 2004 Motion as to Shift Capital or, alternatively, deny the requests for an oral examination of Shift Capital and for production of documents unrelated to the Debtors. The Court should also grant Shift Capital such other and further relief as it deems just and proper.

Dated: September 1, 2026
Wilmington, Delaware

**PORZIO, BROMBERG & NEWMAN, P.C.**

*/s/ Cheryl A. Santaniello*

Cheryl A. Santaniello, Esquire (DE Bar No. 5062)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 526-1235
Email: casantaniello@phnlaw.com

and

**LEECH TISHMAN ROBINSON BROG, PLLC**
Steven B. Eichel (admitted *pro hac vice*)
One Dag Hammarskjöld Plaza
885 Second Avenue, 3rd Floor
New York, NY 10017
Telephone: (212) 603-6300
Email: seichel@leechtishman.com

*Counsel to Shift Capital, Inc.*

**CERTIFICATE OF SERVICE**

I, Cheryl A. Santaniello, hereby certify that, on this 1st day of September, 2026, I caused a true and correct copy of the foregoing *Objection To The Plan Administrator's Motion Pursuant To Bankruptcy Rule 2004 And Local Rule 2004-1 Directing The Production Of Documents And Examination Of Debtors' Banks And MCA Lenders* to be served via CM/ECF on all parties who have registered for electronic service in these cases.

Dated: September 1, 2026
Wilmington, Delaware

*/s/ Cheryl A. Santaniello*
Cheryl A. Santaniello, Esq.